# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br><br>Petters Company, Inc., et al.,<br><br>      Debtors.<br><br>(includes:<br>Petters Group Worldwide, LLC;<br>PC Funding, LLC;<br>Thousand Lakes, LLC;<br>SPF Funding, LLC;<br>PL Ltd., Inc.;<br>Edge One LLC;<br>MGC Finance, Inc.;<br>PAC Funding, LLC;<br>Palm Beach Finance Holdings, Inc.) | **Jointly Administered under<br>Case No. 08-45257**<br><br>**Court File No. 08-45257**<br><br>Court File No.:<br><br>08-45258 (GFK)<br>08-45326 (GFK)<br>08-45327 (GFK)<br>08-45328 (GFK)<br>08-45329 (GFK)<br>08-45330 (GFK)<br>08-45331 (GFK)<br>08-45371 (GFK)<br>08-45392 (GFK)<br>Chapter 11 Cases<br>Judge Kathleen H. Sanberg |
| Douglas A. Kelley, in his capacity as the<br>Trustee of BMO Litigation Trust,<br><br>      Plaintiff,<br><br>vs.<br><br>BMO Harris Bank, N.A., as successor to M&I<br>Marshall and Ilsley Bank,<br><br>      Defendant. | Adversary No. 12-04288 |

### DEFENDANT'S RESPONSE TO MOTION FOR LEAVE TO AMEND COMPLAINT

Pursuant to the Court's Orders of September 13, 2016 (ECF No. 37) and October 3, 2016 (ECF No. 51), Defendant BMO Harris Bank, N.A. ("BMO") hereby responds to the Motion for

Leave to Amend Complaint filed by Douglas A. Kelley, in his capacity as the Trustee of BMO Litigation Trust ("Trustee"), and states its objections to the unredacted public filing of the proposed First Amended Complaint.

**I.    BMO's Position On The Request For Leave To Amend The Complaint.**

In the interest of judicial economy and because motion-to-dismiss proceedings are better suited to testing the viability of an amended complaint in the present circumstances, BMO does not oppose the filing of the proposed First Amended Complaint tendered by the Trustee as an attachment to his Motion for Leave to Amend Complaint. *See, e.g.*, *Laurienti v. Bicha*, No. 14-cv-02592, 2016 WL 496047, at *1 (D. Colo. Feb. 9, 2016) (noting conclusion that it "was more appropriate to consider whether Plaintiff stated viable claims through a motion to dismiss").

In doing so, BMO does not agree with any of the assertions made in the Trustee's Motion, including those regarding the sufficiency of the claims set forth in the proposed First Amended Complaint, the merit of the allegations made in the proposed First Amended Complaint, or the viability of any *in pari delicto*, timeliness, or other defenses that BMO may assert in this case. In accordance with the Court's scheduling Order, BMO will file a motion to dismiss the First Amended Complaint, and therefore expressly reserves all of its rights under Fed. R. Civ. P. 12 and other authorities to request dismissal of the First Amended Complaint and each of the Trustee's claims, in whole or in part, on any grounds. *See, e.g.*, *Cummings v. Paramount Partners, LP*, 715 F. Supp. 2d 880, 893 (D. Minn. 2010) (considering motion to dismiss after defendants stipulated to filing of amended complaint); *Archdiocese of San Salvador v. FM Int'l, LLC*, No. 05-cv-237, 2006 WL 2583262, at *1 n.2 (D.N.H. Sept. 7, 2006) (Rule 12 dismissal motion permitted after assent to motion for leave to amend).

