# EXHIBIT A

001007_2002582_d

From:  Jon Sabes <sabesjon@qwest.net>
Sent:  Wednesday, February 19, 2003 3:45 PM
To:  shari.rhode@micorp.com; edward.jambor@micorp.com
Cc:  Root, Simon C <sroot@fredlaw.com>
Subject:  Petters

Shari & Ed,

It was a pleasure meeting with you today regarding our collective efforts to
implement a bank custodial mechanism to accommodate Petters various lending
structures.

In reality, we are looking to have M&I Bank act as custodian to receive retailer
wire payments and with the further direction of Deanna Munson at Petters, forward
those monies on to their appropriate bank accounts.  This exact process happens
every day with Petters and we are merely looking for further assistance from the
Bank by which those monies are forwarded to their appropriate accounts prior to
being credited to Petters general corporate ledger.

That being said, we would like to do this in a manner such that: (i) we do not
disturb the M&I Bank account in such a manner that Petters needs to change his
vendor set up information with his retail customers; (ii) operationally it works for
M&I Bank and Petters; and (iii) we do not cause M&I to accept an liability because
of discretionary powers.  Additionally, we are not looking for a solution that the
bank will have to defend in the face of a bankruptcy trustee challenge.

I envision something quite mechanical that allows M&I to essentially act as
custodian on behalf of Petters whereby M&I receives payments in the current account
and zeros out that account each day by forwarding monies on to preset accounts per
Petters instructions.  I would be more than happy to discuss the options further
prior to reconvening on March 3rd as I believe we can get something done which
accommodates us all if M&I is willing to be creative and innovative with us on this
project.  Thank you in advance for your consideration.

Sincerely

Jon Sabes
Opportunity Finance LLC
60 South Sixth Street, Suite 2540
Minneapolis, MN 55402
612.339.8994
612.339.8922 fax
612.388.2223 mobile



# EXHIBIT B



# HOWSE & THOMPSON, P.A.

ATTORNEYS AT LAW

*Providing counsel to individuals and businesses*

1189 FERNBROOK LANE
PLYMOUTH, MN 55447

*telephone* 761.577.0150
*facsimile* 761.577.0151

G. CRAIG HOWSE
JEFFREY C. THOMPSON

OF COUNSEL
JEFFREY K. VEST
GREGORY W. DECKERT

January 27, 2004

*Sent by Facsimile Transmission Only (612)904-8015*

Carol Moline
M&I Bank

Re:   Deposit Account Agreement
      Our File No.: C1925-45

Dear Ms. Moline:

Several weeks ago I talked to you about the need for a deposit agreement with one of your customers. Many dollars are currently running through this account, some of which should have more appropriately been deposited into several lock box arrangements which were established. Unfortunately, not all of the account holders vendors have been trained to direct the payments to the lock box. For that reason, we have prepared the enclosed Deposit Account Control Agreement to set up a mechanism to provide protection to the parties to the lock box accounts without interfering with the business practices of the account holder. Please review this Agreement and provide your comments. Please also give us an indication of the charges that M&I will require to administer this Agreement. I believe the parties are ready to move forward with this as soon as these matters are resolved. Thank you.

Very truly yours,

G. Craig Howse

GCH:jlw
Enclosure



EXHIBIT
B

1905

CH001810

# EXHIBIT C

**From:**
**Sent:**   Thu, 01 Jan 1970 00:00:00 GMT
**To:**   Romenesko, Stuart
**CC:**   Petters, Tom
**Subject:** FW: Letter of Authorization

Steve Ratliff DOES NOT have the authority to be sending these letters to his customers and having his customers contacting Petters Company banker.

Ed Jambor received a phone call last Friday from Mark at CJM Holdings Company wanting to verify that Petters Company has $39,250,000 in our account.

Ed will not give out any information on our account without Tom Petters or myself approving it, and by employees sending letters like this to our Banker, it ruin's our relation and the trust we have with our banker.

Thanks

Deanna

Stuart: Do you want me to

-----Original Message-----
From: Edward.Jambor@micorp.com [mailto:Edward.Jambor@micorp.com]
Sent: Monday, December 08, 2003 8:53 AM
To: Munson, Deanna
Subject: Letter of Authorization


Ed Jambor
Business Bank Officer
M & I Marshall & Ilsley Bank
(612)798-3345
----- Forwarded by Edward Jambor/MICorporation on 12/08/2003 08:53 AM -----


        "Immix, LLC"

        <immix@zianet.com        To:     edward.jambor@micorp.com

        >                cc:

                Subject:  Letter of Authorization



12/05/2003 04:25

PM

Dear Edward Jambor,
Attached in a pdf format is a letter of authorization to confirm funds.
I will call you shortly.
Best regards,
Mark A. Apostalon
Compliance Officer
C.J.M. Holding Corporation
(See attached file: Authorized Bank Letter.pdf)

**To:** (M&I Bank) Marshall Isley Bank
**Address:** PO Box 2045, Milwaukee, WI, USA, 53201-2045
**Tel:** 888-464-5463
**Bank Officers Name:** ~~████████████████████~~   ED JAMBOUR
(612) 798-3345

**Authority to Disclose**

To Whom It May Concern:

We, the for mentioned account holder give you authority to disclose to CJM Holding Corporation and/or their Banking Institution details regarding our ability to enter into a Sales/Purchase contract for the purchase of 100,000 units of **Nokia 8910i** phones ($392.50 ea) at a total cost of $US **39,250,000** payable by way of **Standby Letter of Credit or Blocked Funds.** Any information you give, you do so without prejudice and without any contractual or financial involvement or recourse for whatsoever reason and at our express request.

