# EXHIBIT H

**From:** Christopher Flynn
**Sent:** Monday, February 18, 2008 10:09 AM
**To:** chowse@howselaw.com
**Subject:** Petters Company Agreement

Craig,

I have asked Kevin Busch at the firm of Moss & Barnett to review the agreement you drafted for the proposed account for Petters with M&I. I did receive some preliminary feedback from Kevin regarding concerns with the agreement as written.

I will be visiting in detail with Kevin today and will supply full and detailed feedback to you and Deanna Coleman on any and all issues the bank may have with the agreement as drafted.

We approach this request in the spirit of trying to help accomodate our customer and your client along with the other protected parties with the assurances you need to feel comfortable with the working of the purchase order financing in which they are engaged. We just want to make sure the agreement provides the proper level of durability so it can be properly managed by our organization in a way which represents a fair arrangement for all.

While I will be responding in more detail shortly, please do not hesitate to contact me directly should you like to discuss further.

Thank you,

Christopher Flynn
Senior Vice President
M&I Marshall & Ilsley Bank
Phone:612-798-3223





MIPB000335

# EXHIBIT I

**From:**    Christopher.Flynn@micorp.com
**Sent:**    Tue, 19 Feb 2008 18:07:55 GMT
**To:**    Coleman, Deanna; chowse@howselaw.com
**Subject:** Bank response to Deposit Control Agreement

I had the chance to visit with Kevin Busch at Moss & Barnett regarding the "Deposit Account Control Agreement" drafted by Craig.

Per Kevin's advice I believe this arrangement as proposed would be difficult for the bank to execute for the following primary reasons:

1. While we have good limited liability language protecting the bank from any liability from Petters, the Protected Parties are not a party to the agreement and could seek recourse from the bank if the directions supplied to the bank by Petters were somehow in dispute. Essentially, the bank is potentially put in the middle of some future dispute. We appear to take on some potential liability for which we are not compensated.
2. It is unclear what value the bank provides in this arrangement to the Protected Parties – we are asked to perform the work of administering account transfers but we are only transferring in accordance with the direct instructions of Petters. Why can't Petters do this directly? It is not materially different from the perspective of the Protected Parties.

As an alternative, can we setup a Trust Account similar to Lawyers Trust Accounts or Real Estate Trust Accounts? This allows for the segregation of Protected Parties funds from Petters operating funds. Additionally, it prevents the bank from being put in the middle of a potential dispute between our valued customer and the Protected Parties.

Christopher Flynn
Senior Vice President
M&I Marshall & Ilsley Bank
Phone:612-798-3223



# EXHIBIT J

# DEPOSIT ACCOUNT MANAGEMENT AGREEMENT

This Deposit Account Management Agreement, dated as of February 25, 2008, is by and between M&I Marshall & Ilsley Bank, a Wisconsin banking corporation (M&I), and Petters Company, Inc., a Minnesota corporation (Petters).

WHEREAS, each of several financial entities hereinafter designated as third party beneficiaries (the Protected Parties) provides financing to Petters or an affiliate company of Petters with respect to transactions comprising the sale and purchase of consumer merchandise (Transaction); and

WHEREAS, each of the Protected Parties has some form of securitization structure for its financing, including for some Protected Parties "lock box" arrangements; and

WHEREAS, from time to time Petters will receive payments with respect to Transactions into its bank account at M&I which should have been paid to a "lock box" of a Protected Party or directly to a Protected Party; and

WHEREAS, Petters desires to provide legal assurance to the Protected Parties that deposits into the Petters bank account which should have been paid into a Protected Parties lock box or directly to a Protected Party for the benefit of the Protected Party and will be immediately transferred to the Protected Party's lockbox or to a separate account at M&I owned by the Protected Party;

NOW, THEREFORE, the parties hereto recite and agree as follows:

1.    Deposit Account

        (a)    Designation and Rights.

        Petters hereby designates its bank account at M&I bearing account number 1959018  as the Deposit Account referred to herein which is subject to the terms and conditions of this Agreement.

        Moneys deposited into the Deposit Account shall be received by M&I as wire transfers or collected funds, shall be held for the benefit of Petters and the Protected Parties as hereinafter defined, and shall be distributed as herein provided. Petters acknowledges that all moneys deposited into the Deposit Account which are the proceeds of purchase orders and/or invoices financed by a Protected Party (Protected Party Funds) which are intended for payment into a "lock box" or other securitized structure for the benefit of a Protected Party do not constitute funds of Petters and are held for the benefit of and shall be paid to the Protected Party. Further, Petters declares Protected Party Funds are held in trust for the Protected Party to whom the funds are required to be paid.



I

   (b)    <u>Protected Parties</u>

As used in this Agreement the terms Protected Party means and refers to any and all of the following:  PBFP Holdings, LLC, a Delaware limited liability company, Palm Beach Capital Corp., a Delaware corporation and Palm Beach Finance Partners, LP, a Delaware limited partnership, each sharing the following address, which address shall be used for notice purposes pursuant to Section 10 herein:

> 3601 P.G.A. Boulevard, Suite 301
> Palm Beach Gardens, FL 33410
> Telephone: (561) 624-0594
> Telecopier: (561) 626-7564

Each Protected Party is a third party beneficiary of this agreement with respect to any moneys held in trust for it in the Deposit Account.

   (c)    <u>Deposits into Account.</u>

Certain deposits will be made into the Deposit Account by and for the benefit of Petters.  Such deposits are not held in trust for the Protected Parties and no Protected Party shall make any claim upon the moneys in the account held exclusively for Petters or for the benefit of another Protected Party.

   (d)    <u>Control of Deposit Account.</u>

The Deposit Account shall be under the sole dominion and control of M&I as custodian of the Account for the benefit of Petters and the Protected Parties as the rights of each are established herein.  M&I shall manage and control this Account in accordance with the guidelines and procedures established by this Agreement.

   (e)    <u>Termination of Deposit Account.</u>

With 120 days notice to each Protected Party, Petters shall have the right to close the Deposit Account at any time no moneys are held in the Deposit Account in trust for any Protected Party.

2.    <u>Procedures for Deposit Account.</u>  M&I shall follow the following procedures with respect to all moneys deposited or credited to the Deposit Account:

   (a)    M&I shall deposit in the Deposit Account all moneys collected or received with respect to Transactions and all other receipts from time to time tendered by or on behalf of or to Petters for deposit therein, including without limitation all wire transfers and other payments directed to the

Deposit Account.

