UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered under BKY 08-45257** |
| Petters Company, Inc., et al, | BKY 08-45257 |
| Debtors. | |
| (includes | Court File Nos.: |
| Petters Group Worldwide, LLC; | 08-45258 |
| PC Funding, LLC; | 08-45326 |
| Thousand Lakes, LLC; | 08-45327 |
| SPF Funding, LLC; | 08-45328 |
| PL Ltd., Inc.; | 08-45329 |
| Edge One LLC; | 08-45330 |
| MGC Finance, Inc.; | 08-45331 |
| PAC Funding, LLC; | 08-45371 |
| Palm Beach Finance Holdings, Inc.) | 08-45392 |
| | Chapter 11 Cases |
| | Judge Kathleen H. Sanberg |
| Douglas A. Kelley, in his capacity as the Trustee of the BMO Litigation Trust, | ADV 12-4288 |
| Plaintiff, | |
| v. | |
| BMO Harris Bank N.A., as successor To M&I Marshall and Ilsley Bank, | |
| Defendant. | |

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

At Minneapolis, Minnesota
February 24, 2017

This adversary proceeding originates from the failure of the Petters Ponzi scheme

orchestrated by Thomas J. Petters and his associates, the history of which has been well

NOTICE OF ELECTRONIC ENTRY AND FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *02/24/2017*
Lori Vosejpka, Clerk, by LH

1

documented in this district as well as others nationwide.[1]  Liquidating Trustee Douglas A. Kelley ("Plaintiff") filed this adversary proceeding against BMO Harris Bank N.A., as successor to M&I Marshall and Ilsley Bank ("Defendant"), alleging violations of the Minnesota Uniform Fiduciaries Act ("MUFA"), breach of fiduciary duty, aiding and abetting breach of fiduciary duty, aiding and abetting fraud, and civil conspiracy.

Defendant filed a Motion to Dismiss Adversary Proceeding ("Motion") on October 24, 2016.[2]  Plaintiff filed a response on November 11, 2016.[3]  The Court heard oral argument on January 5, 2017.  Joshua Yount, Thomas Kiriakos, and Adine Momoh appeared for the Defendant.  Thomas Hamlin and Michael Rief appeared for the Plaintiff.

After oral argument, the Court ordered supplemental briefing on the issue of judicial estoppel.[4]  The parties submitted their supplemental briefing and Ritchie Special Credit Investments, Ltd, and Ritchie Capital Management SEZC, Ltd, filed a Statement regarding their standing to sue BMO on January 31, 2017.[5]

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) & 1334, Fed. R. Bankr. P. 7001, and Local Rule 1070-1.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(H).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] *See e.g.*, *In re Petters Co., Inc.*, 401 B.R. 391 (Bankr. D. Minn. 2009), *aff'd*, 620 F.3d 847 (8th Cir. 2010); *In re Petters Co., Inc.*, 440 B.R. 805 (Bankr. D. Minn. 2010); *In re Petters Co., Inc.*, 506 B.R. 784 (Bankr. D. Minn. 2013); *In re Petters Co., Inc.*, 548 B.R. 551 (Bankr. D. Minn. 2016); *In re Polaroid Corp.*, 472 B.R. 22 (Bankr. D.Minn. 2012); *aff'd*, 779 F.3d 857 (8th Cir. 2015); *see also Peterson v. Winston & Strawn LLP*, 729 F.3d 750, 751 (7th Cir. 2013); *Peterson v. Somers Dublin Ltd.*, 729 F.3d 741, 744 (7th Cir. 2013); *United States Sec. and Exch. Comm'n v. Quan*, 817 F.3d 583, 587-589 (8th Cir. 2016); *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 836-837 (8th Cir. 2014); *In re Cypress Fin. Trading Co., L.P.*, 620 Fed. Appx. 287, 288 (5th Cir. 2015); *In re Palm Beach Fin. Partners, L.P.*, 527 B.R. 518, 521 (S.D. Fla. 2015); *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 319-321 (Bankr. S.D. Fla. 2013).
[2] Doc. 56.
[3] Doc. 59.
[4] Doc. 62.
[5] Doc. 74.

2

This adversary proceeding was reassigned to the undersigned when Chief Judge Gregory F. Kishel retired on May 31, 2016. The undersigned hereby certifies familiarity with the record and determines that this matter may be addressed without prejudice to the parties in accordance with Fed. R. Civ. P. 63, as incorporated by Fed. R. Bankr. P. 9028.

The Motion is granted in part and denied in part for the reasons that follow.

## Background and Procedural History

After Petters' Ponzi Scheme was uncovered in late 2008, Judge Ann Montgomery of the United States District Court for the District of Minnesota appointed the Plaintiff, Douglas Kelley, as the equity receiver for Petters Company Inc. and its affiliates ("PCI"). On October 11, 2008, the Plaintiff filed a Chapter 11 petition on behalf of PCI. The Plaintiff was appointed the Chapter 11 Trustee on February 26, 2009. On November 14, 2012, Plaintiff filed this adversary proceeding against Defendant.