## II. BMO's Position On Sealed Filing Of The Proposed First Amended Complaint.

Consistent with the Protective Order entered in this case (ECF Nos. 25, 26), the Trustee moved to file his Motion for Leave to Amend Complaint and associated papers under seal because they reference confidential documents produced by BMO. ECF No. 41. The Court granted the motion to file under seal, but ordered the parties to confer regarding whether the information in the proposed First Amended Complaint should continue to receive confidential treatment and ordered BMO to state any objections to making that information public. ECF No. 51. Now that BMO has had an opportunity to review the proposed First Amended Complaint, it does object to public disclosure of certain confidential and proprietary information contained in the proposed pleading. In particular, BMO objects to public disclosure of the allegations and exhibits in the proposed complaint that describe details of policies and procedures for generating, reviewing, and clearing anti-money laundering ("AML") alerts and other alerts triggered by certain account activity. Proposed 1st Am. Compl. ¶¶ 87, 91-102 & Ex. D.

AML and similar programs exist to detect and investigate potential money-laundering and terrorism-financing activities. There is significant public interest in helping prevent such crime detection program details from becoming known to criminals, as a BMO employee specializing in AML issues attested in a prior suit by the liquidating trustee for a PCI investor. *See* Moheban Decl., Ex. A (Declaration of Shandra Roehrig).[1] Criminals who can obtain information about AML programs can use that information to evade controls and disguise their criminal activity. *Id.* ¶ 9. That remains true even when the information concerns a historical AML program, which BMO treats as no less confidential than information about its current AML program. *Id.* ¶¶ 4-9. Such historical information is relevant to BMO's current AML

---

[1] The Roehrig Declaration was publicly filed in *Mukamal v. BMO Harris Bank, N.A.*, Adv. No. 11-3015 (Bankr. S.D. Fla.) ("*Palm Beach I*"), as ECF No. 215-1. It is submitted here for the Court's convenience.

3

program because many elements, processes, methodologies, and principles of the program in place through 2008 are similar or foundational to what BMO does now. *Id.* ¶ 6. Criminals could therefore use information about a historical AML program to attempt to reverse engineer or otherwise test BMO's current program. *Id.* ¶ 7.

Recognizing these concerns, courts in other suits against BMO arising out of PCI's Ponzi scheme have permitted the sealed filing of submissions that describe the AML and similar programs that generated alerts for PCI account activity. For example, in the Southern District of Florida, a bankruptcy court declined a liquidating trustee's request for an order generally revoking the confidential designations assigned to documents regarding AML and other monitoring programs, and subsequently granted leave to file under seal an amended complaint and other papers that included information drawn from such documents. *See Palm Beach I*, ECF Nos. 214, 217, 226, 240, 264, 328. Likewise, in a suit from this District brought by a PCI investor, both Judge Montgomery and the Eighth Circuit permitted submissions discussing the AML alerts for PCI to be filed under seal. *See Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, No. 15-cv-01876 (D. Minn.), ECF Nos. 95, 97, 101, 103; *Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, No. 16-1968 (8th Cir.), June 16, 2016 Order & July 26, 2016 Order.

More broadly, courts have held that AML and similar information should be kept under seal to preserve confidentiality. *See, e.g.*, *Casissa v. First Republic Bank*, Nos. 09-cv-4129 et al., 2012 WL 2119326, at *2 (N.D. Cal., June 11, 2012) (allowing sealed filing of documents that "concern confidential aspects of Defendant's Anti–Money Laundering/Bank Secrecy Act program" based on defendant's argument that, "if disclosed, this information would provide the general public insight into how it detects suspicious activity"); *SIPC v. Bernard L. Madoff Inv.*

*Sec. LLC*, No. 08-1789, 2011 WL 1378602, at *3 (Bankr. S.D.N.Y. Apr. 12, 2011) (AML and "know your customer" information should be sealed because "[n]ot only is [it] proprietary, but its public dissemination could result in unintended adverse consequences for the public at large"). Sealed filing of information regarding AML and other monitoring programs taken from BMO documents also is consistent with the Bankruptcy Code, which requires bankruptcy courts, at the request of a party in interest, to "protect an entity with respect to . . . confidential . . . commercial information." 11 U.S.C. § 107(b)(1); *see SIPC*, 2011 WL 1378602, at *3 (invoking this statute).