Disclosure should only be made against a requirement to satisfy Nokia of our ability in entering into a contractual arrangement with them as stated above and in any event on the production of

**Integrity** As the agreed Password.

Yours sincerely,


Name: ~~Steve Ratliff~~

Signature:

Title: ~~President~~

Company: ~~Integrity Marketing and Sales, LLLP~~   is an I.O.C of
The Petters Company, Inc.

# EXHIBIT D

Fortent Monitor: Investigate Alerts

## Alert 101318, AML Monthly, Quick Close, Read Only

Gather Evidence For This Alert

### Alert Summary

**Key Details**

| | | |
|---|---|---|
| Customer ID : **098.4262050** | Customer Name : **PETTERS CO INC** | Assigned to : **sjohnson** |
| Ranked Score : **0** | Alerted month : **April 2008** | |
| Score : **192** | Date raised : **05/06/2008** | |

**Alert Reasons**

| Alert Source | Scenario Description | Account Number |
|---|---|---|
| Account Security Blanket | Account Security Blanket | 1959018 |

Latest Comment

Related Alerts

### Alert History

| Date | Action | State | Performed By | Comments | Filename | Attachment |
|---|---|---|---|---|---|---|
| 05/06/2008 21:41 | Created | Open | FRAMEWORK | N/A | N/A | |
| 06/23/2008 08:08 | Reassigned | Open | sjohnson | N/A | N/A | |
| 06/23/2008 09:11 | Commented | N/A | sjohnson | 06/23/08. Alert #103250 for Petters Co Inc has been moved to the Closed-Multiple Alerts state. This alert was an AML Monthly Alert created for activity that occurred in May 08 and must be reviewed in conjunction with the current alert. | N/A | |
| 06/23/2008 09:16 | State Changed | Open Assigned | sjohnson | N/A | N/A | |
| 06/23/2008 11:05 | Commented | N/A | sjohnson | Petters Co Inc reported in SS for incoming wire activity (peer value) and for outgoing wire activity (peer value/volume) to/from acct #1959018 in April and May 08. This account appears on the Qualified Account for Peer only Review (QAPOR) list. | N/A | |

**EXHIBIT**

D

11/22/2013

CONFIDENTIAL

BMO00018617

| Date | Action | State | Performed By | Comments | Filename | Attachment |
|------|--------|-------|--------------|----------|----------|------------|
| 06/23/2008 11:06 | Commented | N/A | sjohnson | This is an expedited review for April-May 08. Customer received 175 wires, ranging from $3,960 to $50mm, for a total of $1,007,972,208.08. Larger wires were from Thousand Lakes LLC. | N/A | |
| 06/23/2008 11:06 | Commented | N/A | sjohnson | Additional wires were from various entities and appear to be for business purposes. Customer sent out 264 wires, ranging from $4,598.33 to $15,217,500, for a total of $1,007,914,808.16. Larger wires were sent to Thousand Lakes LLC. | N/A | |
| 06/23/2008 11:06 | Commented | N/A | sjohnson | Additional outgoing wires were sent to various entities and appear to be for business purposes. | N/A | |
| 06/23/2008 11:06 | Commented | N/A | sjohnson | Additional acct activity as well as the incoming and outgoing wire activity appears consistent with previous reviews and expected for the type of business. Case can be closed. | N/A | |
| 06/23/2008 11:06 | State Changed | Clsd-Expected Actvty | sjohnson | N/A | N/A | |
| 06/23/2008 11:30 | Reassigned | Clsd-Expected Actvty | mramlow | N/A | N/A | |
| 06/23/2008 11:30 | State Changed | Admin Correct | mramlow | N/A | N/A | |
| 06/23/2008 11:34 | Commented | N/A | mramlow | Return to analyst as requested. | N/A | |
| 06/23/2008 11:34 | State Changed | Open Assigned | mramlow | N/A | N/A | |
| 06/23/2008 11:35 | Reassigned | Open Assigned | mramlow | N/A | N/A | |
| 06/23/2008 11:39 | Commented | N/A | sjohnson | Quick close filter #8. The alert qualifies under the Peer Only Review procedure for an expedited review and no unusual or suspicious activity was identified. | N/A | |

CONFIDENTIAL

BMO00018618

Fortent Monitor: Investigate Alerts

| Date | Action | State | Performed By | Comments | Filename | Attachment |
|------|--------|-------|--------------|----------|----------|------------|
| 06/23/2008 11:39 | State Changed | Quick Close | sjohnson | N/A | N/A | |

CONFIDENTIAL
BMO00018619

# EXHIBIT E

**From:** Coleman, Deanna
**Sent:** Fri, 08 Feb 2008 14:03:13 GMT
**To:** christopher.flynn@micorp.com
**BCC:** Hay, Tom
**Subject:** FW: Deposit Account Agreement

Enclosed is the Deposit Control Agreement. As I mentioned, I will be out of the office all next week, but can be reached on my cell at 952-200-0939.