(b)    Petters shall provide to each Protected Party and M&I at least once each week (or more often if necessary to enable M&I to discharge its obligations hereunder), a list of all Transactions funded by a Protected Party with respect to which payment may be received by M&I for deposit in the Deposit Account (Transaction List). This Transaction List shall include the name of the purchaser or obligor, the purchaser's payor bank and the banking coordinates, the purchase order date and number, the invoice date and number, the payment due date, and the Protected Party which has financed the Transaction and the amount financed by the Protected Party.

(c)    M&I shall compare each payment received by wire transfer or otherwise to the most recently received Transaction List provided to it by Petters and shall automatically transfer each payment on a Transaction funded by a Protected Party to an M&I account established by and for the benefit of each Protected Party as required herein. M&I shall advise Petters and each Protected Party promptly of each payment and the Transaction described on the Transaction List to which it relates.

(d)    Within one business day, Petters and the Protected Party shall thereafter determine, by mutual agreement, the amount, if any, of any payment transferred to the Protected Party account that is the property of Petters or its affiliate under the terms of those agreements identified on Exhibit A (Petters Amount). Protected Party shall then notify M&I of the Petters Amount which amount shall be returned to the Deposit Account. M&I is not obligated to either Petters or Protected Party in the determination of Petters Amount and M&I will rely solely on the information provided to it by Protected Party under this paragraph.

(e)    Petters shall not make any withdrawals of Protected Party Funds from the Deposit Account by check, electronic means or otherwise, and M&I will not honor any request for payment of Protected Party Funds (as shown on the Transaction List) to Petters. Petters may withdraw or direct the transfer of moneys which do not comprise Protected Party Funds from the Deposit Account at any time.

(f)    Protected Party shall promptly cause any amount transferred to its account to which the Protected Party is not the rightful owner to be returned to the Deposit Account. M&I is not obligated to confirm rightful ownership of any amounts transferred.

3.    <u>Method of Disbursement</u>. Each Protected Party shall establish an account with M&I into which M&I shall transfer moneys on deposit in the Deposit account which are to be released to the Protected Party as provided in Section 2 (c). Each Protected Party shall thereafter establish the protocol for disbursement of the funds from its account.

3

4.  Fees. All fees for the Deposit Account shall be paid by Petters. In the event that Petters fails to timely make a payment of a fee on the Account, M&I may thereafter exercise its right of set-off against amounts in the Deposit Account available for disbursement to Petters. All fees for the separate account of a Protected Party shall be paid by the Protected Party.

5.  Set Off. The M&I hereby agrees that the M&I will not exercise or claim any right of set-off or banker's lien against the Deposit Account or any Protected Party Funds on deposit therein, and the M&I hereby further waives any such right or lien which it may have against any Protected Party Funds held in the Deposit Account.

6.  Limited Liability of Bank.

(a)  To induce M&I to enter into this Agreement, establish the Deposit Account and perform services through the Deposit Account provided for or contemplated by this Agreement, Petters agrees that:

(i)  M&I shall have no liability to Petters or any Protected Party for any loss or damage that any of them may claim to have suffered or incurred, either directly or indirectly, by reason of this Agreement, the Deposit Account or any transaction or service contemplated by the provisions hereof, unless occasioned by the gross negligence or willful misconduct of M&I. Under no circumstances will M&I be liable for indirect, special or consequential damages, or to any third party as a result of any actions taken or omitted by M&I in accordance with this Agreement;

(ii)  M&I shall be entitled to rely, and shall be fully protected in relying, upon any note, writing, resolution, notice, statement, telex, teletype or telecopier message, order or other documentary, or teletransmission received by M&I from Petters and reasonably believed by M&I to be genuine and correct and to have been signed, sent or made by an authorized person, and without making any inquiry whatsoever as to Petters' right or authority to give such order or direction contained therein or as to the application of any payment made pursuant thereto; and

(iii)  M&I may consult with legal counsel and other experts selected by it with respect to claims against it with respect to the Deposit Account. M&I shall not be liable for any act or omission taken or suffered by M&I as a result of M&I's good faith reliance on such counsel or experts.

(b)  Petters agrees to indemnify M&I, its directors, officers, agents and employees, and hold each of them harmless from and against any and all

4

claims, other than those ultimately determined to be founded on gross negligence or willful misconduct of M&I, and from and against any damage, penalties, judgments, liabilities, losses or expenses (including reasonable attorneys' fees and disbursements) incurred as a result of, arising out of or otherwise related to any transaction conducted or service provided by M&I through the use of the Deposit Account pursuant to the procedures provided for or contemplated by this Agreement.

7.    Termination. Upon 120 days notice to the Protected Parties, this Agreement may be terminated by Petters, and at the end of the 120 day notice period, Petters is entitled to close the Deposit Account after transfer of all funds of the Protected Party to its separate account. Upon receipt of the notice by Petters of termination of the account, M&I shall provide written notice of receipt of the Petters notice to the Protected Party at the address most recently provided by said party to M&I. This Agreement may be terminated by M&I at any time on not less than 120 days prior written notice delivered to each Protected Party. During the 120 days prior to termination, M&I will continue to manage the Deposit Account in accordance with the provisions of this Agreement. Upon termination of this Agreement, M&I will deliver all moneys on deposit in the Deposit Account to Petters.

8.    Irrevocable Agreement. Petters acknowledges that except as provide in Sections 1(e) and 7, the agreements made by it and the authorizations granted by it in Sections 2 and 3 hereof are irrevocable, and that authorizations granted in Sections 2 and 3 hereof are powers coupled with an interest.

9.    Dispute Resolution. The parties agree that in the event of a dispute arising out of or related to the deposit of funds to M&I pursuant to this Agreement, M&I will act according to the direction of Petters after giving Protected Parties ten days written notice during which Protected Parties may seek a court order. Petters agrees that M&I may deposit the disputed funds with the court pending final resolution of any dispute.