The Court confirmed the Second Amended Plan of Chapter 11 Liquidation on April 15, 2016. The Plan established the BMO Litigation Trust, which is administered by the Plaintiff, as Liquidating Trustee. The Plan transferred the BMO Litigation Trust Assets, including the causes of action asserted in this adversary proceeding, into the BMO Litigation Trust.[6]

The Plaintiff filed the First Amended Complaint ("Complaint") on October 20, 2016.[7] Generally, the Complaint alleges that the Defendant provided banking and related services to Petters and PCI.[8] The Complaint also alleges that Defendant was complicit in the Ponzi scheme, that Defendant "was presiding" over the checking account ("M&I account") through which virtually all funds involved in the Ponzi scheme "were laundered", and that Defendant served as

---

[6] *See* Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Chapter 11 Plan of Liquidation Dated April 8, 2016, Case No. 08-45257, Doc. 3305, pg. 30.
[7] Doc. 55, pg. 2.
[8] Doc. 55, pg. 2.

3

a "critical lynchpin" legitimizing and facilitating the Ponzi scheme by signing Deposit Control Agreements ("DCAs") to placate investors, among other actions.[9]

The Complaint states five causes of action:

1. Count I alleges that Defendant violated Minn. Stat. § 520.08, the Minnesota Uniform Fiduciaries Act.

2. Count II alleges that the Defendant breached its fiduciary duties to PCI and PCI's investors.

3. Count III alleges that Defendant aided and abetted Petters and his associates' fraud.

4. Count IV alleges that Defendant aided and abetted Petters and his associates' breach of fiduciary duties.

5. Count V alleges that Defendant engaged in a civil conspiracy with Petters and his associates.

### Standard of Review

In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.[10] Although the factual allegations need not be detailed, they must be sufficiently plead to "raise a right to relief above the speculative level ...."[11] The complaint must state a right to relief that is plausible on its face.[12] Further, Rule 9(b) requires that allegations of fraud, including allegations of aiding and abetting fraud, must be

---

[9] Doc. 55, pg. 2.
[10] *Shank v. Carleton Coll.*, No. 16-CV-1154 (PJS/FLN), 2017 WL 80249, at *3 (D. Minn. Jan. 9, 2017)*; citing Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).
[11] *Shank*, 2017 WL 80249, at *3*; citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[12] *Shank*, 2017 WL 80249, at *3*; citing Twombly*, 550 U.S. at 570.

plead with particularity.[13] Rule 9(b) must be read "in harmony with the principles of notice pleading."[14]

Defendant's Motion contains six arguments for dismissal under Federal Rules of Civil Procedure 12(b)(1) and (6). (The Court will not address the sixth issue, judicial estoppel, because Count V, to which it pertains, is dismissed as discussed below.)

### I.     Plaintiff has standing to pursue corporate claims.

Defendant's first main argument is that Plaintiff lacks standing to pursue claims on behalf of PCI or creditors.

A motion to dismiss attacking a party's standing under Rule 12(b)(1) is a challenge to the Court's subject matter jurisdiction. In deciding a motion under Rule 12(b)(1), the Court must first "distinguish between a 'facial attack' and a 'factual attack.'"[15] Here, because Defendant's challenge to Plaintiff's standing rests not on the truthfulness of Plaintiff's pleadings, but on the sufficiency of Plaintiff's pleadings, Defendant's jurisdictional challenge is facial and the Court applies the same standard of review as the Court applies to a motion brought under Rule 12(b)(6).[16]

In order for a court to decide the merits of a particular dispute, a party must have standing.[17] Standing requires that a party assert its own legal rights and interests and cannot rest its claims to relief solely on the legal rights or interests of third parties.[18]

---

[13] *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 795 F. Supp. 2d 874, 877 (D. Minn. 2011), *aff'd,* 678 F.3d 659 (8th Cir. 2012); *citing* Fed.R.Civ.P. 9(b).
[14] *Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 984 (D. Minn. 2011); *quoting BJC Health Sys. v. Columbia Cas. Co.,* 478 F.3d 908, 917 (8th Cir.2007).
[15] *City of Wyoming v. Procter & Gamble Co.*, No. CV 15-2101 (JRT/TNL), 2016 WL 5496321, at *3 (D. Minn. Sept. 28, 2016); *citing Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).
[16] *City of Wyoming*, 2016 WL 5496321 at *3; *citing Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007); *see also Sierra Club v. Clinton*, 689 F. Supp.2d 1147, 1154 (D. Minn. 2010).
[17] *Safelite Grp., Inc. v. Rothman*, No., 2017 WL 337988, at *10 (D. Minn. Jan. 23, 2017); *citing Glickert v. Loop Trolley Transp. Dev. Dist.*, 792 F.3d 876, 880 (8th Cir. 2015).