Accordingly, BMO objects to unredacted public filing of the proposed First Amended Complaint. BMO asks that paragraphs 87 and 91-102 and Exhibit D of the proposed First Amended Complaint be redacted in any public filing. Counsel for BMO has conferred with counsel for the Trustee regarding these matters, and they take the position that the proposed First Amended Complaint should be filed publicly in its entirety.

Dated: October 7, 2016

/e/ Keith S. Moheban
Keith S. Moheban (#216380)
Adine S. Momoh (#390085)
STINSON LEONARD STREET LLP
150 South 5th Street, Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-1544
keith.moheban@stinson.com
adine.momoh@stinson.com

- AND –

Thomas S. Kiriakos (*pro hac vice*)
Lucia Nale (*pro hac vice*)
Debra L. Bogo-Ernst (*pro hac vice*)
Sean T. Scott (*pro hac vice*)
Joshua D. Yount (*pro hac vice*)
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
tkiriakos@mayerbrown.com
lnale@mayerbrown.com
dernst@mayerbrown.com
stscott@mayerbrown.com
jdyount@mayerbrown.com

**ATTORNEYS FOR DEFENDANT BMO HARRIS BANK, N.A., AS SUCCESSOR TO M&I MARSHALL & ILSLEY BANK**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br><br>Petters Company, Inc., et al.,<br><br>    Debtors.<br><br>(includes:<br>Petters Group Worldwide, LLC;<br>PC Funding, LLC;<br>Thousand Lakes, LLC;<br>SPF Funding, LLC;<br>PL Ltd., Inc.;<br>Edge One LLC;<br>MGC Finance, Inc.;<br>PAC Funding, LLC;<br>Palm Beach Finance Holdings, Inc.) | **Jointly Administered under**<br>**Case No. 08-45257**<br><br>**Court File No. 08-45257**<br><br>Court File No.:<br><br>08-45258 (GFK)<br>08-45326 (GFK)<br>08-45327 (GFK)<br>08-45328 (GFK)<br>08-45329 (GFK)<br>08-45330 (GFK)<br>08-45331 (GFK)<br>08-45371 (GFK)<br>08-45392 (GFK)<br>Chapter 11 Cases<br>Judge Kathleen H. Sanberg |
| Douglas A. Kelley, in his capacity as the<br>Trustee of BMO Litigation Trust,<br><br>    Plaintiff,<br><br>vs.<br><br>BMO Harris Bank, N.A., as successor to M&I<br>Marshall and Ilsley Bank,<br><br>    Defendant. | Adversary No. 12-04288 |

## DECLARATION OF KEITH S. MOHEBAN

Keith S. Moheban, under penalty of perjury, hereby declares as follows:

1. I am a partner at the law firm of Stinson Leonard Street LLP and am an attorney duly licensed to practice law in the State of Minnesota and before this Court. I am one of the attorneys representing Defendant BMO Harris Bank, N.A., as successor to M&I Marshall and Ilsley Bank ("Defendant"), in the above-captioned matter. I submit this declaration in support of Defendant's Response to Motion for Leave to Amend Complaint. I have personal knowledge of the facts stated herein.

2. A true and correct copy of the Declaration of Shandra Roehrig, dated June 2, 2014, and publicly filed in *Mukamal v. BMO Harris Bank, N.A.*, Adv. No. 11-3015 (Bankr. S.D. Fla.), as ECF No. 215-1, is attached hereto as **Exhibit A.**

I attest under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/e/ Keith S. Moheban
Keith S. Moheban, Esq.

2

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM DIVISION
www.flsb.uscourts.gov

IN RE:

PALM BEACH FINANCE PARTNERS, L.P.,     CASE NO. 09-36379-PGH
PALM BEACH FINANCE II, L.P.,     CASE NO. 09-36396-PGH
   (Jointly Administered)

   Debtors.
_____/

BARRY E. MUKAMAL, in his
capacity as Liquidating Trustee
OF THE PALM BEACH FINANCE
PARTNERS LIQUIDATING TRUST AND
PALM BEACH FINANCE II
LIQUIDATING TRUST;

   Plaintiff,     Adv. No. 11-3015-PGH

v.