Thanks
Deanna Coleman



DRAFT

## DEPOSIT ACCOUNT CONTROL AGREEMENT

This Deposit Account Control Agreement, dated as of _____ 2008, is by and between M&I Bank, a national banking association bank (M&I), and Petters Company, Inc., a Minnesota corporation (Petters).

WHEREAS, each of several financial entities hereinafter designated as third party beneficiaries (the Protected Parties) provides financing to Petters or an affiliate company of Petters with respect to transactions comprising the sale and purchase of consumer merchandise (Transaction); and

WHEREAS, each of the Protected Parties has some form of securitization structure for its financing, including for some Protected Parties "lock box" arrangements; and

WHEREAS, from time to time Petters will receive payments with respect to Transactions into its bank account at M&I which should have been paid to a "lock box" of a Protected Party or directly to a Protected Party; and

WHEREAS, Petters desires to provide legal assurance to the Protected Parties that deposits into the Petters bank account which should have been paid into a Protected Parties lock box or directly to a Protected Party are held for the benefit of the Protected Party and will be immediately transferred to the Protected Party's lockbox or to a separate account at M&I owned by the Protected Party;

NOW, THEREFORE, the parties hereto recite and agree as follows:

1.   Deposit Account

    (a)   Designation and Rights.

        Petters hereby designates its bank account at M&I bearing account number _____ as the Deposit Account referred to herein which is subject to the terms and conditions of this Agreement.

        Moneys deposited into the Deposit Account shall be held for the benefit of Petters and the Protected Parties as hereinafter defined, and shall be distributed as herein provided.  Petters acknowledges that all moneys deposited into the Deposit Account which are the proceeds of purchase orders and/or invoices financed by a Protected Party (Protected Party Funds) which are intended for payment into a "lock box" or other securitized structure for the benefit of a Protected Party do not constitute funds of Petters and are held for the benefit of and shall be paid to the Protected Party. Further, Petters declares Protected Party Funds are held in trust for the Protected Party to whom the funds are required to be paid.

1

DRAFT

(b)   <u>Protected Parties</u>

As used in this Agreement the terms Protected Party means and refers to any and all of the following:

_____

Each Protected Party is a third party beneficiary of this agreement with respect to any moneys held in trust for it in the Deposit Account.

(c)   <u>Deposits into Account</u>.

Certain deposits will be made into the Deposit Account by and for the benefit of Petters.  Such deposits are not held in trust for the Protected Parties and no Protected Party shall make any claim upon the moneys in the account held exclusively for Petters or for the benefit of another Protected Party.

(d)   <u>Control of Deposit Account</u>.

The Deposit Account shall be under the sole dominion and control of M&I as custodian of the Account for the benefit of Petters and the Protected Parties as the rights of each are established herein.  M&I shall manage and control this Account in accordance with the guidelines and procedures established by this Agreement.

(e)   <u>Termination of Deposit Account</u>.

With 120 days notice to each Protected Party, Petters shall have the right to close the Deposit Account at any time no moneys are held in the Deposit Account in trust for any Protected Party.

2.   <u>Procedures for Deposit Account</u>.  M&I shall follow the following procedures with respect to all moneys deposited or credited to the Deposit Account:

(a)   M&I shall deposit in the Deposit Account all moneys collected or received with respect to Transactions and all other receipts from time to time tendered by or on behalf of or to Petters for deposit therein, including without limitation all wire transfers and other payments directed to the Deposit Account.

(b)   Petters shall provide to each Protected Party and M&I at least once each week (or more often if necessary to enable M&I to discharge its obligations hereunder), a list of all Transactions funded by a Protected Party with respect to which payment may be received by M&I for deposit in the Deposit Account (Transaction List).  This Transaction List shall include the name of the purchaser or obligor,

2

the purchaser's payor bank and the banking coordinates, the purchase order date and number, the invoice date and number, the payment due date, and the Protected Party which has financed the Transaction and the amount financed by the Protected Party.

(c) M&I shall compare each payment received by wire transfer or otherwise to the most recently received Transaction List provided to it by Petters and shall automatically transfer each payment on a Transaction funded by a Protected Party to an M&I account established by and for the benefit of each Protected Party as required herein. M&I shall advise Petters and each Protected Party promptly of each payment and the Transaction described on the Transaction List to which it relates.

(d) Within one business day, Petters and the Protected Party shall thereafter determine, by mututal agreement, the amount, if any, of any payment transferred to the Protected Party account that is the property of Petters or its affiliate under the terms of those agreements identified on Exhibit A (Petters Amount). Protected Party shall then notify M&I of the Petters Amount which amount shall be returned to the Deposit Account.

(e) Petters shall not make any withdrawals of Protected Party Funds from the Deposit Account by check, electronic means or otherwise, and M&I will not honor any request for payment of Protected Party Funds (as shown on the Transaction List) to Petters. Petters may withdraw or direct the transfer of moneys which do not comprise Protected Party Funds from the Deposit Account at any time.

(f) Protected Party shall promptly cause any amount transferred to its account to which the Protected Party is not the rightful owner to be returned to the Deposit Account.

3. <u>Method of Disbursement</u>. Each Protected Party shall establish an account with M&I into which M&I shall transfer moneys on deposit in the Deposit account which are to be released to the Protected Party as provided in Section 2 (c). Each Protected Party shall thereafter establish the protocol for disbursement of the funds from its account.