10.    Notices. Any notices, consents, directions, demands, or other communications given under this Agreement (unless otherwise specified herein) shall be in writing and shall be deemed to have been duly given when delivered in person or by overnight delivery at, or telecopied to, the respective addresses or telecopy numbers (or such other address or telecopy number as may hereafter be furnished to the other party or parties by like notice), as the case may be, set forth below:

Petters:        Petters Company, Inc.
                4400 Baker Road
                Attention:  Thomas Petters & Deanna Munson
                Minnetonka, MN 55343-8684
                Telephone No.: (952) 975-2295
                Telecopier No.: (952) 975-4073

Bank:           M&I Marshall & Ilsley Bank

5

Attention: Christopher Flynn
6625 Lyndale Avenue S.
Richfield, MN 55423
Telephone No.: (612) 798-3223
Telecopier No.: (612) 798-3146

Any party may change its address for notices hereunder by notice to each other party hereunder given in accordance with this Section. Each notice, request or other communication shall be in writing and shall be deemed to be effective (a) if given by facsimile, when such facsimile is transmitted to the facsimile number specified in this Section and confirmation of receipt is made by the appropriate party, (b) if given by overnight courier, 24 hours after such communication is deposited with the overnight courier for delivery, addressed as aforesaid, or (c) if given by any other means, when delivered at the address specified in this Section 10. Notices requiring a response within less than 48 hours shall be given by facsimile transmission.

11.    <u>Legal Holidays</u>. In any case where the date on which a notice is required to be sent to any person pursuant to the terms of this Agreement shall not be a business day in the State of Minnesota, then (notwithstanding any other provision of this Agreement) the time period for response shall begin at 9:00 a.m. on the first business day following the legal holiday.

12.    <u>Severability Clause</u>. Any part, provision, representation, or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation, or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. To the extent permitted by applicable law, the parties waive any provision of law which prohibits or renders void or unenforceable any provision hereof.

13.    <u>Assignment; Additional Parties</u>. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns, but neither Petters nor M&I shall be entitled to assign or delegate any of its rights or duties hereunder.

14.    <u>Counterparts</u>. For the purpose of facilitating the execution of this Agreement and for other purposes, this Agreement may be executed simultaneously in any number of counterparts, and by the different parties on separate counterparts, each of which shall be deemed to be an original, and together shall constitute and be one and the same instrument.

15.    <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.

(a)    Governing Law. This Agreement shall be governed by, and construed in

6

accordance with, the internal laws (without giving effect to the conflicts of laws provisions) of the State of Minnesota.

(b)    Jurisdiction. Each of the parties hereto hereby irrevocably submits to the nonexclusive jurisdiction of any Minnesota state or federal courts sitting in Minneapolis or St. Paul, Minnesota, in any action or proceeding arising out of or relating to this Agreement and hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such Minnesota state court or in such federal court. Each of the parties hereto hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding and irrevocably consents to the service of copies of the summons and complaint and any other process which may be served in any such action or proceeding by the mailing of copies of such process to the applicable party at its addresses specified in Section 10. Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(c)    WAIVER OF JURY TRIAL. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRAIL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY INSTRUMENT OR DOCUMENT DELIVERED HEREUNDER OR THEREUNDER.

16.    Amendments. This Agreement may be amended from time to time by written instrument signed by Petters and M&I after 120 days written notice of the Amendment to each Protected Party. No waiver of any of the terms hereof shall be effective unless it is in writing and signed by the party against which such waiver is being asserted.

17.    No Waiver. No failure on the part of the Protected Parties, Petters or M&I to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

18.    Integration. This Agreement contains a final and complete integration of all prior expressions by the parties hereto with respect to the subject matter hereof and shall constitute the entire agreement among the parties hereto with respect to such subject matter, superseding all prior oral or written understandings.

19.    Agreement Effectiveness. This Agreement shall become effective upon delivery of fully executed counterparts hereof to each of the parties hereto.

20.   <u>Headings Descriptive; Construction.</u>   The headings of the sections and subsections of this Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement. Unless otherwise specifically provided, references in this Agreement to Articles, Sections, and Exhibits are to Articles, Sections, Annexes, and Exhibits of or to this Agreement. All Exhibits hereto are incorporated herein by the references thereto in this Agreement.

21.   <u>Judicial Interpretation.</u>   Should any provision of this Agreement require judicial interpretation, it is agreed that a court interpreting or construing the same shall not apply a presumption that the terms hereof shall be more strictly construed against any person by reason of the rule of construction that a document is to be construed more strictly against the person who itself or through its agent prepared the same, it being agreed that all parties have participated in the preparation of this Agreement.

IN WITNESS WHEREOF, each of the parties has executed and delivered this Deposit Account Management Agreement as of the day and year first above set forth.

M&I MARSHALL & ILSLEY BANK

By: _____
    Its: Sr Vice President

By: _____
    Its: Vice President

PETTERS COMPANY, INC.

By: _____
    Its: _____

8

20.    <u>Headings Descriptive; Construction</u>.  The headings of the sections and subsections of this
Agreement are inserted for convenience only and shall not in any way affect the meaning
or construction of any provision of this Agreement. Unless otherwise specifically
provided, references in this Agreement to Articles, Sections, and Exhibits are to Articles,
Sections, Annexes, and Exhibits of or to this Agreement.  All Exhibits hereto are
incorporated herein by the references thereto in this Agreement.

21.    <u>Judicial Interpretation</u>.  Should any provision of this Agreement require judicial
interpretation, it is agreed that a court interpreting or construing the same shall not apply a
presumption that the terms hereof shall be more strictly construed against any person by
reason of the rule of construction that a document is to be construed more strictly against the
person who itself or through its agent prepared the same, it being agreed that all parties have
participated in the preparation of this Agreement.

IN WITNESS WHEREOF, each of the parties has executed and delivered this Deposit Account
Management Agreement as of the day and year first above set forth.

M&I MARSHALL & ILSLEY BANK

By: _____
     Its: _____

By: _____
     Its: _____

PETTERS COMPANY, INC.

By: _____
     Its: _____

8

# EXHIBIT K

### DEPOSIT ACCOUNT CONTROL AGREEMENT

This Deposit Account Control Agreement, dated as of May ___, 2008 is by and among M&I Marshall & Ilsley Bank, a Wisconsin banking corporation ("M&I"), Petters Company, Inc., a Minnesota corporation ("PCI"), and Ritchie Capital Management, Ltd. (the "Protected Party").