5

A bankruptcy trustee has standing, pursuant to 11. U.S.C. §§ 704(1) and 1106(a), to pursue claims or causes of action that belonged to the bankruptcy estate on the date of filing in order to fulfill its duty to "collect and reduce to money the property of the estate . . ."[19] Property of the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case, including causes of action.[20]

A. *The Plaintiff may pursue claims to recover for harm to PCI.*

In Minnesota, a corporation may bring a claim when it has been injured.[21] The Complaint here alleges many instances of wrongdoing by the Defendant that hurt the debtor. Thus, the Plaintiff, as trustee of the BMO Litigation Trust, may pursue any claim to recover for harm done to PCI. These will be fully addressed count by count below.

B. *The Plaintiff may pursue derivative claims on behalf of creditors.*

Defendant's next standing argument is that the Plaintiff cannot bring causes of action on "behalf of creditors" because, to have standing, the Plaintiff must assert his own legal rights and not those of others. While this prudential limitation on standing is consistently applied in the bankruptcy context, it is only applied when the claims at issue are solely direct claims of creditors.[22] That is not the case here. The Plaintiff is properly pursuing derivative claims of the estate, with two exceptions discussed below.

---

[18] *See Warth v. Seldin*, 422 U.S. 490, 499 (1975).
[19] *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007); *citing* 11 U.S.C. § 704(1); *citing In re Ozark Rest. Equip. Co.*, 816 F.2d 1222, 1225 (8th Cir.1987).
[20] *In re Senior Cottages of Am., LLC*, 482 F.3d at 1001; *citing* 11 U.S.C. § 541(a)(1).
[21] *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 624 (Minn. 2007).
[22] *In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 58 (2d Cir. 2013); *citing Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991); *see also In re Duke & King Acquisition Corp.*, 508 B.R. 107, 132 (Bankr. D. Minn. 2014); *In re Ozark Rest. Equip. Co., Inc.*, 816 F.2d at 1228.

6

A derivative action arises when a person seeks redress for harm to a corporation, on behalf of the corporation, rather than for harm the person suffered individually.[23] Derivative suits belong to the corporation in the first instance, but they are usually brought by shareholders against wrongdoers on behalf of the corporation because the corporation is unwilling or unable to do so.[24] Corporate shareholders may sue on behalf of the corporation because they share the risk of loss due to their status as shareholders.[25] This is what happens when a corporation is solvent.

Under Minnesota law, when a corporation is insolvent, or on the verge of insolvency, its directors and officers become fiduciaries of the corporate assets, which are held *for the benefit of creditors*.[26] This shift takes place "because insolvency expands the risk of corporate loss beyond shareholders to corporate creditors."[27] Thus, when a corporation is insolvent, the corporation's derivative claims include claims to recover for harm to creditors. A corporation that executes a Ponzi scheme is by definition insolvent.[28] Thus, here, the estate's derivative claims for harm to creditors are properly pursuable by the Plaintiff who stands in the shoes of the debtor.[29]

The Court now turns to the method for determining whether the causes of action asserted

---

[23] *Nw. Racquet Swim & Health Clubs, Inc. v. Deloitte & Touche*, 535 N.W.2d 612, 617 (Minn. 1995); *citing Singer v. Allied Factors, Inc.*, 216 Minn. 443 (1944); *Seitz v. Michel*, 148 Minn. 474, 181 N.W. 106 (1921).
[24] *See In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 754 N.W.2d 544, 550 (Minn. 2008); *citing Janssen v. Best & Flanagan*, 662 N.W.2d 876, 882 (Minn. 2003); *see also Pepper v. Litton*, 308 U.S. 295, 307, 60 (1939).
[25] *In re Sec. Asset Capital Corp.*, 396 B.R. 35, 40 (Bankr. D. Minn. 2008).
[26] *Helm Fin. Corp. v. MNVA R.R.*, 212 F.3d 1076, 1081 (8th Cir. 2000); *citing Snyder Electric Co. v. Fleming*, 305 N.W.2d 863, 869 (Minn. 1981); *see also In re Tri-River Trading, LLC*, 329 B.R. 252, 266 (B.A.P. 8th Cir. 2005), *aff'd sub nom. DeBold v. Case*, 452 F.3d 756 (8th Cir. 2006).
[27] *In re Sec. Asset Capital Corp.*, 396 B.R. at 40. Though, "the nature and extent of the performance of fiduciary duties by directors and officers of insolvent corporations do not change." *In re Sec. Asset Capital Corp* at 40.
[28] *In re Petters Co., Inc.*, 495 B.R. 887, 923 (Bankr. D. Minn. 2013), *as amended* (Aug. 30, 2013); *see also Cunningham v. Brown*, 265 U.S. 1, 8 (1924); *Scholes v. Lehman*, 56 F.3d 750, 755 (7th Cir. 1995); *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006).
[29] First Amended Complaint, Doc. 55, pg. 9 ¶ 21. Any derivative causes of action that had accrued to PCI pre-bankruptcy passed into the bankruptcy estate when the Plaintiff filed the bankruptcy petition. These passed into the BMO Liquidating Trust as part of the confirmed plan, and are now properly pursuable by the Plaintiff. *See also* Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Chapter 11 Plan of Liquidation Dated April 8, 2016, Case No. 08-45257, Doc. 3305, pg. 30; *In re Duke & King Acquisition Corp.*, 508 B.R. 107, 132–33 (Bankr. D. Minn. 2014).