BMO HARRIS BANK N.A. as Successor
by Merger to M&I MARSHALL & ILSLEY
BANK;

   Defendant.
_____/

## DECLARATION OF SHANDRA ROEHRIG

Shandra Roehrig, under penalty of perjury, declares as follows:

1.     I am a Vice President, U.S. AML Technology and Analytics Manager for Defendant, BMO Harris Bank N.A. ("BMO"), successor by merger to M&I Marshall & Ilsley Bank ("M&I"). I am a Certified Anti-Money Laundering Specialist ("CAMS"), a designation of the Association of Certified Anti-Money Laundering Specialists.

2.     Starting in 2004, I was employed in various roles in the Anti-Money Laundering Monitoring Group at M&I and continued in similar capacities for BMO after it merged with M&I. While at M&I, I held several positions which provided assistance for the operation and

11567705.1

enhancement of its Bank Secrecy Act and Anti-Money Laundering Act monitoring program. In my positions at M&I, I had working knowledge and experience with M&I's AML operations, policies, procedures, and training of the AML Monitoring Group. I also had working knowledge and experience with M&I's anti-money laundering monitoring software, Searchspace, including its implementation, use, adjustments, upgrades, and settings at the M&I.

3. I make this Declaration based on my own personal knowledge and based on my training and experience in anti-money laundering monitoring at M&I and BMO.

4. BMO's U.S. AML Office considers all of its AML program documents, both current and historical, to be confidential, and treats them accordingly. Should M&I's AML program documents enter the public domain, it could negatively impact law enforcement and BMO.

5. First, "old" reports can be and often are reviewed by law enforcement agencies as part of current investigations and criminal prosecutions. If the policies and procedures that went into producing those "old" reports are in the public domain, they could allow a target or criminal defendant to challenge or discredit the investigation, or to otherwise work to the disadvantage of law enforcement.

6. Second, M&I's historical AML program documents are relevant to what BMO is currently doing now in its AML program. At the time of the merger, M&I's AML program and personnel were integrated into BMO's AML program. While money-laundering and terrorism financing techniques are constantly evolving, many of the elements and principles found in M&I's AML policies and procedures are still similar or foundational to what BMO is doing now. For instance, many of the scenarios, processes and methodologies used by M&I were incorporated into the BMO program.

11567705.1

7. If money launderers, terrorist financiers, or other criminals have free access to M&I's historical fraud detection policies, they could attempt to "reverse engineer" BMO's policies or to test BMO's AML monitoring with the knowledge from M&I's system. Knowing how things used to be done may be helpful in trying to circumvent current program efforts.

8. Reviewing each of M&I's historical AML documents to separate what components are still used in BMO's system from those that are not would be a difficult and time consuming process. Additionally, that task would be almost impossible as components may have been retained but enhanced, thus making a determination as to whether it is "old" or "new" impossible. Also, if only old M&I procedures and policy components not used by BMO were publicly disclosed, would-be criminals would necessarily know what BMO is not doing as part of its AML efforts, and could tailor their activities accordingly.

9. Additionally, the nature of any AML program necessarily is tailored to the financial institution's risk profile and products and services it offers. By allowing any of the information, either current or historical, to be general public knowledge, criminals and sanctioned countries can use the information to evade the controls in place, tailor their information and bypassing BMO's programs.

10. Lastly, M&I employees were trained on the AML program. Many of those M&I employees work for BMO as a result of the merger. The training the employees received is still ingrained in those individuals and became part of the lens in which they continue to perform their jobs.

Dated this 2nd day of June, 2014.

_____
Shandra Roehrig