4. <u>Fees</u>. All fees for the Deposit Account shall be paid by Petters. In the event that Petters fails to timely make a payment of a fee on the Account, M&I may thereafter exercise its right of set-off against amounts in the Deposit Account available for disbursement to Petters. All fees for the separate account of a Protected Party shall be paid by the Protected Party.

5. <u>Set Off</u>. The M&I hereby agrees that the M&I will not exercise or claim any right of set-off or banker's lien against the Deposit Account or any Protected Party

3

Funds on deposit therein, and the M&I hereby further waives any such right or lien which it may have against any Protected Party Funds held in the Deposit Account.

6.    <u>Limited Liability of Bank</u>.

    (a)    To induce M&I to enter into this Agreement, establish the Deposit Account and perform services through the Deposit Account provided for or contemplated by this Agreement, Petters agrees that:

        (i)    M&I shall have no liability to Petters or any Protected Party for any loss or damage that any of them may claim to have suffered or incurred, either directly or indirectly, by reason of this Agreement, the Deposit Account or any transaction or service contemplated by the provisions hereof, unless occasioned by the gross negligence or willful misconduct of M&I.  Under no circumstances will M&I be liable for indirect, special or consequential damages, or to any third party as a result of any actions taken or omitted by M&I in accordance with this Agreement;

        (ii)    M&I shall be entitled to rely, and shall be fully protected in relying, upon any note, writing, resolution, notice, statement, telex, teletype or telecopier message, order or other documentary, or teletransmission received by M&I from Petters and reasonably believed by M&I to be genuine and correct and to have been signed, sent or made by an authorized person, and without making any inquiry whatsoever as to Petters right or authority to give such order or direction contained therein or as to the application of any payment made pursuant thereto; and

        (iii)    M&I may consult with legal counsel and other experts selected by it with respect to claims against it with respect to the Deposit Account.  M&I shall not be liable for any act or omission taken or suffered by M&I as a result of M&I's good faith reliance on such counsel or experts.

    (b)    Petters agrees to indemnify M&I, its directors, officers, agents and employees, and hold each of them harmless from and against any and all claims, other than those ultimately determined to be founded on gross negligence or willful misconduct of M&I, and from and against any damage, penalties, judgments, liabilities, losses or expenses (including reasonable attorneys' fees and disbursements) incurred as a result of, arising out of or otherwise related to any transaction conducted or service provided by M&I through the use

4

DRAFT

of the Deposit Account pursuant to the procedures provided for or contemplated by this Agreement.

7.    <u>Termination</u>.  Upon 120 days notice to the Protected Parties, this Agreement may be terminated by Petters, and at the end of the 120 day notice period, Petters is entitled to close the Deposit Account after transfer of all funds of the Protected Party to its separate account.  Upon receipt of the notice by Petters of termination of the account, M&I shall provide written notice of receipt of the Petters notice to the Protected Party at the address most recently provided by said party to M&I.  This Agreement may be terminated by M&I at any time on not less than 120 days prior written notice delivered to each Protected Party.  During the 120 days prior to termination, M&I will continue to manage the Deposit Account in accordance with the provisions of this Agreement.  Upon termination of this Agreement, M&I will deliver all moneys on deposit in the Deposit Account to Petters.

8.    <u>Irrevocable Agreement</u>.  Petters acknowledges that except as provide in Sections 1(e) and 8, the agreements made by it and the authorizations granted by it in Sections 2 and 3 hereof are irrevocable, and that authorizations granted in Sections 2 and 3 hereof are powers coupled with an interest.

9.    <u>Notices</u>.  Any notices, consents, directions, demands, or other communications given under this Agreement (unless otherwise specified herein) shall be in writing and shall be deemed to have been duly given when delivered in person or by overnight delivery at, or telecopied to, the respective addresses or telecopy numbers (or such other address or telecopy number as may hereafter be furnished to the other party or parties by like notice), as the case may be, set forth below:

|  |  |
|---|---|
| Petters: | Petters Company, Inc.<br>4400 Baker Road<br>Attention:  Thomas Petters & Deanna Munson<br>Minnetonka, MN 55343-8684<br>Telephone No.: (952) 975-2295<br>Telecopier No.: (952) 975-4073 |
| Bank: | M&I Bank<br>_____<br>_____<br>Attention: _____<br>Telephone No.: _____<br>Telecopier No.: _____ |

Any party may change its address for notices hereunder by notice to each other party hereunder given in accordance with this Section.  Each notice, request or other communication shall be in writing and shall be deemed to be effective (a) if given by facsimile, when such facsimile is transmitted to the facsimile number specified in this Section and confirmation of receipt is made by the appropriate

party, (b) if given by overnight courier, 24 hours after such communication is deposited with the overnight courier for delivery, addressed as aforesaid, or (c) if given by any other means, when delivered at the address specified in this Section 10. Notices requiring a response within less than 48 hours shall be given by facsimile transmission.

10.    Legal Holidays. In any case where the date on which a notice is required to be sent to any person pursuant to the terms of this Agreement shall not be a business day in the State of Minnesota, then (notwithstanding any other provision of this Agreement) the time period for response shall begin at 9:00 a.m. on the first business day following the legal holiday.