WHEREAS, the Protected Party serves as the Administrative Agent under a Note Purchase Agreement dated as of March 21, 2008 (the "Note Purchase Agreement") pursuant to which the purchasers of notes issued thereunder (the "Purchasers") have provided financing to PCI for the purchase and sale of certain consumer merchandise subject thereto (the "Transaction"); and

WHEREAS, from time to time payments will be received with respect to the Transaction that are to be deposited into the Deposit Account (as defined herein) and subsequently paid to the Protected Party in accordance with the terms of the Note Purchase Agreement and the notes issued under the Note Purchase Agreement (the "Notes").

NOW, THEREFORE, the parties hereby recite and agree as follows:

1.    Deposit Account

(a)    Designation and Rights.

PCI hereby designates its bank account at M&I bearing account number 457 99358 as the "Deposit Account" referred to herein which is subject to the terms and conditions of this Agreement.

Monies deposited into the Deposit Account shall be received by M&I as wire transfers or collected funds, shall be held for the benefit of PCI and the Protected Party, and shall be distributed only as herein provided.

PCI agrees and acknowledges that the only monies that shall be contained in and deposited into the Deposit Account shall be the revenue directly or indirectly realized by PCI or any affiliate thereof from the sale of the merchandise subject to (i) the purchase order no. 104639 issued by uBid, Inc. to PCI and (ii) the purchase order no. 49237 dated March 19, 2008 issued by PCI to Nationwide Int'l Resources (collectively, the "Protected Party Funds"), and that the Protected Party Funds do not constitute funds of PCI and are held for the benefit of and shall be paid to the Protected Party until such time as the Protected Party has received, for the benefit of the holders of each of the Notes, payment of all amounts owed to the holders of the Notes under the Notes (the "Protected Party Amount"). Further, PCI declares that the Protected Party Funds are held in trust for the Protected Party until such time as the Protected Party Amount has been paid in full.





STRY_M&I_000002

- 2 -

(b)  Deposit Into Deposit Account.

Deposits made into the Deposit Account in excess of the Protected Party Amount ("PCI Funds") are not held in trust for the Protected Party and the Protected Party shall not make any claim upon the monies in the Deposit Account in excess of the Protected Party Amount. If the Protected Party receives any PCI Funds, within one business day thereafter, it shall pay the PCI Funds to PCI.

(c)  Control of Deposit Account.

Until such time as the Protected Party notifies M&I that the Protected Party Amount has been paid in full, PCI authorizes and directs M&I to comply, and M&I will comply, with (a) all instructions directing disposition of the funds in the Deposit Account, (b) all notifications and entitlement orders that M&I receives directing it to transfer monies in the Deposit Account, and (c) all other directions concerning the Deposit Account (any such instruction, notification, entitlement order or direction referred to in clause (a), (b) or (c) above being an "Account Direction"), in each case of clauses (a), (b) and (c) above originated by the Protected Party without further consent by either PCI or any other Person.

(d)  Termination of Deposit Account.

After payment of the Protected Party Amount to the Protected Party, PCI shall have the right to close the Deposit Account. The Protected Party agrees to give M&I Bank notice within two days after the Protected Party has received payment in full of the Protected Party Amount.

2.  Procedures for Deposit Account. M&I shall follow the following procedures with respect to all monies deposited or credited to the Deposit Account.

(a)  M&I shall deposit in the Deposit Account all monies tendered by or on behalf of or to PCI for deposit therein, including without limitation all wire transfers and other payments directed to the Deposit Account.

(b)  M&I shall advise PCI and the Protected Party promptly of each payment received in the Deposit Account.

(c)  Within one business day after M&I has advised PCI and the Protected Party of a cleared and collected payment received in the Deposit Account, M&I shall transfer such payment to the Protected Party, to an account or accounts specified by the Protected Party, until such time as the Protected Party has notified M&I that the Protected Party has received payment in full of the Protected Party Amount. The determination of when the Protected Party Amount has been paid in full shall be in the sole good faith discretion of the Protected Party, with reference to the terms of the Note Purchase Agreement and the Notes.

STRY_M&I_000003

- 3 -

(d)    The Protected Party shall promptly cause any amount transferred to its account to which the Protected Party is not the rightful owner to be paid to PCI. M&I is not obligated to confirm rightful ownership of any amounts transferred.

3.    Security Interest. PCI hereby irrevocably grants a first priority perfected security interest in and lien on, and pledges, assigns and sets over to the Protected Party, all of PCI's right, title and interest in the Deposit Account, the funds now or hereafter placed or deposited in the Deposit Account, and any and all proceeds of the foregoing, in order to secure the obligations of PCI or its affiliates arising under or pursuant to the Note Purchase Agreement and the Notes issued under the Note Purchase Agreement (collectively, the "Secured Obligations"). M&I hereby acknowledges the Protected Party's security interest and lien as set forth above. PCI shall take all actions necessary or desirable at the request of the Protected Party on its part to insure the continuance of a first priority perfected security interest in the Deposit Account and the funds contained therein in favor of the Protected Party in order to secure all the Secured Obligations.

4.    Fees. All fees for the Deposit Account shall be paid by PCI. In the event that PCI fails to timely make a payment of a fee on the Deposit Account, following payment in full of all Protected Party Amounts, M&I may thereafter exercise its right of set-off against amounts in the Deposit Account available for disbursement to PCI.

5.    Set Off. M&I hereby agrees that M&I will not exercise or claim any right of set-off or banker's lien against the Deposit Account or the Protected Party Funds on deposit therein, and M&I hereby further waives any right or lien which it may have against the Protected Party Funds held in the Deposit Account.

6.    Limited Liability of Bank.

(a)    To induce M&I to enter into this Agreement, establish the Deposit Account and perform services through the Deposit Account provided for or contemplated by this Agreement, PCI and the Protected Party agree that:

(i)    M&I shall have no liability to PCI or the Protected Party for any loss or damage that any of them may claim to have suffered or incurred, either directly or indirectly, by reason of this Agreement, the Deposit Account or any transaction or service contemplated by the provisions hereof, unless occasioned by the gross negligence or willful misconduct of M&I. Under no circumstances will M&I be liable for indirect, special or consequential damages, or to any third party as a result of any actions taken or omitted by M&I in accordance with this Agreement.