by the Plaintiff to recover for harm to creditors are direct or derivative.[30]  In the Eighth Circuit, whether a particular cause of action arising under state law is direct and belongs solely to a third person or is derivative and belongs to a debtor in bankruptcy is determined by state law.[31]  Here, that would be Minnesota law. In *Northwest Racquet,* the Minnesota Supreme Court stated that the method in Minnesota for distinguishing between a direct and a derivative claim is to consider whether the injury to the individual plaintiff is separate and distinct from the injury to other persons in a similar situation as the plaintiff.[32]  If a cause of action is to recover for harm to all creditors similarly situated, it is a derivative claim properly pursuable by the plaintiff.[33]  Here, the Court must determine whether the complained-of injury in each cause of action in this case was an injury to particular creditors or to all creditors similarly situated.[34]

Count I

Count I alleges that Defendant breached MUFA because it processed PCI's transactions with actual knowledge that PCI's directors, in making such transactions, were breaching their fiduciary duties to PCI and its creditors (the Ponzi scheme victims).  The type of harm described

---

[30] *Greenpond S., LLC v. Gen. Elec. Capital Corp.*, 886 N.W.2d 649, 655 (Minn. Ct. App. 2016), *review granted* (Jan. 17, 2017); *citing In re N.S. Garrott & Sons*, 772 F.2d 462, 466 (8th Cir.1985) *and Nat'l City Bank v. Coopers & Lybrand*, 409 N.W.2d 862, 869–70 (Minn. App.1987), *review denied* (Minn. Oct. 21, 1987); *see also In re Senior Cottages of Am., LLC*, 482 F.3d at 1001.
[31] *In re Senior Cottages of Am., LLC*, 482 F.3d at 1001; *citing In re Ozark Rest. Equip. Co.*, 816 F.2d 1222, 1225 (8th Cir.1987).
[32] *Nw. Racquet Swim & Health Clubs, Inc. v. Deloitte & Touche*, 535 N.W.2d 612, 617 (Minn. 1995); *citing Seitz v. Michel,* 148 Minn. 474, 181 N.W. 106 (1921).
[33] Two Minnesota courts have already considered the question of whether the Plaintiff's claims in similar adversary proceedings are derivative or direct.  In *Greenpond South, LLC v. General Electric Corp.*, the Minnesota Court of Appeals barred a party from pursuing derivative claims because the Chapter 11 Trustee of PCI had already asserted and settled those claims. *Greenpond S., LLC v. Gen. Elec. Capital Corp.*, 886 N.W.2d at 657, *review granted* (Jan. 17, 2017).  In *Ritchie Capital Management, L.L.C., v. BMO Harris Bank, N.A.*, the United States District Court for the District of Minnesota dismissed Ritchie's claims against BMO, holding that because Ritchie's claims were "duplicative of the PCI Bankruptcy proceedings, abstention is appropriate. . ." *Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, No. CV 15-1876 ADM/JJK, 2016 WL 1060213, at *12 (D. Minn. Mar. 15, 2016). Because of the current status of these cases, the Court will not rely on them but will conduct its own analysis.
[34] *Wessin v. Archives Corp.*, 592 N.W.2d 460, 464 (Minn. 1999).

8

in Count I injured PCI, and indirectly harmed all of PCI's creditors, situated similarly, by virtue of their status as creditors. Count I is therefore a derivative claim pursuable by the Plaintiff.

### Count II

Count II, titled "breach of fiduciary duty," alleges that Defendant breached its fiduciary duty to PCI and PCI's creditors. Count II also includes allegations that Defendant's conduct constituted gross negligence or willful misconduct.

Plaintiff alleges that Defendant's fiduciary duties arise under DCAs attached to the Complaint.[35] The DCAs contain contradictory language concerning to whom Defendant owed duties. For example, the Palm Beach Deposit Control Agreement (the "Palm Beach agreement") provides that Defendant would hold funds "in trust for the Protected Party" which would be Palm Beach.[36] Just a few paragraphs down, the Palm Beach agreement provides that Defendant would hold funds "for the benefit of Petters and the Protected Parties."[37] (The Palm Beach agreement uses the term *Petters* as a reference for *PCI*.[38]) There are at least two references in the Palm Beach agreement that Defendant would hold funds for the benefit of PCI.[39] The DCAs, therefore, support an allegation that Defendant owed fiduciary duties to PCI. Plaintiff, therefore, has standing to state a claim to recover for harm done to PCI by Defendant's alleged breach of those fiduciary duties.