11.    Severability Clause. Any part, provision, representation, or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation, or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. To the extent permitted by applicable law, the parties waive any provision of law which prohibits or renders void or unenforceable any provision hereof.

12.    Assignment; Additional Parties. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns, but neither Petters nor M&I shall be entitled to assign or delegate any of its rights or duties hereunder.

13.    Counterparts. For the purpose of facilitating the execution of this Agreement and for other purposes, this Agreement may be executed simultaneously in any number of counterparts, and by the different parties on separate counterparts, each of which shall be deemed to be an original, and together shall constitute and be one and the same instrument.

14.    Governing Law; Jurisdiction; Waiver of Jury Trial.

(a)    Governing Law. This Agreement shall be governed by, and construed in accordance with, the internal laws (without giving effect to the conflicts of laws provisions) of the State of Minnesota.

(b)    Jurisdiction. Each of the parties hereto hereby irrevocably submits to the nonexclusive jurisdiction of any Minnesota state or federal courts sitting in Minneapolis or St. Paul, Minnesota, in any action or proceeding arising out of or relating to this Agreement and hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such Minnesota state court or in such federal court. Each of the parties hereto hereby

DRAFT

irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding and irrevocably consents to the service of copies of the summons and complaint and any other process which may be served in any such action or proceeding by the mailing of copies of such process to the applicable party at its addresses specified in Section 10. Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(c)   WAIVER OF JURY TRIAL. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRAIL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY INSTRUMENT OR DOCUMENT DELIVERED HEREUNDER OR THEREUNDER.

15.   Amendments.  This Agreement may be amended from time to time by written instrument signed by Petters and M&I after 120 days written notice of the Amendment to each Protected Party. No waiver of any of the terms hereof shall be effective unless it is in writing and signed by the party against which such waiver is being asserted.

16.   No Waiver.  No failure on the part of the Protected Parties, Petters or M&I to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

17.   Integration.  This Agreement contains a final and complete integration of all prior expressions by the parties hereto with respect to the subject matter hereof and shall constitute the entire agreement among the parties hereto with respect to such subject matter, superseding all prior oral or written understandings.

18.   Agreement Effectiveness.  This Agreement shall become effective upon delivery of fully executed counterparts hereof to each of the parties hereto.

19.   Headings Descriptive; Construction.  The headings of the sections and subsections of this Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement. Unless otherwise specifically provided, references in this Agreement to Articles, Sections, and Exhibits are to Articles, Sections, Annexes, and Exhibits of or to this Agreement. All Exhibits hereto are incorporated herein by the references thereto in this Agreement.

DRAFT

20.   <u>Judicial Interpretation</u>.  Should any provision of this Agreement require judicial interpretation, it is agreed that a court interpreting or construing the same shall not apply a presumption that the terms hereof shall be more strictly construed against any person by reason of the rule of construction that a document is to be construed more strictly against the person who itself or through its agent prepared the same, it being agreed that all parties have participated in the preparation of this Agreement.

*[Signature Page Follows]*

8

DRAFT

IN WITNESS WHEREOF, each of the parties has executed and delivered this Deposit Account Control Agreement as of the day and year first above set forth.

M&I BANK

By:

_____          Its: _____

PETTERS COMPANY, INC.

By:

_____          Its: _____

# EXHIBIT F



Carolyn Moline/MICorporation
02/14/2008 01:07 PM

To   Christopher Flynn/MICorporation@MICorporation
cc   Jane Schwede/MICorporation@MICorporation
bcc

Subject   Re: Fw: Deposit Account Agreement

Chris and Jane:  I had asked Peggy Franzen what her experience has been in the past with control agreements.  The information that she had is if the customer is to use Treasury Management products especially they have worked with Godfrey and Kahn law firm to review.  She also had a control agreement that was approved for the bank.  The problem is do we get fairly compensated to take care of a situation like this.  One of the things I wanted to confirm is do they want an actual lockbox for these payments to come in?

The control agreement talks about a Transaction list of the obligor, and that the bank shall compare each payment received by wire transfer or otherwise to the most recently received Transaction list.  I dont know that something like this should be done by the business banking team vs. trust. We could set them up on a fax or e-mail notification for wires but not sure how to monitor any other type of deposit.   It is saying that then  M& I shall advise Petters and the protected party promptly of each payment  as well as determining each day what amount should be transferred.

One page 3 it says we can use our right to set-off for fees of the deposit account, but in the next paragraph is says that M & I will not exercise and right to set-off against the deposit account.

So I would be concerned that we have the staff or knowledge to take care of this.

There is a new person in trust who I might run this by.

Carolyn L. Moline
Assistant Vice President/Administrative Services Supervisor
M & I Marshall & Ilsley bank
651 Nicollet Mall
Minneapolis, MN  55402
Phone 612-904-8133
Fax 612-904-8015
Email: carolyn.moline@micorp.com
Christopher Flynn/MICorporation

Christopher
Flynn/MICorporation
02/14/2008 10:11 AM

To   Carolyn Moline/MICorporation@MICorporation, Jane
Schwede/MICorporation@MICorporation
cc

Subject   Fw: Deposit Account Agreement

Carolyn and Jane,

Attached is a request from one of our customers regarding some special handling for a new account to be opened.  There is urgency to get this handled for the customer Petters Company.

I have reviewed the agreement and it does seem to provide good indemnification language to protect the bank but I would appreciate your input regarding the opening and maintaining an account of this nature,

Thanks very much for your prompt review of this document.