(ii)    M&I shall be entitled to rely, and shall be fully protected in relying upon any note, writing, resolution, notice, statement, telex, teletype

STRY_M&I_000004

- 4 -

or telecopier message, order or other documentary, or teletransmission received by M&I from PCI or the Protected Party reasonably believed by M&I to be genuine and correct and to have been signed, sent or made by an authorized person, and without making any inquiry whatsoever as to PCI's or the Protected Party's right or authority to give such order or direction contained therein or as to the application of any payment made pursuant thereto; and

(iii)   M&I may consult with legal counsel and other experts selected by it with respect to claims against it with respect to the Deposit Account. M&I shall not be liable for any act or omission taken or suffered by M&I as a result of M&I's good faith reliance on such counsel or experts.

(b)   PCI agrees to indemnify M&I, its directors, officers, agents and employees, and hold each of them harmless from and against any and all claims other than those ultimately determined to be founded on gross negligence or willful misconduct of M&I, and from and against any damages, penalties, judgments, liabilities, losses or expenses (including reasonable attorneys' fees and disbursements) incurred as a result of, arising out of or otherwise related to any transaction conducted or service provided by M&I through the use of the Deposit Account pursuant to the procedures provided for or contemplated by this Agreement.

7.   Termination. This Agreement may be terminated by the Protected Party at any time upon receipt by M&I of the Protected Party's written notice of termination. This Agreement may be terminated by PCI only with the express prior written consent of the Protected Party and, in that case, the Protected Party and PCI shall jointly notify M&I of such termination. Notwithstanding the foregoing, this Agreement shall be terminated with the closing of the Deposit Account in accordance with the terms hereof. This Agreement may be terminated by M&I at any time on not less than 120 days prior written notice delivered to PCI and the Protected Party. During the 120 days prior to such termination, M&I will continue to manage the Deposit Account in accordance with the provisions of this Agreement. In addition, during such 120 day period, PCI and the Protected Party shall mutually agree to a bank to take the place of M&I. Upon termination of this Agreement, M&I will deliver all moneys on deposit in the Deposit Account to the new bank mutually named by PCI and the Protected Party.

8.   Dispute Resolution. In the event that PCI and the Protected Party dispute who is entitled to any funds in the Deposit Account, they agree that M&I may deposit the disputed funds with the court pending final resolution of any dispute.

9.   Notices. Any notices, consents, directions, demands, or other communications given under this Agreement (unless otherwise specified herein) shall be in writing and shall be deemed to have been duly given when delivered in person or by overnight delivery at, or telecopied to, the respective addresses or telecopy

STRY_M&I_000005

- 5 -

numbers (or such other address or telecopy number as may hereafter be furnished to the other party or parties by like notice), as the case may be, set forth below.

PCI:    Petters Company, Inc.
4400 Baker Road
Minnetonka, MN 55343
Attention: Deanna Coleman
Telephone No.: _____
Telecopier No.: _____

Protected
Party:    Ritchie Capital Management, Ltd.
801 Warrenville Road, Suite 650,
Lisle, Illinois 60532
Attention: President
Telephone: (630) 786-4000
Fax: (630) 810-5240

Bank:    M&I Marshall & Ilsley Bank
6625 Lyndale Avenue South
ATTN: Christopher Flynn
Richfield, MN 55423
Telephone No.: 612-798-3223
Telecopier No.: 612-798-3146

Any party may change its address for notices hereunder by notice to each other party hereunder given in accordance with this Section. Each notice, request or other communication shall be in writing and shall be deemed to be effective (a) if given by facsimile, when such facsimile is transmitted to the facsimile number specified in this Section and confirmation of receipt is made by the appropriate party, (b) if given by overnight courier, 24 hours after such communication is deposited with the overnight courier for delivery, addressed as aforesaid, or (c) if given by any other means, when delivered at the address specified in this Section 8. Notices requiring a response within less than 48 hours shall be given by facsimile transmission.

10.    Legal Holidays. In any case where the date on which a notice is required to be sent to any person pursuant to the terms of this Agreement shall not be a business day in the State of Minnesota, then (notwithstanding any other provision of this Agreement) the time period for response shall begin at 9:00 a.m. on the first business day following the legal holiday.

11.    Severability Clause. Any part, provision, representation, or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation, or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall, as to such jurisdiction, be

STRY_M&I_000006

- 6 -

ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.    To the extent permitted by applicable law, the parties waive any provision of law which prohibits or renders void or unenforceable any provision hereof.

12.    Assignment; Additional Parties. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns, but neither PCI nor M&I shall be entitled to assign or delegate any of its rights or duties hereunder.

13.    Counterparts. For the purpose of facilitating the execution of this Agreement and for other purposes, this Agreement may be executed simultaneously in any number of counterparts, and by the different parties on separate counterparts, each of which shall be deemed to be an original, and together shall constitute and be one and the same instrument.

14.    Governing Law; Waiver of Jury Trial.

    (a)    Governing Law.  This Agreement shall be governed by, and construed in accordance with, the internal laws (without giving effect to the conflicts of laws provisions) of the State of Minnesota.

    (b)    Jurisdiction.  Each of the parties hereto hereby irrevocably submits to the nonexclusive jurisdiction of any Minnesota state or federal courts sitting in Minneapolis or St. Paul, Minnesota, in any action or proceeding arising out of or relating to this Agreement and hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such Minnesota state court or in such federal court. Each of the parties hereto hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding and irrevocably consents to the service of copies of the summons and complaint and any other process which may be served in any such action or proceeding by the mailing of copies of such process to the applicable party at its address specified in Section 10.  Each of the parties hereto agrees that a final judgment in any such action or proceedings shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

    (c)    WAIVER OF JURY TRIAL.  EACH OF THE PARITES HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY INSTRUMENT OR DOCUMENT DELIVERED HEREUNDER OR THEREUNDER.

STRY_M&I_000007

- 7 -

15.   **Amendments**. This Agreement may be amended from time to time by written instrument signed by the parties hereto. No waiver of any of the terms hereof shall be effective unless it is in writing and signed by the party against which such waiver is being asserted.

16.   **No Waiver**. No failure on the part of the Protected Party, PCI or M&I to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

17.   **Integration**. This Agreement contains a final and complete integration of all prior expressions by the parties hereto with respect to the subject matter hereof and shall constitute the entire agreement among the parties hereto with respect to such subject matter, superseding all prior oral or written understandings.

18.   **Agreement Effectiveness**. This Agreement shall become effective upon delivery of fully executed counterparts hereof to each of the parties hereto.