A close reading of the Complaint and the attached DCAs shows that, to the extent Defendant owed any fiduciary duty directly to PCI's creditors in general, those duties stemmed solely from the DCAs. Plaintiff provides no facts supporting the existence of any other duty

---

[35] In reviewing a motion to dismiss the court may consider materials that are necessarily embraced by or attached to the complaint. *Shank v. Carleton Coll.*, No. 16-CV-1154 (PJS/FLN), 2017 WL 80249, at *3 (D. Minn. Jan. 9, 2017); citing *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).
[36] Doc. 55-2, pg. 6.
[37] Doc. 55-2, pg. 6.
[38] Doc. 55-2, pg. 6.
[39] Doc. 55-2, pgs. 6-7.

Defendant owed directly to PCI's creditors in general. Because the Complaint provides that only three creditors were signatories to the DCAs, any claim for breach of fiduciary duty owed to PCI's creditors would be to remedy the particularized harm to those three creditors. Such claims would be direct claims belonging solely to the three creditors. Plaintiff therefore does not have standing to pursue Count II to the extent Count II seeks to recover for harm done directly to the three creditors. Plaintiff only has standing to pursue harm to PCI itself.

### Count III

Count III alleges that Defendant aided and abetted Petters' fraud because Defendant provided substantial assistance to Petters with actual knowledge of the fraud by making "tens of billions of dollars in wire transfer payments" from the M&I account, among other allegations.[40] Count III further alleges that "[w]ithout the substantial assistance that [Defendant] provided, the Ponzi scheme would have been discovered earlier by law enforcement authorities and victims of the Ponzi scheme."[41] Though Count III is vague as to who exactly was hurt by the alleged conduct, the Court concludes that Count III seeks to recover for harm done directly to PCI and derivatively to the general creditors of PCI. Plaintiff therefore has standing to pursue Count III.

### Count IV

Count IV alleges that Defendant had actual knowledge of Petters and his associates' fiduciary duties to PCI and its creditors, and that Defendant aided and abetted Petters and his associates' breach of those duties. Count IV sufficiently states a claim to recover harm to PCI as well as a derivative claim for harm done to PCI's creditors because the harm alleged only affected the creditors by virtue of their status as creditors. Plaintiff therefore has standing to pursue Count IV.

---

[40] Doc. 55, pg. 50, ¶ 162.
[41] Doc. 55, pg. 50, ¶ 164.

Count V

Count V alleges that Defendant engaged in a civil conspiracy with Petters and his associates to defraud investors by inducing them to commit funds to the Ponzi scheme. The harm alleged in Count V injured creditors directly. The actions did not harm PCI directly, nor were creditors harmed by virtue of their status as creditors. Thus, Plaintiff may not pursue this claim.

In conclusion, Plaintiff has standing to pursue Counts I, II (to the extent it seeks to recover for harm done directly to PCI), III, and IV. Plaintiff lacks standing to pursue II (to the extent it seeks recovery for harm done directly to PCI's creditors) and Count V, which is a direct claim belonging solely to the creditors. Count V is dismissed.

## II.    The Plaintiff is not barred by *in pari delicto*.

Defendant's second main argument is that Plaintiff is barred by the doctrine of *in pari delicto* from pursuing any claim against Defendant because Plaintiff stands in the shoes of PCI, which was a party to the Ponzi scheme while under the control of Petters. Plaintiff responds by asserting that, under Minnesota law, appointment of a receiver allows the receiver to pursue claims that might otherwise be barred by *in pari delicto*.[42] Plaintiff also asserts that the defense is not appropriate for determination on a motion to dismiss.

The equitable defense of *in pari delicto* provides that "[g]enerally, anyone who engages in a fraudulent scheme forfeits all right to protection, either at law or in equity."[43] *In pari delicto* "is based upon judicial reluctance to intervene in disputes between parties who are both

---

[42] *See German-Am. Fin. Corp. v. Merchants' & Mfrs' State Bank of Minneapolis*, 177 Minn. 529, 535 (1929).
[43] *State by Head v. AAMCO Automatic Transmissions, Inc.*, 293 Minn. 342, 347 (1972); *citing Kansas City Operating Corp. v. Durwood*, 278 F.2d 354, 357 (8 Cir. 1960); *see also Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 836 (8th Cir. 2005).

wrongdoers in equal fault."[44] In order to bar recovery, the plaintiff's conduct must be at least equal to the defendant's wrongful conduct.[45] Though the doctrine is usually applied to parties to an illegal contract, it also applies to torts based upon fraud or similar intentional wrongdoing.[46] *In pari delicto* may be applied in the bankruptcy context to bar claims brought by trustees standing in the shoes of wrongdoers.[47]

Whether *in pari delicto* may be asserted by a third party against a wrongdoer's partner turns on the relationship between the partners, which is a question of state law.[48] Minnesota courts have declined to apply *in pari delicto* in cases in which the plaintiff is a receiver because the receiver represents the rights of creditors "even though the defense set up might be valid against the corporation itself."[49] The receiver is therefore "not bound by the fraudulent acts of a former officer of the corporation."[50]

Finally, under Minnesota law, courts have discretion over whether to apply equitable defenses.[51] The doctrine of *in pari delicto* requires "'the trial court to make a determination of fact regarding the mutual fault of the parties' [thus] a resolution of the defense 'on a motion to dismiss would be inappropriate.'"[52] Further, applying *in pari delicto* at the motion to dismiss stage is more likely to be inappropriate when the motion is brought under Rule 12(b)(6).[53]