M ; I
EXHIBIT NO. 6
9-26-10
R. L. KLANDERUD

MI2013570

EXHIBIT
E

# EXHIBIT G

| | |
|---|---|
| **From:** | Christopher Flynn |
| **Sent:** | Thursday, February 14, 2008 3:38 PM |
| **To:** | buschk@moss-barnett.com |
| **Subject:** | Fw: Deposit Account Agreement |
| **Attach:** | MI Bank Deposit Account Control Agmt 2008-01-29 .doc |

Kevin,

Would you mind giving this a cursory review. Petters is requesting we open a
new depository account governed by this document.

Christopher Flynn
Senior Vice President
M&I Marshall & Ilsley Bank
Phone:612-798-3223
----- Forwarded by Christopher Flynn/MICorporation on 02/14/2008 03:02 PM -----

"Coleman, Deanna" <deanna.coleman@pettersgroup.com>
02/08/2008 08:03 AM

To
<christopher.flynn@micorp.com>
cc

Subject
FW: Deposit Account Agreement

Enclosed is the Deposit Control Agreement. As I mentioned, I will be out of
the office all next week, but can be reached on my cell at 952-200-0939.

Thanks
Deanna Coleman

This e-mail, including attachments, may include confidential and/or proprietary
information,
and may be used only by the person or entity to which it is addressed. If the
reader of this
e-mail is not the intended recipient or his or her authorized agent, the reader
is hereby
notified that any dissemination, distribution or copying of this e-mail is
prohibited. If you
have received this e-mail in error, please notify the sender by replying to
this message and
delete this e-mail immediately.





MIPB000325

DRAFT

## DEPOSIT ACCOUNT CONTROL AGREEMENT

This Deposit Account Control Agreement, dated as of _____ 2008, is by and between M&I Bank, a national banking association bank (M&I), and Petters Company, Inc., a Minnesota corporation (Petters).

WHEREAS, each of several financial entities hereinafter designated as third party beneficiaries (the Protected Parties) provides financing to Petters or an affiliate company of Petters with respect to transactions comprising the sale and purchase of consumer merchandise (Transaction); and

WHEREAS, each of the Protected Parties has some form of securitization structure for its financing, including for some Protected Parties "lock box" arrangements; and

WHEREAS, from time to time Petters will receive payments with respect to Transactions into its bank account at M&I which should have been paid to a "lock box" of a Protected Party or directly to a Protected Party; and

WHEREAS, Petters desires to provide legal assurance to the Protected Parties that deposits into the Petters bank account which should have been paid into a Protected Parties lock box or directly to a Protected Party are held for the benefit of the Protected Party and will be immediately transferred to the Protected Party's lockbox or to a separate account at M&I owned by the Protected Party;

NOW, THEREFORE, the parties hereto recite and agree as follows:

1.  Deposit Account

    (a)  Designation and Rights.

        Petters hereby designates its bank account at M&I bearing account number _____ as the Deposit Account referred to herein which is subject to the terms and conditions of this Agreement.

        Moneys deposited into the Deposit Account shall be held for the benefit of Petters and the Protected Parties as hereinafter defined, and shall be distributed as herein provided. Petters acknowledges that all moneys deposited into the Deposit Account which are the proceeds of purchase orders and/or invoices financed by a Protected Party (Protected Party Funds) which are intended for payment into a "lock box" or other securitized structure for the benefit of a Protected Party do not constitute funds of Petters and are held for the benefit of and shall be paid to the Protected Party. Further, Petters declares Protected Party Funds are held in trust for the Protected Party to whom the funds are required to be paid.

1

MIPB000326

DRAFT

(b)    <u>Protected Parties</u>

As used in this Agreement the terms Protected Party means and refers to any and all of the following: _____
Each Protected Party is a third party beneficiary of this agreement with respect to any moneys held in trust for it in the Deposit Account.

(c)    <u>Deposits into Account</u>.

Certain deposits will be made into the Deposit Account by and for the benefit of Petters. Such deposits are not held in trust for the Protected Parties and no Protected Party shall make any claim upon the moneys in the account held exclusively for Petters or for the benefit of another Protected Party.

(d)    <u>Control of Deposit Account</u>.

The Deposit Account shall be under the sole dominion and control of M&I as custodian of the Account for the benefit of Petters and the Protected Parties as the rights of each are established herein. M&I shall manage and control this Account in accordance with the guidelines and procedures established by this Agreement.

(e)    <u>Termination of Deposit Account</u>.

With 120 days notice to each Protected Party, Petters shall have the right to close the Deposit Account at any time no moneys are held in the Deposit Account in trust for any Protected Party.

2.    <u>Procedures for Deposit Account</u>. M&I shall follow the following procedures with respect to all moneys deposited or credited to the Deposit Account:

(a)    M&I shall deposit in the Deposit Account all moneys collected or received with respect to Transactions and all other receipts from time to time tendered by or on behalf of or to Petters for deposit therein, including without limitation all wire transfers and other payments directed to the Deposit Account.