19.   **Headings Descriptive; Construction**.   The headings of the sections and subsections of this Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement. Unless otherwise specifically provided, references in this Agreement to Articles, Sections, and Exhibits are to Articles, Sections, Annexes, and Exhibits of or to this Agreement. All Exhibits hereto are incorporated herein by the references thereto in this Agreement.

20.   **Judicial Interpretation**. Should any provision of this Agreement require judicial interpretation, it is agreed that a court interpreting or construing the same shall not apply a presumption that the terms hereof shall be more strictly construed against any person by reason of the rule of construction that a document is to be construed more strictly against the person who itself or through its agent prepared the same, it being agreed that all parties have participated in the preparation of this Agreement.

STRY_M&I_000008

- 8 -

IN WITNESS WHEREOF, each of the parties have executed and delivered this Deposit Account Control Agreement as of the day and year first above set forth.

M&I MARSHALL & ILSLEY BANK

By _____
Its _Sr. Vice President_

PETTERS COMPANY, INC.

By _____
Its _____

RITCHIE CAPITAL MANAGEMENT, LTD.

By _____
Its _Director_

STRY_M&I_000009

# EXHIBIT L

<u>**DEPOSIT ACCOUNT CONTROL AGREEMENT**</u>

This Deposit Account Control Agreement (this "Agreement"), dated as of May 29, 2008 is by and among M&I Marshall & Ilsley Bank, a Wisconsin banking corporation ("M&I"), Petters Company, Inc., a Minnesota corporation ("PCI"), and Interlachen Harriet Investments Limited (the "Protected Party").

WHEREAS, the Protected Party serves as the Administrative Agent under a Note Purchase Agreement dated as of April 18, 2008 (the "Note Purchase Agreement") pursuant to which the purchasers of notes issued thereunder (the "Purchasers") have provided financing to PCI (the "Transaction") for the purchase of certain consumer merchandise described in Section 1.3 of the Note Purchase Agreement (the "Merchandise"); and

WHEREAS, Section 1.4 of the Note Purchase Agreement obligates PCI to establish a bank account for the sole purpose of receiving proceeds from the sale of any Merchandise and to enter into a deposit account control agreement with respect to such account; and

WHEREAS, PCI has granted to the Administrative Agent a security interest in the Deposit Account (as defined herein) and all assets therein and proceeds thereof pursuant to a Security Agreement dated April 18, 2008 (the "Security Agreement") between PCI and the Administrative Agent; and

WHEREAS, all proceeds associated with the sale, transfer or other disposition of any Merchandise will be deposited into the Deposit Account and subsequently paid to the Protected Party in accordance with the terms of this Agreement, the Note Purchase Agreement and the notes issued under the Note Purchase Agreement (the "Notes").

NOW, THEREFORE, the parties hereby recite and agree as follows:

1.    <u>Deposit Account</u>

    (a)    <u>Designation and Rights.</u>

PCI hereby designates its bank account at M&I bearing account number _____ as the "Deposit Account" referred to herein which is subject to the terms and conditions of this Agreement. M&I confirms that the Deposit Account has been established at M&I in the name of PCI and that the Deposit Account is a "deposit account" as defined in Section 9-102(a)(29) of the Uniform Commercial Code of the applicable jurisdiction. M&I will not change the name or account number of the Deposit Account without the prior written consent of the Protected Party.

Monies deposited into the Deposit Account shall be received by M&I as wire transfers or collected funds, shall be held for the benefit of PCI and the Protected Party, and shall be distributed only as herein provided.

M:I
EXHIBIT NO. 18
9-21-10
R. L. KLANDERUD


EXHIBIT L

MI2013444

PCI agrees and acknowledges that the only monies that shall be contained in and deposited into the Deposit Account shall be the proceeds or other revenue directly or indirectly realized by PCI or any affiliate thereof from the sale of the Merchandise (collectively, the "Protected Party Funds"), and that all such proceeds and other revenue shall be deposited into the Deposit Account. PCI also agrees and acknowledges that the Protected Party Funds do not constitute funds of PCI and are held for the benefit of and shall be paid to the Protected Party until such time as the Protected Party has received, for the benefit of the holders of each of the Notes, payment of all amounts owed to the holders of the Notes under the Notes and otherwise performs all other Secured Obligations (as defined below) (the "Protected Party Amount"). Further, PCI declares that the Protected Party Funds are held in trust for the Protected Party until such time as the Protected Party Amount has been paid in full.

(b)    Deposit Into Deposit Account.

Deposits made into the Deposit Account in excess of the Protected Party Amount ("PCI Funds") are not held in trust for the Protected Party and the Protected Party shall not make any claim upon the monies in the Deposit Account in excess of the Protected Party Amount. If the Protected Party receives any PCI Funds, the Protected Party shall pay the PCI Funds to PCI within one business day after becoming aware that the Protected Party has received such PCI Funds.

(c)    Control of Deposit Account.

Until such time as the Protected Party notifies M&I that the Protected Party Amount has been paid in full, (i) PCI authorizes and directs M&I to comply, and M&I will comply, with (a) all instructions directing disposition of the funds in the Deposit Account, (b) all notifications and entitlement orders that M&I receives directing it to transfer monies in the Deposit Account, and (c) all other directions concerning the Deposit Account (any such instruction, notification, entitlement order or direction referred to in clause (a), (b) or (c) above being an "Account Direction"), in each case of clauses (a), (b) and (c) above originated by the Protected Party without further consent by either PCI or any other person or entity, and (ii) PCI will not give any Account Direction to M&I, and M&I will not comply with any Account Direction originated from PCI or any other person or entity (other than the Protected Party pursuant to clause (i) above).

(d)    No Adverse Claims.

M&I has not entered into, and until the Protected Party has notified M&I that the Protected Party Amount has been paid in full will not enter into, any agreement with any person or entity (other than the Protected Party) relating to the Deposit Account, including without limitation any

12853v4

MI2013445

agreement to comply with any instruction of such person or entity. Except for the claims and interests of the Protected Party and PCI described herein, M&I does not know of any claim to or interest in the Deposit Account. If any person or entity asserts any lien, encumbrance or adverse claim (including any writ, garnishment, judgment, attachment, execution or similar process) against the Deposit Account or any amount deposited therein, M&I will promptly notify the Protected Party and PCI thereof in writing.