---

[44] *State by Head*, 293 Minn. at 347.
[45] *See Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1066 (D. Minn. 2003).
[46] *State by Head*, 293 Minn. at 347.
[47] *See e.g. In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 63 (2d Cir. 2013); *Nisselson v. Lernout*, 469 F.3d 143, 157 (1st Cir. 2006).
[48] *Grassmueck*, 402 F.3d at 837; *citing In re Newman*, 875 F.2d 668, 670 (8th Cir.1989); *see also O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 114 (1994).
[49] *German-Am. Fin. Corp. v. Merchants' & Mfrs' State Bank of Minneapolis*, 177 Minn. 529, 535 (1929).
[50] *Magnusson v. Am. Allied Ins. Co.*, 290 Minn. 465, 473, 189 N.W.2d 28, 33 (1971); *see also Bonhiver v. Graff*, 311 Minn. 111, 118 (1976); *Kelley v. Coll. of St. Benedict*, 901 F. Supp. 2d 1123, 1129 (D. Minn. 2012).
[51] *See City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 23 (Minn. 2011).
[52] *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1066 (D. Minn. 2003); c*iting Haynes v. Anderson & Strudwick, Inc.*, 508 F. Supp. 1303, 1317 (E.D.Va.1981).
[53] *In re RFC & ResCap Liquidating Trust Litig.*, No. 13-CV 3520 JRT/HB, 2015 WL 2451254, at *13 (D. Minn. May 21, 2015).

First, Judge Montgomery appointed Douglas A. Kelley as receiver of PCI and related entities. The appointment of Kelley as receiver provides a compelling reason not to apply *in pari delicto* at this time. Second, the Court declines to determine whether *in pari delicto* would be appropriately applied to the facts of this case at this time because it is an inherently fact-bound inquiry. As the Court must make all inferences in favor of the Plaintiff, the Court does not have enough facts to determine the fault of the parties. Thus, this argument fails.

### III.     Plaintiff has sufficiently plead a claim for relief under MUFA.

Defendants' third argument is that Count I should be dismissed because Plaintiff has failed to state a claim under Minn. Stat. § 520.08, the Minnesota Uniform Fiduciaries Act. Count I alleges that Defendant is liable under MUFA for processing transactions through which Petters and his associates breached their fiduciary duties to, or acted in bad faith toward, PCI and PCI's investors. The transactions were wire transfers made from PCI's checking account.[54]

Defendant advances two arguments. First, that MUFA requires that the transactions be made by check, not wire transfer.[55] Second, that MUFA requires a plaintiff to plead specific check transactions.[56] The Court will address each in turn.

### A.     *Minnesota law would not require that transactions violating MUFA be made by check.*

Plaintiff argues that Minnesota has adopted the Uniform Fiduciary Act, in the form of Minn. Stat. § 520.08, and that "virtually every court that has addressed this argument [of whether the transactions must be made by check] has rejected it, finding the references to 'checks' in UFA provisions cover wire transfers and other electronic payments."[57] No Minnesota court has directly addressed this issue. When a federal court interprets state law with no controlling

---

[54] Doc. 55, pg. 13, ¶ 36.
[55] Doc. 56, pg. 48.
[56] Doc. 56, pg. 48.
[57] Doc. 59, pg. 42; *citing Richard v. Platte Valley Bank*, 866 F.2d 1576 (10th Cir. 1989).

13

authority, the federal court must predict how the state high court would rule.[58] The federal court can look to intermediate state court precedent as persuasive authority.[59] In *Minnesota Valley Country Club, Inc. v. Gill*, the Minnesota Court of Appeals, in examining whether a fiduciary violated Minn. Stat. §§ 520.08 and 520.09 by converting savings certificates to a cashier's check, reasoned that the actual format of the transactions is not as important as their substance. It was the type of conduct that the provisions in §§ 520.08 and 520.09 were intended to prevent that mattered.[60]

In light of this flexibility in interpreting Minn. Stat. § 520.08, and considering the case law from numerous other courts, the Court finds that the Minnesota Supreme Court would decline to apply the relevant UFA section solely to check transactions.[61] Defendant's argument fails.

> B.  *The Plaintiff does not need to plead specific check transactions to state a claim under Minn. Stat. § 520.08.*

Defendant argues that the Eighth Circuit case *In re Buffets* requires that a plaintiff asserting a claim under Minn. Stat. § 520.08 specify individual transactions violating MUFA.[62] In *Buffets*, the Eighth Circuit noted that the UFA "provides principals limited protection against a bank's knowing or bad-faith processing of a *specific* transaction that breaches a fiduciary obligation. For the bank to act with bad faith in a particular transaction, the bank must be aware

---

[58] *See Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010); *Minnesota Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006); *Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006).
[59] *Progressive N. Ins. Co. v. McDonough*, 608 F.3d at 390.
[60] *Minnesota Valley Country Club, Inc. v. Gill*, 356 N.W.2d 356, 362 (Minn. Ct. App. 1984).
[61] *See U.S. Commodity Futures Trading Commission v. U.S. Bank, N.A.*, No. 13–cv-2041, 2014 U.S. Dist. LEXIS 162665, at *71–72, *72 n.11 (N.D. Iowa Nov. 19, 2014); *Penalosa Cooperative Exchange v. A.S. Polonyi Co.*, 745 F. Supp. 580, 587 (W.D. Mo. 1990).
[62] *Buffets, Inc. v. Leischow*, 732 F.3d 889 (8th Cir. 2013).