(b)    Petters shall provide to each Protected Party and M&I at least once each week (or more often if necessary to enable M&I to discharge its obligations hereunder), a list of all Transactions funded by a Protected Party with respect to which payment may be received by M&I for deposit in the Deposit Account (Transaction List). This Transaction List shall include the name of the purchaser or obligor, the purchaser's payor bank and the banking coordinates, the purchase order date and number, the invoice date and number, the payment due date, and the Protected Party

2

M1PB000327

DRAFT

which has financed the Transaction and the amount financed by the Protected Party.

(c) M&I shall compare each payment received by wire transfer or otherwise to the most recently received Transaction List provided to it by Petters and shall automatically transfer each payment on a Transaction funded by a Protected Party to an M&I account established by and for the benefit of each Protected Party as required herein. M&I shall advise Petters and each Protected Party promptly of each payment and the Transaction described on the Transaction List to which it relates.

(d) Within one business day, Petters and the Protected Party shall thereafter determine, by mututal agreement, the amount, if any, of any payment transferred to the Protected Party account that is the property of Petters or its affiliate under the terms of those agreements identified on Exhibit A (Petters Amount). Protected Party shall then notify M&I of the Petters Amount which amount shall be returned to the Deposit Account.

(e) Petters shall not make any withdrawals of Protected Party Funds from the Deposit Account by check, electronic means or otherwise, and M&I will not honor any request for payment of Protected Party Funds (as shown on the Transaction List) to Petters. Petters may withdraw or direct the transfer of moneys which do not comprise Protected Party Funds from the Deposit Account at any time.

(f) Protected Party shall promptly cause any amount transferred to its account to which the Protected Party is not the rightful owner to be returned to the Deposit Account.

3. <u>Method of Disbursement</u>. Each Protected Party shall establish an account with M&I into which M&I shall transfer moneys on deposit in the Deposit account which are to be released to the Protected Party as provided in Section 2 (c). Each Protected Party shall thereafter establish the protocol for disbursement of the funds from its account.

4. <u>Fees</u>. All fees for the Deposit Account shall be paid by Petters. In the event that Petters fails to timely make a payment of a fee on the Account, M&I may thereafter exercise its right of set-off against amounts in the Deposit Account available for disbursement to Petters. All fees for the separate account of a Protected Party shall be paid by the Protected Party.

5. <u>Set Off</u>. The M&I hereby agrees that the M&I will not exercise or claim any right of set-off or banker's lien against the Deposit Account or any Protected Party Funds on deposit therein, and the M&I hereby further waives any such right or lien which it may have against any Protected Party Funds held in the Deposit Account.

3

MIPB000328

DRAFT

6.    Limited Liability of Bank.

(a)    To induce M&I to enter into this Agreement, establish the Deposit Account and perform services through the Deposit Account provided for or contemplated by this Agreement, Petters agrees that:

(i)    M&I shall have no liability to Petters or any Protected Party for any loss or damage that any of them may claim to have suffered or incurred, either directly or indirectly, by reason of this Agreement, the Deposit Account or any transaction or service contemplated by the provisions hereof, unless occasioned by the gross negligence or willful misconduct of M&I. Under no circumstances will M&I be liable for indirect, special or consequential damages, or to any third party as a result of any actions taken or omitted by M&I in accordance with this Agreement;

(ii)    M&I shall be entitled to rely, and shall be fully protected in relying, upon any note, writing, resolution, notice, statement, telex, teletype or telecopier message, order or other documentary, or teletransmission received by M&I from Petters and reasonably believed by M&I to be genuine and correct and to have been signed, sent or made by an authorized person, and without making any inquiry whatsoever as to Petters right or authority to give such order or direction contained therein or as to the application of any payment made pursuant thereto; and

(iii)    M&I may consult with legal counsel and other experts selected by it with respect to claims against it with respect to the Deposit Account. M&I shall not be liable for any act or omission taken or suffered by M&I as a result of M&I's good faith reliance on such counsel or experts.

(b)    Petters agrees to indemnify M&I, its directors, officers, agents and employees, and hold each of them harmless from and against any and all claims, other than those ultimately determined to be founded on gross negligence or willful misconduct of M&I, and from and against any damage, penalties, judgments, liabilities, losses or expenses (including reasonable attorneys' fees and disbursements) incurred as a result of, arising out of or otherwise related to any transaction conducted or service provided by M&I through the use of the Deposit Account pursuant to the procedures provided for or contemplated by this Agreement.

7.    Termination. Upon 120 days notice to the Protected Parties, this Agreement may be terminated by Petters, and at the end of the 120 day notice period, Petters is entitled to close the Deposit Account after transfer of all funds of the Protected Party to its separate account. Upon receipt of the notice by Petters of termination of the account, M&I shall

4

MIPB000329

DRAFT

provide written notice of receipt of the Petters notice to the Protected Party at the address most recently provided by said party to M&I. This Agreement may be terminated by M&I at any time on not less than 120 days prior written notice delivered to each Protected Party. During the 120 days prior to termination, M&I will continue to manage the Deposit Account in accordance with the provisions of this Agreement. Upon termination of this Agreement, M&I will deliver all moneys on deposit in the Deposit Account to Petters.

8.    Irrevocable Agreement. Petters acknowledges that except as provide in Sections 1(e) and 8, the agreements made by it and the authorizations granted by it in Sections 2 and 3 hereof are irrevocable, and that authorizations granted in Sections 2 and 3 hereof are powers coupled with an interest.