(c)    Closing of Deposit Account.

After the Protected Party notifies M&I that the Protected Party Amount has been paid in full, PCI shall have the right to close the Deposit Account. The Protected Party agrees to give M&I Bank notice within two business days after the Protected Party has received payment in full of the Protected Party Amount.

2.    Procedures for Deposit Account.  M&I shall follow the following procedures with respect to all monies deposited or credited to the Deposit Account.

(a)    M&I shall deposit in the Deposit Account all monies tendered by or on behalf of or to PCI for deposit therein, including without limitation all wire transfers and other payments directed to the Deposit Account.

(b)    M&I shall advise PCI and the Protected Party promptly of each payment received in the Deposit Account.

(c)    Within one business day after M&I has advised PCI and the Protected Party of a cleared and collected payment received in the Deposit Account, M&I shall transfer such payment to the Protected Party, to an account or accounts specified by the Protected Party, until such time as the Protected Party has notified M&I that the Protected Party has received payment in full of the Protected Party Amount. The determination of when the Protected Party Amount has been paid in full shall be in the sole good faith discretion of the Protected Party, with reference to the terms of the Note Purchase Agreement and the Notes.

(d)    The Protected Party shall cause any amount transferred to its account to which the Protected Party is not the rightful owner to be paid to PCI promptly upon the Protected Party's becoming aware that it has received such amount. M&I is not obligated to confirm rightful ownership of any amounts transferred.

3.    Security Interest.  PCI hereby confirms its irrevocably grant of a first priority perfected security interest in and lien on, and pledge, assignment and set over to the Protected Party, all of PCI's right, title and interest in the Deposit Account, the funds now or hereafter placed or deposited in or credited to the Deposit Account, and any and all proceeds of the foregoing, in order to secure the obligations of

12853v4

MI2013446

PCI or its affiliates arising under or pursuant to the Note Purchase Agreement, the Notes issued under the Note Purchase Agreement and the Security Agreement (collectively, the "Secured Obligations"). M&I hereby acknowledges the Protected Party's security interest and lien as set forth above. PCI shall take all actions necessary or desirable at the request of the Protected Party on its part to insure the continuance of a first priority perfected security interest in the Deposit Account and the funds contained therein in favor of the Protected Party in order to secure all the Secured Obligations. The rights and powers granted herein to the Protected Party have been granted in order to perfect the security interest in the Deposit Account granted to the Protected Party under the Security Agreement, are powers coupled with an interest and will not be affected by any bankruptcy of PCI or any lapse of time.

4. <u>Fees.</u> All fees for the Deposit Account shall be paid by PCI. In the event that PCI fails to timely make a payment of a fee on the Deposit Account, M&I may exercise its right of set-off against amounts in the Deposit Account available for disbursement to PCI, but only after the Protected Party notifies M&I that the Protected Party Amount has been paid in full.

5. <u>Set Off.</u> M&I hereby agrees that M&I will not exercise or claim any right of set-off or banker's lien against the Deposit Account or the Protected Party Funds on deposit therein, and M&I hereby further waives any right or lien which it may have against the Protected Party Funds held in the Deposit Account.

6. <u>Limited Liability of Bank.</u>

    (a) To induce M&I to enter into this Agreement, establish the Deposit Account and perform services through the Deposit Account provided for or contemplated by this Agreement, PCI and the Protected Party agree that:

        (i) M&I shall have no liability to PCI or the Protected Party for any loss or damage that any of them may claim to have suffered or incurred, either directly or indirectly, by reason of this Agreement, the Deposit Account or any transaction or service contemplated by the provisions hereof, unless occasioned by the gross negligence or willful misconduct of M&I. Under no circumstances will M&I be liable for indirect, special or consequential damages, or to any third party as a result of any actions taken or omitted by M&I in accordance with this Agreement.

        (ii) M&I shall be entitled to rely, and shall be fully protected in relying upon any note, writing, resolution, notice, statement, telex, teletype or telecopier message, order or other documentary, or teletransmission received by M&I from PCI or the Protected Party reasonably believed by M&I to be genuine and correct and to have been signed, sent or made by an authorized person, and without making any inquiry whatsoever as to PCI's or the Protected Party's

12853v4

**MI2013447**

right or authority to give such order or direction contained therein
or as to the application of any payment made pursuant thereto; and

(iii)   M&I may consult with legal counsel and other experts selected by
it with respect to claims against it with respect to the Deposit
Account. M&I shall not be liable for any act or omission taken or
suffered by M&I as a result of M&I's good faith reliance on such
counsel or experts.

(b)   PCI agrees to indemnify M&I, its directors, officers, agents and
employees, and hold each of them harmless from and against any and all
claims other than those ultimately determined to be founded on gross
negligence or willful misconduct of M&I, and from and against any
damages, penalties, judgments, liabilities, losses or expenses (including
reasonable attorneys' fees and disbursements) incurred as a result of,
arising out of or otherwise related to any transaction conducted or service
provided by M&I through the use of the Deposit Account pursuant to the
procedures provided for or contemplated by this Agreement.

7.   Termination. This Agreement may be terminated by the Protected Party at any
time upon receipt by M&I of the Protected Party's written notice of termination.
This Agreement may be terminated by PCI only with the express prior written
consent of the Protected Party and, in that case, the Protected Party and PCI shall
jointly notify M&I of such termination. Notwithstanding the foregoing, this
Agreement shall be terminated with the closing of the Deposit Account in
accordance with Section 1(e) hereof. This Agreement may be terminated by M&I
at any time on not less than 120 days prior written notice delivered to PCI and the
Protected Party. During the 120 days prior to such termination, M&I will
continue to manage the Deposit Account in accordance with the provisions of this
Agreement. In addition, during such 120 day period, PCI and the Protected Party
shall mutually agree to a bank to take the place of M&I and will enter into a
deposit account control agreement satisfactory to the Protected Party with such
bank. Upon termination of this Agreement, M&I will deliver all moneys on
deposit in the Deposit Account to the new bank mutually named by PCI and the
Protected Party.

8.   Dispute Resolution. In the event that PCI and the Protected Party dispute who is
entitled to any funds in the Deposit Account, they agree that M&I may deposit the
disputed funds with the court pending final resolution of any dispute.