14

that the funds in question are held pursuant to a fiduciary obligation in the first place."[63]

The Complaint contains sufficient factual detail to place Defendant on notice of the claims Plaintiff asserts and to state a claim for relief that is plausible on its face. Given the high volume of transactions Defendant processed on behalf of PCI, requiring Plaintiff to plead each specific transaction goes beyond the requirement of notice pleading.[64] Accordingly, Plaintiff has properly stated a claim for relief under MUFA and the request to dismiss Count I is denied.

### IV.     Count II states a claim for relief based on Defendant's alleged breach of fiduciary duties owed to PCI.

Defendant's fourth argument is that Count II should be dismissed because Plaintiff failed to plead that Defendant owed fiduciary duties to PCI or its investors or breached any such duties. Count II has already been dismissed to the extent it states a claim for relief based on harm from Defendant's alleged fiduciary duties to investors. With regard to fiduciary duties that Defendant may have owed to PCI directly, the Court concludes that Count II sufficiently states a claim for relief.

To state a claim for breach of fiduciary duty under Minnesota law, the Plaintiff must plead the existence of a fiduciary duty, a breach of that duty, causation, and damages.[65] Count II sufficiently alleges that Defendant owed PCI fiduciary duties based on the DCAs, which provide that Defendant would hold funds "for the benefit" of PCI.[66] As discussed above, although the DCAs contain contradictory language over exactly what duties Defendant owed and to whom, resolution of that issue is a fact question not appropriately resolved on a motion to dismiss.

---

[63] *Buffets*, 732 F.3d at 900 (internal citations omitted); *citing* Minn.Stat. § 520.09; *Rodgers v. Bankers' Nat'l Bank*, 179 Minn. 197, 229 N.W. 90, 92–94 (1930).
[64] The Court notes that *In re Buffets* was decided on summary judgment when all facts were before the court, unlike here where the facts must be viewed in favor of the Plaintiff.
[65] *Reisdorf v. i3, LLC*, 129 F. Supp. 3d 751, 767 (D. Minn. 2015).
[66] Doc. 55-2, pg. 6.

Count II also sufficiently pleads Defendant's alleged breach of its fiduciary duties to PCI by processing transfers initiated by PCI's directors under the circumstances outlined in the Complaint.[67]

Count II states a claim for relief to the extent Count II seeks to recover for harm done to PCI by Defendant's alleged breach of its fiduciary duties to PCI.

## V.    Plaintiff has sufficiently stated claims for aiding and abetting.

Defendant's fifth argument is that Counts III and IV should be dismissed for failure to plead actual knowledge and substantial assistance.

"Under Minnesota law, aiding and abetting the tortious conduct of another has three elements: '(1) the primary tort-feasor must commit a tort that causes an injury to the plaintiff; (2) the defendant must know that the primary tort-feasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tort-feasor in the achievement of the breach.'"[68]  A defendant's "knowledge that the primary tort-feasor's conduct constitutes a breach of fiduciary duty is a 'crucial element' of a claim for aiding and abetting."[69]

### A.    *Plaintiff has sufficiently plead that Defendant had actual knowledge of Petters' fraud.*

Defendant argues that the Eighth Circuit case *Varga v. U.S. Bank National Association* supports its contention that Plaintiff failed to plead actual knowledge.  In order to have actual knowledge of underlying tortious conduct required by an aiding-and-abetting claim, a defendant must know what the primary actor was doing *and* that such conduct was wrongful.[70]  Defendant

---

[67] Doc. 55, pg. 49, ¶ 157.
[68] *Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833, 839 (8th Cir. 2014); *quoting Witzman v. Lehrman, Lehrman & Flom,* 601 N.W.2d 179, 187 (Minn.1999).
[69] *Varga*, 764 F.3d at 839.
[70] Doc. 56, pg. 58; *quoting Varga* at 857-858.

further argues that "[t]aken together, the Complaint's factual allegations plead, at most, circumstances that appear suspicious with 20/20 hindsight."[71]

Plaintiff points to numerous factual allegations to support the assertion of Defendant's actual knowledge of Petters' fraud. Among other facts plead, Plaintiff alleges that:

1. Defendant knew that Petters had made false representations to investors that their investments were being repaid from monies received from large retailers, when in fact the investors were being repaid from funds raised from other investors;

2. Petters had made false representations to investors that the M&I account balance was multiple millions of dollars more than what Defendant knew it to be;