9.    Notices. Any notices, consents, directions, demands, or other communications given under this Agreement (unless otherwise specified herein) shall be in writing and shall be deemed to have been duly given when delivered in person or by overnight delivery at, or telecopied to, the respective addresses or telecopy numbers (or such other address or telecopy number as may hereafter be furnished to the other party or parties by like notice), as the case may be, set forth below:

Petters:    Petters Company, Inc.
4400 Baker Road
Attention: Thomas Petters & Deanna Munson
Minnetonka, MN 55343-8684
Telephone No.: (952) 975-2295
Telecopier No.: (952) 975-4073

Bank:    M&I Bank

_____

Attention: _____
Telephone No.: _____
Telecopier No.: _____

Any party may change its address for notices hereunder by notice to each other party hereunder given in accordance with this Section. Each notice, request or other communication shall be in writing and shall be deemed to be effective (a) if given by facsimile, when such facsimile is transmitted to the facsimile number specified in this Section and confirmation of receipt is made by the appropriate party, (b) if given by overnight courier, 24 hours after such communication is deposited with the overnight courier for delivery, addressed as aforesaid, or (c) if given by any other means, when delivered at the address specified in this Section 10. Notices requiring a response within less than 48 hours shall be given by facsimile transmission.

10.    Legal Holidays. In any case where the date on which a notice is required to be sent to any person pursuant to the terms of this Agreement shall not be a business day in the

5

MIPB000330

DRAFT

State of Minnesota, then (notwithstanding any other provision of this Agreement) the time period for response shall begin at 9:00 a.m. on the first business day following the legal holiday.

11.    Severability Clause. Any part, provision, representation, or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation, or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. To the extent permitted by applicable law, the parties waive any provision of law which prohibits or renders void or unenforceable any provision hereof.

12.    Assignment; Additional Parties. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns, but neither Petters nor M&I shall be entitled to assign or delegate any of its rights or duties hereunder.

13.    Counterparts. For the purpose of facilitating the execution of this Agreement and for other purposes, this Agreement may be executed simultaneously in any number of counterparts, and by the different parties on separate counterparts, each of which shall be deemed to be an original, and together shall constitute and be one and the same instrument.

14.    Governing Law; Jurisdiction; Waiver of Jury Trial.

(a)    Governing Law. This Agreement shall be governed by, and construed in accordance with, the internal laws (without giving effect to the conflicts of laws provisions) of the State of Minnesota.

(b)    Jurisdiction. Each of the parties hereto hereby irrevocably submits to the nonexclusive jurisdiction of any Minnesota state or federal courts sitting in Minneapolis or St. Paul, Minnesota, in any action or proceeding arising out of or relating to this Agreement and hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such Minnesota state court or in such federal court. Each of the parties hereto hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding and irrevocably consents to the service of copies of the summons and complaint and any other process which may be served in any such action or proceeding by the mailing of copies of such process to the applicable party at its addresses specified in Section 10. Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by

6

MIPB000331

DRAFT

law.

(c)   WAIVER OF JURY TRIAL.  EACH OF THE PARTIES HERETO
HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRAIL BY
JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM
ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY
INSTRUMENT OR DOCUMENT DELIVERED HEREUNDER OR
THEREUNDER.

15.   Amendments.  This Agreement may be amended from time to time by written instrument
signed by Petters and M&I after 120 days written notice of the Amendment to each
Protected Party.  No waiver of any of the terms hereof shall be effective unless it is in
writing and signed by the party against which such waiver is being asserted.

16.   No Waiver.  No failure on the part of the Protected Parties, Petters or M&I to exercise,
and no delay in exercising, any right hereunder shall operate as a waiver thereof nor shall
any single or partial exercise of any right hereunder preclude any other or further
exercise thereof or the exercise of any other right.  The remedies herein provided are
cumulative and not exclusive of any remedies provided by law.

17.   Integration.  This Agreement contains a final and complete integration of all prior
expressions by the parties hereto with respect to the subject matter hereof and shall
constitute the entire agreement among the parties hereto with respect to such subject
matter, superseding all prior oral or written understandings.

18.   Agreement Effectiveness.  This Agreement shall become effective upon delivery of fully
executed counterparts hereof to each of the parties hereto.

19.   Headings Descriptive; Construction.  The headings of the sections and subsections of this
Agreement are inserted for convenience only and shall not in any way affect the meaning
or construction of any provision of this Agreement.  Unless otherwise specifically
provided, references in this Agreement to Articles, Sections, and Exhibits are to Articles,
Sections, Annexes, and Exhibits of or to this Agreement.  All Exhibits hereto are
incorporated herein by the references thereto in this Agreement.

20.   Judicial Interpretation.  Should any provision of this Agreement require judicial
interpretation, it is agreed that a court interpreting or construing the same shall not apply a
presumption that the terms hereof shall be more strictly construed against any person by
reason of the rule of construction that a document is to be construed more strictly against the
person who itself or through its agent prepared the same, it being agreed that all parties have
participated in the preparation of this Agreement.

*[Signature Page Follows]*

7

MIPB000332

DRAFT

IN WITNESS WHEREOF, each of the parties has executed and delivered this Deposit Account Control Agreement as of the day and year first above set forth.

M&I BANK

By: _____ _____ _____
   Its: _____

PETTERS COMPANY, INC.

By: _____
   Its: _____

8

MIPB000333