9.   Notices. Any notices, consents, directions, demands, or other communications
given under this Agreement (unless otherwise specified herein) shall be in writing
and shall be deemed to have been duly given when delivered in person or by
overnight delivery at, or telecopied to, the respective addresses or telecopy
numbers (or such other address or telecopy number as may hereafter be furnished
to the other party or parties by like notice), as the case may be, set forth below.

12853v4

**MI2013448**

PCI:                Petters Company, Inc.
                    4400 Baker Road
                    Minnetonka, MN 55343
                    Attention: Deanna Coleman
                    Telephone No.: _____
                    Telecopier No.: _____


Protected
Party:              Interlachen Harriet Investments Limited
                    c/o Interlachen Capital Group LP
                    800 Nicollet Mall, Suite 2500
                    Minneapolis, MN  55402
                    Attention:  Gregg T. Colburn AND Legal Department
                    Telephone:  (612) 659-4407 or (612) 659-4450
                    Telecopier:  (612) 659-4457 AND (612) 659-4401


Bank:               M&I Marshall & Ilsley Bank
                    6625 Lyndale Avenue South
                    ATTN:  Christopher Flynn
                    Richfield, MN 55423
                    Telephone No.:  612-798-3223
                    Telecopier No.:  612-798-3146

Any party may change its address for notices hereunder by notice to each other party hereunder given in accordance with this Section. Each notice, request or other communication shall be in writing and shall be deemed to be effective (a) if given by facsimile, when such facsimile is transmitted to the facsimile number specified in this Section and confirmation of receipt is made by the appropriate party, (b) if given by overnight courier, 24 hours after such communication is deposited with the overnight courier for delivery, addressed as aforesaid, or (c) if given by any other means, when delivered at the address specified in this Section 9.  Notices requiring a response within less than 48 hours shall be given by facsimile transmission.

10.    Legal Holidays.  In any case where the date on which a notice is required to be sent to any person pursuant to the terms of this Agreement shall not be a business day in the State of Minnesota, then (notwithstanding any other provision of this Agreement) the time period for response shall begin at 9:00 a.m. on the first business day following the legal holiday.

11.    Severability Clause.  Any part, provision, representation, or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.  Any part, provision, representation, or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without

12853v4

MI2013449

invalidating the remaining provisions hereof.   To the extent permitted by applicable law, the parties waive any provision of law which prohibits or renders void or unenforceable any provision hereof.

12.   <u>Assignment; Additional Parties</u>.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns, but neither PCI nor M&I shall be entitled to assign or delegate any of its rights or duties hereunder.  The Protected Party shall be free to assign its rights and delegate its duties under this Agreement to any successor "Administrative Agent" under the Note Purchase Agreement.

13.   <u>Counterparts</u>.  For the purpose of facilitating the execution of this Agreement and for other purposes, this Agreement may be executed simultaneously in any number of counterparts, and by the different parties on separate counterparts, each of which shall be deemed to be an original, and together shall constitute and be one and the same instrument.

14.   <u>Governing Law; Waiver of Jury Trial</u>.

(a)   Governing Law.  This Agreement shall be governed by, and construed in accordance with, the internal laws (without giving effect to the conflicts of laws provisions) of the State of Minnesota.

(b)   Jurisdiction.  Each of the parties hereto hereby irrevocably submits to the nonexclusive jurisdiction of any Minnesota state or federal courts sitting in Minneapolis or St. Paul, Minnesota, in any action or proceeding arising out of or relating to this Agreement and hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such Minnesota state court or in such federal court.  Each of the parties hereto hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding and irrevocably consents to the service of copies of the summons and complaint and any other process which may be served in any such action or proceeding by the mailing of copies of such process to the applicable party at its address specified in Section 9.  Each of the parties hereto agrees that a final judgment in any such action or proceedings shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(c)   <u>WAIVER OF JURY TRIAL</u>.  EACH OF THE PARITES HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY INSTRUMENT OR DOCUMENT DELIVERED HEREUNDER OR THEREUNDER.

15.   <u>Amendments</u>.  This Agreement may be amended from time to time by written instrument signed by the parties hereto.  No waiver of any of the terms hereof

12853v4

MI2013450

shall be effective unless it is in writing and signed by the party against which such waiver is being asserted.

16. **No Waiver.** No failure on the part of the Protected Party, PCI or M&I to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

17. **Integration.** This Agreement contains a final and complete integration of all prior expressions by the parties hereto with respect to the subject matter hereof and shall constitute the entire agreement among the parties hereto with respect to such subject matter, superseding all prior oral or written understandings.

18. **Agreement Effectiveness.** This Agreement shall become effective upon delivery of fully executed counterparts hereof to each of the parties hereto.

19. **Headings Descriptive; Construction.** The headings of the sections and subsections of this Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement. Unless otherwise specifically provided, references in this Agreement to Articles, Sections, and Exhibits are to Articles, Sections, Annexes, and Exhibits of or to this Agreement. All Exhibits hereto are incorporated herein by the references thereto in this Agreement.

20. **Judicial Interpretation.** Should any provision of this Agreement require judicial interpretation, it is agreed that a court interpreting or construing the same shall not apply a presumption that the terms hereof shall be more strictly construed against any person by reason of the rule of construction that a document is to be construed more strictly against the person who itself or through its agent prepared the same, it being agreed that all parties have participated in the preparation of this Agreement.

12853v4

MI2013451

IN WITNESS WHEREOF, each of the parties have executed and delivered this
Deposit Account Control Agreement as of the day and year first above set forth.

M&I MARSHALL & ILSLEY BANK

By _____
Its  Sr Vice President

PETTERS COMPANY, INC.

By _____
Its  Thomas J. Petters, CEO

INTERLACHEN    HARRIET    INVESTMENTS
LIMITED

By:  Interlachen Capital Group LP, an authorized
       signatory

By _____
Its  Authorized Signatory

12853v4

MI2013452

IN WITNESS WHEREOF, each of the parties have executed and delivered this Deposit Account Control Agreement as of the day and year first above set forth.

M&I MARSHALL & ILSLEY BANK

By: _____
Its: Sr. Vice President

PETTERS COMPANY, INC.

By: _____
Its: Thomas J. Petters, CEO

INTERLACHEN   HARRIET   INVESTMENTS
LIMITED

By:   Interlachen Capital Group LP, an authorized
signatory

By: _____
Its  Authorized Signatory

12853v4

**MI2013452**