3. Defendant knew that the activity in the M&I account was inconsistent with Petters' stated business activity;

4. Defendant knew that sham wholesalers were wiring money into the account;

5. Defendant knew that the high volume of transactions in the account was a sign of money-laundering; and

6. Defendant knew that Petters was looting the account.[72]

Plaintiff also argues that, as in this case, courts have held that a defendant with a long-term or in-depth relationship with a tortfeasor may be deemed to have constructive knowledge that the conduct was indeed tortious or illegal.[73]

Reading the Complaint as a whole, and construing the pleaded facts in the light most favorable to Plaintiff, the Court finds that the Plaintiff has sufficiently plead Defendant's actual

---

[71] Doc. 56, pg. 61.
[72] *See* Doc. 59, pg. 55; *and* Doc. 50, pg. 55.
[73] Doc. 59, pg. 54; *citing Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 283–84 (2d Cir. 1992).

knowledge of Petters' conduct and that such conduct was wrongful.[74]

        B.    *Plaintiff has sufficiently plead that Defendant provided substantial assistance to Petters.*

Defendant argues that Plaintiff failed to plead substantial assistance as required to state claims for aiding and abetting fraud and breach of fiduciary duty. Defendant argues that Plaintiff is required to allege that Defendant took affirmative steps that were a substantial factor in causing the tortious acts.[75] Defendant further asserts that substantial assistance "means something more than the provision of routine professional services"[76] and that processing transactions, which Defendant alleges is all M&I did, is "the very definition of routine service."[77]

Plaintiff argues that under Minnesota case law, routine professional services coupled with actual knowledge of wrongful conduct may state a claim for aiding and abetting.[78] *Varga* supports Plaintiff's argument as it notes that the bank was hired to process routine transactions and not retained to provide investment or other advice to the fiduciaries.[79]

The Court agrees with the Plaintiff. Counts III and IV go well beyond simply alleging routine professional services. For example, Plaintiff alleges that Defendant was a party to the DCAs, and that Defendant assisted Petters by placating wary investors.[80] Plaintiff alleges that Defendant processed transactions, despite numerous internal anti-fraud alerts, which were not

---

[74] Though the Court need not consider such a test at this time, Plaintiff's allegations would also be sufficient for the Court to consider whether Defendant was willfully blind to, or took deliberate steps to avoid, detecting fraudulent conduct, or whether a reasonable person, given the information available to Defendant, would have been alerted to the fraud. *See In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 117, 139 (Bankr. S.D.N.Y. 2014); *see also MARCIA R. MEOLI, Plaintiff-Appellee/Cross-Appellant, v. THE HUNTINGTON NATIONAL BANK, Defendant-Appellant/Cross-Appellee.*, No. 15-2308, 2017 WL 526063, at *11 (6th Cir. Feb. 8, 2017).
[75] Doc. 56, pg. 63; *citing Varga*, 952 F. Supp. 2d at 859, *aff'd*, 764 F.3d 833 (8th Cir. 2014).
[76] *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 189 (Minn. 1999).
[77] Doc. 56, pg. 64; *citing Varga*, 952 F. Supp. 2d at 860, *aff'd*, 764 F.3d 833 (8th Cir. 2014).
[78] *See Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 189 (Minn. 1999); *see also Anderson v. U.S. Bank Nat. Ass'n*, No. A13-0677, 2014 WL 502955, at *7 (Minn. Ct. App. Feb. 10, 2014)( routine professional services constitute substantial assistance when they are performed with knowledge of the client's fraud).
[79] *Varga*, 952 F. Supp. 2d at 860, *aff'd*, 764 F.3d 833 (8th Cir. 2014).
[80] Doc. 59, pg. 60.

routine but were highly suspicious and indicated money laundering and fraud.[81] The Complaint also alleges that Defendant expedited the process of dismissing fraud alerts and creating an overdraft exception specifically for Petters, precisely because the activity in the M&I account was so unusual.[82] Accordingly, the Court finds that Plaintiff has sufficiently plead that Defendant substantially assisted Petters' fraud to withstand a motion to dismiss.

## CONCLUSION

The Defendant's motion to dismiss is granted in part and denied in part. Plaintiff has standing to assert the claims in Counts I, III and IV. To the extent that Plaintiff states a claim in Count II for harm done to PCI, it is not dismissed. To the extent that Count II states a claim for the direct harm to three creditors, it is dismissed with prejudice as Plaintiff lacks standing to assert the claim. Count V asserts direct claims belonging to specific creditors and is dismissed with prejudice as Plaintiff lacks standing to assert this claim.

## ORDER

1. The Motion is granted in part and denied in part.

2. Count II is dismissed with prejudice to the extent it states a direct claim for harm f qpg to specific PCI creditors.

3. Count V is dismissed with prejudice.

4. No further motions to dismiss, motions for judgment on the pleadings, or requests to amend the First Amended Complaint may be filed without leave of the Court.

/e/ Kathleen H. Sanberg
KATHLEEN H. SANBERG
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[81] Doc. 59, pg. 56.
[82] Doc. 59, pg. 60.