# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered under**<br>**Case No. 08-45257** |
| Petters Company, Inc., et al., | |
| Debtors. | **Court File No. 08-45257** |
| | Court File No.: |
| (includes: | |
| Petters Group Worldwide, LLC; | 08-45258 (KHS) |
| PC Funding, LLC; | 08-45326 (KHS) |
| Thousand Lakes, LLC; | 08-45327 (KHS) |
| SPF Funding, LLC; | 08-45328 (KHS) |
| PL Ltd., Inc.; | 08-45329 (KHS) |
| Edge One LLC; | 08-45330 (KHS) |
| MGC Finance, Inc.; | 08-45331 (KHS) |
| PAC Funding, LLC; | 08-45371 (KHS) |
| Palm Beach Finance Holdings, Inc.) | 08-45392 (KHS) |
| | Chapter 11 Cases<br>Judge Kathleen H. Sanberg |

| | |
|---|---|
| Douglas A. Kelley, in his capacity as the<br>Trustee of BMO Litigation Trust, | |
| Plaintiff, | Adversary No. 12-04288 |
| vs. | |
| BMO Harris Bank, N.A., as successor to M&I<br>Marshall and Ilsley Bank, | |
| Defendant. | |

## DEFENDANT BMO HARRIS BANK, N.A.'S ANSWER AND
## AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT

Defendant BMO Harris Bank, N.A. ("BMO"), as successor to M&I Marshall and Ilsley

Bank ("M&I"), submits this Answer to the First Amended Complaint ("FAC") filed on October

20, 2016 by Plaintiff Douglas A. Kelley, in his capacity as the Trustee of the BMO Litigation

Trust ("Trustee"). Dkt. 55. To the extent any allegations in the FAC are not expressly admitted, they are denied. Further, in accordance with Federal Rule of Civil Procedure 8(b) and Federal Rule of Bankruptcy Procedure 7008, any averment by Defendants that they lack knowledge or information sufficient to form a belief about the truth of an allegation shall have the effect of a denial.

No answer is required with respect to the headings, sub-headings, prayers for relief and other contents of the FAC that do not set forth allegations of fact that are not included within numbered paragraphs as required by Federal Rule of Civil Procedure 10(b) and Federal Rule of Bankruptcy Procedure 7010. Pursuant to Rule 10(b), the introductory statement and footnotes in the FAC are improper and should be stricken. *E.g., Holmes v. Gates*, 2010 WL 956412, at *1 n.1 (M.D. Pa. Mar. 11, 2010) (striking a complaint's introductory statement and footnotes as they ran "counter to the pleading requirements" of Rule 10(b)). To the extent an answer to these portions of the FAC is required, BMO denies all allegations contained therein.

In addition, BMO specifically denies any and all portions of the FAC that expressly or implicitly allege or otherwise suggest that M&I or any of its employees had knowledge of misconduct by Petters Company, Inc. or any of its principals or agents, knowingly assisted any such misconduct, acted in bad faith, or otherwise undertook any wrongful conduct. BMO expressly incorporates this denial into each paragraph of its Answer.

In answer to the numbered paragraphs of the FAC, BMO states as follows:

## PARTIES, JURISDICTION, AND VENUE[1]

1.      BMO denies the allegations in paragraph 1 to the extent they assert legal conclusions to which no response is required. To the extent a response is required, BMO admits

---

[1] BMO reiterates herein the section headings included in the FAC, but specifically denies any and all allegations and inferences of wrongdoing contained in those headings.

the allegations in paragraph 1 to the extent they are consistent with actions taken by the United States District Court for the District of Minnesota (the "District Court"), which are memorialized in orders that speak for themselves. BMO denies the remainder of the allegations in paragraph 1.

2.     BMO denies the allegations in paragraph 2 to the extent they assert legal conclusions to which no response is required. To the extent a response is required, BMO admits the allegations in paragraph 2 to the extent they are consistent with actions taken by the District Court, which are memorialized in orders that speak for themselves. BMO denies the remainder of the allegations in paragraph 2.

3.     Paragraph 3 states a legal conclusion to which no response is required. To the extent a response is required, BMO denies the allegations in the paragraph.

4.     BMO admits that Petters Company, Inc. ("PCI") filed a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on October 11, 2008 in Court File No. 08-45257. BMO lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in paragraph 4 and on that basis denies them.

5.     BMO denies the allegations in paragraph 5 to the extent they assert legal conclusions to which no response is required. To the extent a response is required, BMO admits the allegations in paragraph 5 to the extent they are consistent with actions taken by the United States Bankruptcy Court for the District of Minnesota (the "Court"), which are memorialized in orders that speak for themselves. BMO denies the remainder of the allegations in paragraph 5.

6.     BMO admits that the allegations in paragraph 6 purport to describe actions taken by the Court. BMO denies the allegations in paragraph 6 to the extent they assert legal conclusions to which no response is required. To the extent a response is required, BMO admits the allegations in paragraph 6 to the extent they are consistent with actions taken by the Court,

which are memorialized in orders that speak for themselves. BMO denies the remainder of the allegations in paragraph 6.

7.      BMO denies the allegations in paragraph 7 to the extent they assert legal conclusions to which no response is required. To the extent a response is required, BMO specifically denies that the Trustee has standing to bring causes of action directed to recovering lost investments made by investors. To the extent the allegations in paragraph 7 purport to characterize Judge Kishel's order and the BMO Litigation Trust Agreement, those documents speak for themselves, and BMO denies the allegations in paragraph 7 to the extent they are contrary to these documents. BMO denies the remainder of the allegations in paragraph 7.

8.      To the extent the allegations in paragraph 8 purport to characterize the BMO Litigation Trust Agreement, that document speaks for itself, and BMO denies the allegations in paragraph 8 to the extent they are contrary to this document. BMO denies the remainder of the allegations in paragraph 8.

9.      To the extent the allegations in paragraph 9 purport to characterize the BMO Litigation Trust Agreement, that document speaks for itself, and BMO denies the allegations in paragraph 9 to the extent they are contrary to this document. BMO denies the remainder of the allegations in paragraph 9.

10.     To the extent the allegations in paragraph 10 purport to characterize the Findings of Fact, Conclusion of Law, and Order Confirming the Second Amended Chapter 11 Plan of Liquidation Dated April 8, 2016, that document speaks for itself, and BMO denies the allegations in paragraph 10 to the extent they are contrary to this document. BMO denies the remainder of the allegations in paragraph 10.

11.     BMO admits that the Second Amended Chapter 11 Plan of Liquidation has become effective. Otherwise, paragraph 11 states legal conclusions to which no response is required. To the extent a response is required, BMO denies the allegations in the paragraph.

12.     BMO admits that M&I was a Wisconsin banking corporation that maintained an office in Hennepin County, Minnesota at 651 Nicollet Mall, Minneapolis, Minnesota 55402. Paragraph 12 otherwise states legal conclusions to which no response is required. To the extent a response is required, BMO denies the allegations in the paragraph.

13.     Paragraph 13 states a legal conclusion to which no response is required. To the extent a response is required, BMO admits that this Court has authority to hear proceedings in this case under 28 U.S.C. § 157, but denies that the claims asserted herein "arise under" the Bankruptcy Code.

14.     Paragraph 14 states a legal conclusion to which no response is required. To the extent a response is required, BMO denies that this adversary proceeding is a core proceeding under the Bankruptcy Code.

15.     Paragraph 15 states a legal conclusion to which no response is required. To the extent a response is required, BMO admits that venue is proper in the District Court.

## FACTUAL BACKGROUND

16.     BMO admits that public records indicate that Thomas J. Petters ("Petters"), Deanna Coleman ("Coleman"), and Robert White ("White") either pleaded guilty to or were found guilty of various fraudulent activities. To the extent paragraph 16 states a legal conclusion to which no response is required, BMO denies the allegations. BMO lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in paragraph 16 and on that basis denies them.

17.    BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 17 and on that basis denies them.

18.    BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18 and on that basis denies them.

19.    To the extent the allegations in paragraph 19 state a legal conclusion to which no response is required, BMO denies the allegations. BMO specifically denies that Petters, Coleman, and White were acting adversely to PCI and the SPEs when they fabricated purchase orders. BMO lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in paragraph 19 and on that basis denies them.

20.    BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 20 and on that basis denies them.

21.    BMO denies that PCI and the affiliated SPEs received no benefit as a result of the fraudulent conduct of Petters, Coleman, and White. BMO lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in paragraph 21 and on that basis denies them.

22.    BMO denies that bank statements and transaction reports of the PCI Account and the flow of funds shown in these documents reveal that none of the business activity described by Petters and his associates actually occurred or reveal the Ponzi scheme. BMO lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in paragraph 22 and on that basis denies them.

23.    BMO denies the allegations in paragraph 23.

24.    BMO admits that PCI opened a depository account with National City Bank in December 1999, that M&I acquired National City Bank in July 2001, and that PCI had a

depository account with M&I numbered XXX9018 (the "PCI Account"). BMO denies the remainder of the allegations in paragraph 24.

25.    BMO admits that billions of dollars were wired into and out of the PCI Account during the time in which it was open. BMO denies that anything about the activity in the PCI Account was inconsistent with any description of PCI's business that anyone from PCI presented to M&I. BMO lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in paragraph 25 and on that basis denies them.

26.    BMO denies the allegations in paragraph 26.

27.    BMO denies the allegations in paragraph 27.

28.    BMO denies the allegations in paragraph 28.

29.    BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 29 and on that basis denies them.

30.    BMO denies the allegations in paragraph 30.

31.    BMO admits that Edward Jambor ("Jambor") was an M&I employee who managed the relationship between PCI and M&I for a certain period of time. BMO lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in paragraph 31 and on that basis denies them.

32.    BMO denies the allegations in paragraph 32.

33.    BMO denies the allegations in paragraph 33.

34.    BMO admits that certain M&I employees met with certain employees or representatives of PCI at certain times. BMO denies the remainder of the allegations in paragraph 34.

35.     BMO admits that certain M&I employees met with certain employees of PCI at certain times and had phone conversations with PCI employees at certain times. BMO denies the remainder of the allegations in paragraph 35.

36.     BMO admits that Kevin Pleasant ("Pleasant") met with Coleman in September 2002. To the extent the allegations in paragraph 36 purport to characterize Pleasant's notes of that meeting, the documents speak for themselves, and BMO denies the allegations in paragraph 36 to the extent they are contrary thereto. BMO admits that billions of dollars were wired into and out of the PCI Account during the time in which it was open and that daily balances fluctuated. BMO denies the remainder of the allegations in paragraph 36.

37.     BMO admits that Edward Jambor and other M&I representatives met with Petters and Coleman in October 2002. To the extent the allegations in paragraph 37 purport to characterize Mr. Jambor's call reports, the documents speak for themselves, and BMO denies the allegations to the extent they are contrary to these documents. BMO denies the remainder of the allegations in paragraph 37.

38.     To the extent the allegations in paragraph 38 purport to characterize Jambor's notes, the documents speak for themselves, and BMO denies the allegations to the extent they are contrary to these documents. BMO denies the remainder of the allegations in paragraph 38.

39.     BMO admits that Barbara Nieland ("Nieland") met with Rich Menczynski ("Menczynski") in July 2003. To the extent the allegations in paragraph 39 purport to characterize Nieland's meeting notes, the documents speaks for itself, and BMO denies the allegations to the extent they are contrary to the document. BMO denies the remainder of the allegations in paragraph 39.

40.    BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence in paragraph 40 and on that basis denies them. BMO denies the remainder of the allegations in paragraph 40.

41.    BMO admits that Christopher Flynn ("Flynn") met with Frank Vennes ("Vennes") in March 2002. BMO denies the remainder of the allegations in paragraph 41.

42.    BMO denies the allegations in paragraph 42.

43.    BMO denies the allegations in paragraph 43.

44.    To the extent the allegations in paragraph 44 purport to characterize Flynn's call report, the document speaks for itself, and BMO denies the allegations in paragraph 44 to the extent they are contrary to this document. BMO denies the remainder of the allegations in paragraph 44.

45.    BMO admits that Flynn prepared a Pre-Screen Memorandum, which speaks for itself. BMO denies the remainder of the allegations in paragraph 45.

46.    To the extent the allegations in paragraph 46 purport to characterize Flynn's deposition transcript, the document speaks for itself, and BMO denies the allegations in paragraph 46 to the extent they are contrary to the testimony in the deposition. BMO denies the remainder of the allegations in paragraph 46.

47.    BMO admits that Jambor and other M&I representatives met with PCI representatives in October 2002 and March 2003. To the extent that paragraph 47 quotes from Jambor's meetings reports, those documents speak for themselves, and BMO denies the allegations in the paragraph to the extent they are contrary to the documents. BMO denies the remainder of the allegations in paragraph 47.

48.    BMO admits that Douglas Howe sent an email regarding Petters' purchase of Polaroid on January 12, 2005. To the extent the allegations in paragraph 48 purport to characterize the email, the document speaks for itself, and BMO denies all allegations in paragraph 48 that are contrary to the document.  BMO denies the remainder of the allegations in paragraph 48.

49.    BMO admits that Flynn met with PCI employees in 2007. To the extent that paragraph 49 quotes from Flynn's report of the meeting, the document speaks for itself, and BMO denies the allegations in the paragraph to the extent they are contrary to the document. BMO denies the remainder of the allegations in paragraph 49.

50.    BMO admits that M&I held a mortgage on Petters' home in Wayzata in the amount stated in paragraph 50.

51.    BMO admits that M&I representatives met with PCI employees at certain times. BMO denies the remainder of the allegations in paragraph 51.

52.    BMO denies the allegations in paragraph 52.

53.    BMO denies the allegations in paragraph 53.

54.    BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 54 and on that basis denies them.

55.    BMO denies the allegations in paragraph 55

56.    BMO denies the allegations in paragraph 56.

57.    BMO denies the allegations in paragraph 57.

58.    BMO admits that certain PCI investors contacted M&I. BMO denies the remainder of the allegations in paragraph 58.

59.    BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 59 and on that basis denies them.

60.    BMO lacks knowledge or information sufficient to form a belief about the truth of the first sentence of paragraph 60 and on that basis denies that sentence. BMO denies the remainder of the allegations in paragraph 60.

61.    BMO admits that Jambor wrote a letter to Coleman dated February 27, 2003. To the extent the allegations in paragraph 61 purport to characterize that letter, the document speaks for itself and BMO denies any allegations in the paragraph that are contrary to the document. BMO lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in paragraph 61 and on that basis denies them.

62.    To the extent the allegations in paragraph 62 purport to characterize Exhibit A to the FAC, the document speaks for itself, and BMO denies all allegations in paragraph 62 to the extent they are contrary to that document. BMO denies the remainder of the allegations in paragraph 62.

63.    BMO admits that M&I received a draft agreement from PCI in 2003 and that Elliot Berman ("Berman") reviewed the agreement. BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations about Berman's legal experience and on that basis denies them. BMO denies the remainder of the allegations in paragraph 63.

64.    BMO admits that M&I did not sign the draft agreement referenced in paragraph 64. BMO denies the remainder of the allegations in paragraph 64.

65.    To the extent the allegations in paragraph 65 purport to characterize Exhibit B to the FAC, the document speaks for itself, and BMO denies all allegations in paragraph 65 to the

extent they are contrary to that document. BMO denies the remainder of the allegations in paragraph 65.

66.    BMO admits that M&I did not sign the draft agreement referenced in paragraph 66. BMO denies the remainder of the allegations in paragraph 66.

67.    BMO denies the allegations in paragraph 67.

68.    To the extent that the allegations in paragraph 68 state legal conclusions, no response is required. To the extent a response is required, BMO denies the allegations. BMO denies the remainder of the allegations in paragraph 68.

69.    BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in the allegations in paragraph 69 and on that basis BMO denies them.

70.    BMO denies the allegations in paragraph 70.

71.    BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 71 regarding the amounts of deposits and on that basis denies them. BMO denies the remainder of the allegations in paragraph 71.

72.    BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 72 and on that basis denies them.

73.    BMO expressly denies the allegation that the information available to M&I regarding the activity in the PCI Account conflicted with the information about PCI that had been provided to M&I. BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 73 regarding the sources and destinations of transfer and on that basis denies them. BMO denies the remainder of the allegations in paragraph 73.

74.    BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 74 and on that basis denies them.

75.     BMO denies the allegations in paragraph 75.

76.     BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 76 and on that basis denies them.

77.     BMO denies the allegations in paragraph 77.

78.     BMO denies the allegations in paragraph 78.

79.     BMO denies the allegations in paragraph 79.

80.     To the extent the allegations in paragraph 80 purport to characterize Exhibit C to the FAC, the document speaks for itself, and BMO denies all allegations in paragraph 80 to the extent they are contrary to that document. BMO denies the remainder of the allegations in paragraph 80.

81.     BMO admits that the opening balance of the PCI Account was $1,672,681.59 on December 5, 2003 and that the PCI Account did not have a closing balance above $39 million during December 2003. BMO denies the remainder of the allegations in paragraph 81.

82.     To the extent the allegations in paragraph 82 purport to characterize Exhibit C to the FAC, the document speaks for itself, and BMO denies all allegations in paragraph 82 to the extent they are contrary to that document. BMO denies the remainder of the allegations in paragraph 82.

83.     To the extent the allegations in paragraph 83 purport to characterize Exhibit C to the FAC, the document speaks for itself, and BMO denies all allegations in paragraph 83 to the extent they are contrary to that document. BMO denies the remainder of the allegations in paragraph 83.

84.     BMO denies the allegations in paragraph 84.

85.    BMO admits that Jambor and Hank Donatell exchanged emails in March and September 2005. To the extent the allegations in paragraph 85 purport to characterize those emails, the documents speak for themselves, and BMO denies the allegations in the paragraph to the extent they are contrary to the documents.  BMO denies the remainder of the allegations in paragraph 85.

86.    BMO admits that Ann Benson ("Benson") exchanged emails with a PCI employee in May 2006 regarding a wire transfer request into the PCI Account. To the extent the allegations in paragraph 86 purport to characterize those emails, the documents speak for themselves, and BMO denies the allegations to the extent they are contrary to those documents. BMO denies the remainder of the allegations in paragraph 86.

87.     BMO admits that Jambor sent the quoted email in July 2005. To the extent the allegations in paragraph 87 purport to characterize that email, the document speaks for itself, and BMO denies any allegations to the extent they are contrary to the document. BMO denies the remainder of the allegations in paragraph 87.

88.    BMO admits that Benson sent the quoted email in 2006. To the extent the allegations in paragraph 88 purport to characterize the email, the document speaks for itself, and BMO denies any allegations to the extent they are contrary to the document. BMO denies the remainder of the allegations in paragraph 88.

89.    BMO denies the allegations in paragraph 89.

90.    Paragraph 90 is a direction to the reader about how to interpret the FAC, to which a response is not required. To the extent a response is required, BMO denies the allegations in paragraph 90.

91.    To the extent the allegations in paragraph 91 purport to characterize federal statutes or regulations applicable to banks, the allegations contained in the paragraph state a legal conclusion to which no response is required. To the extent a response is required, BMO denies those allegations. BMO denies the remainder of the allegations in paragraph 91.

92.    BMO admits that M&I established an Anti-Money Laundering ("AML") Monitoring Group by 2005. BMO denies the remainder of the allegations in paragraph 92.

93.    BMO admits that M&I implemented Searchspace software in early 2005 as part of its AML efforts and that Searchspace monitored certain account activity. BMO denies the remainder of the allegations in paragraph 93.

94.    BMO denies the allegation in paragraph 94.

95.    BMO denies the allegations in paragraph 95.

96.    BMO admits that, beginning in March 2005, Searchspace automatically generated certain alerts ("AML Alerts") with respect to activity in the PCI Account. The dates of such alerts are identified in the AML Alerts themselves. To the extent the allegations in paragraph 96 purport to characterize the AML Alerts, the documents speak for themselves and BMO denies the allegations to the extent they are contrary to those documents. BMO denies the remainder of the allegations in paragraph 96.

97.    BMO admits that employees in M&I's AML Monitoring Group reviewed the AML Alerts. The AML Alerts themselves contain notes on the reviews. To the extent the allegations in paragraph 97 purport to characterize the AML Alerts, the documents speak for themselves and BMO denies the allegations to the extent they are contrary to those documents. BMO denies the remainder of the allegations in paragraph 97.

98.    BMO admits that employees in M&I's AML Monitoring Group reviewed the AML Alerts. The AML Alerts themselves contain notes on the reviews. To the extent the allegations in paragraph 98 purport to characterize the AML Alerts, the documents speak for themselves and BMO denies the allegations to the extent they are contrary to those documents. BMO denies the remainder of the allegations in paragraph 98.

99.    BMO admits that Berman served as AML Monitoring Group Manager in 2005. To the extent the allegations in paragraph 99 purport to characterize the AML Alert, the document speaks for itself and BMO denies the allegations to the extent they are contrary to the document. BMO denies the remainder of the allegations in paragraph 99.

100.    To the extent the allegations in paragraph 100 purport to characterize the AML Alerts, the documents speak for themselves and BMO denies the allegations to the extent they are contrary to those documents. BMO denies the remainder of the allegations in paragraph 100.

101.    BMO admits that what appears to be the AML alert for April 2008 is attached as Exhibit D to the FAC. To the extent the allegations in paragraph 101 purport to characterize Exhibit D, the document speaks for itself, and BMO denies all allegations in paragraph 101 to the extent they are contrary to that document. BMO denies the remainder of the allegations in paragraph 101.

102.    BMO admits that employees in M&I's AML Monitoring Group reviewed the AML Alerts. The AML Alerts themselves contain notes on the reviews. To the extent the allegations in paragraph 102 purport to characterize the AML Alerts, the documents speak for themselves and BMO denies the allegations to the extent they are contrary to those documents. BMO denies the remainder of the allegations in paragraph 102.

103.    BMO denies the allegations in paragraph 103.

104.     BMO denies the allegations in paragraph 104.

105.     BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 105 and on that basis denies them.

106.     To the extent the allegations in paragraph 106 purport to characterize the Deposit Control Agreements, the documents speak for themselves, and BMO denies the allegations in paragraph 106 to the extent they are contrary to those documents. BMO lacks knowledge or information sufficient to form a belief about the truth of the allegation in paragraph 106 regarding Petters' reasons for having PCI enter into Deposit Control Agreements and on that basis denies that allegation. BMO admits that PCI entered into Deposit Control Agreements. BMO denies the remainder of the allegations in paragraph 106.

107.     To the extent the allegations in paragraph 107 purport to characterize the Deposit Control Agreements, the documents speak for themselves, and BMO denies the allegations in paragraph 107 to the extent they are contrary to those documents. BMO denies the remainder of the allegations in paragraph 107.

108.     BMO lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in paragraph 108 and on that basis denies them.

109.     To the extent the allegations in paragraph 109 purport to characterize Exhibit E to the FAC, the document speaks for itself, and BMO denies all allegations in paragraph 109 to the extent they are contrary to that document. BMO denies the remainder of the allegations in paragraph 109.

110.     BMO admits that what appears to be a February 2008 email exchange between Flynn, Carolyn Moline ("Moline"), and Jane Schwede is attached as Exhibit F to the FAC. To the extent the allegations in paragraph 110 purport to characterize Exhibit F, the document

speaks for itself, and BMO denies all allegations in paragraph 110 to the extent they are contrary

to that document. BMO denies the remainder of the allegations in paragraph 110.

111.    To the extent the allegations in paragraph 111 purport to characterize Exhibit F to

the FAC, the document speaks for itself, and BMO denies all allegations in paragraph 111 to the

extent they are contrary to that document. BMO denies the remainder of the allegations in

paragraph 111.

112.    BMO admits that what appears to be a February 2008 email from Flynn to Kevin

Busch is attached as Exhibit G to the FAC. To the extent the allegations in paragraph 112 purport

to characterize Exhibit G, the document speaks for itself, and BMO denies all allegations in

paragraph 112 to the extent they are contrary to that document. BMO denies the remainder of the

allegations in paragraph 112.

113.    BMO admits that what appears to be a February 2008 email from Flynn to Craig

Howse is attached as Exhibit H to the FAC. To the extent the allegations in paragraph 113

purport to characterize Exhibit H, the document speaks for itself, and BMO denies all allegations

in paragraph 113 to the extent they are contrary to that document. BMO denies the remainder of

the allegations in paragraph 113.

114.    To the extent the allegations in paragraph 114 purport to characterize Exhibit I to

the FAC speaks for itself, and BMO denies all allegations in paragraph 114 to the extent they are

contrary to that document. BMO denies the remainder of the allegations in paragraph 114.

115.    BMO admits that M&I executed a Deposit Control Agreement with PCI relating

to the Palm Beach Fund. To the extent the allegations in paragraph 115 purport to characterize

Exhibit J to the FAC, the document speaks for itself, and BMO denies all allegations in

paragraph 115 to the extent they are contrary to that document. BMO denies the remainder of the allegations in paragraph 115.

116.    To the extent the allegations in paragraph 116 purport to characterize Exhibit J to the FAC, the document speaks for itself, and BMO denies all allegations in paragraph 116 to the extent they are contrary to that document. BMO denies the remainder of the allegations in paragraph 116.

117.    To the extent the allegations in paragraph 117 purport to characterize Exhibit J to the FAC, the document speaks for itself, and BMO denies all allegations in paragraph 117 to the extent they are contrary to that document. BMO denies the remainder of the allegations in paragraph 117.

118.    To the extent the allegations in paragraph 118 purport to characterize Moline's deposition transcript, the document speaks for itself, and BMO denies all allegations in paragraph 118 to the extent they are contrary to the testimony in the deposition. BMO denies the remainder of the allegations in paragraph 118.

119.    BMO denies the allegations in paragraph 119.

120.    To the extent the allegations in paragraph 120 purport to characterize Moline's deposition transcript, the document speaks for itself, and BMO denies all allegations in paragraph 120 to the extent they are contrary to the testimony in the deposition. BMO denies the remainder of the allegations in paragraph 120.

121.    To the extent the allegations in paragraph 121 purport to characterize Moline's deposition transcript, the document speaks for itself, and BMO denies all allegations in paragraph 121 to the extent they are contrary to the testimony in the deposition. BMO denies the remainder of the allegations in paragraph 121.

122.    To the extent that the allegations in Paragraph 122 purport to attribute a wrongful intent or wrongful conduct to Chris Flynn, BMO denies them. BMO lacks knowledge or information sufficient to form a belief as to the remainder of the allegations in paragraph 122 and on that basis denies them.

123.    BMO denies the allegations in paragraph 123.

124.    BMO denies the allegations in paragraph 124.

125.    Because several terms used in paragraph 125, including "written memoranda," are vague and undefined, BMO denies the allegations in paragraph 125.

126.    BMO denies the allegations in paragraph 126.

127.    To the extent the allegations in paragraph 127 purport to characterize Flynn's deposition transcript, the document speaks for itself, and BMO denies the allegations in the paragraph to the extent they are contrary to the testimony in the deposition. BMO denies the remainder of the allegations in paragraph 127.

128.    BMO denies the allegations in paragraph 128.

129.    BMO denies the allegations in paragraph 129.

130.    BMO denies the allegations in paragraph 130.

131.    BMO denies the allegations in paragraph 131.

132.    BMO denies the allegations in paragraph 132.

133.    BMO admits that M&I entered into Deposit Control Agreements with Ritchie Capital Management, Ltd. ("Ritchie") and Interlachen Harriet Investments, Ltd. ("Interlachen"). To the extent the allegations in paragraph 133 purport to characterize the agreements, the documents speak for themselves and BMO denies the allegations in the paragraph to the extent

they are contrary to the agreements. BMO denies the remainder of the allegations in paragraph
133.

134.    To the extent that the allegations in Paragraph 134 purport to attribute a wrongful
intent or wrongful conduct to Chris Flynn, BMO denies them. BMO lacks knowledge or
information sufficient to form a belief about the remainder of the allegations in paragraph 134
and on that basis denies them.

135.    BMO admits that M&I executed a Deposit Control Agreement with PCI and
Ritchie, which is attached to the FAC as Exhibit K. BMO denies the remainder of the allegations
in paragraph 135.

136.    BMO admits that M&I executed a Deposit Control Agreement with PCI and
Interlachen, a copy of which appears to be attached as Exhibit L to the FAC. BMO denies the
remainder of the allegations in paragraph 136.

137.    To the extent the allegations in paragraph 137 purport to characterize Exhibits K
and L to the FAC, the documents speak for themselves, and BMO denies all allegations in
paragraph 137 to the extent they are contrary to either document. BMO denies the remainder of
the allegations in paragraph 137.

138.    BMO denies the allegations in paragraph 138.

139.    BMO denies the allegations in paragraph 139.

140.    BMO denies the allegations in paragraph 140.

141.    BMO denies the allegations in paragraph 141.

142.    BMO denies the allegations in paragraph 142.

143.    BMO denies the allegations in paragraph 143.

144.    BMO denies the allegations in paragraph 144.

145.    BMO denies the allegations in paragraph 145.

## COUNT I – VIOLATION OF THE MINNESOTA UNIFORM FIDUCIARIES ACT

146.    BMO restates and incorporates by reference its responses to the preceding paragraphs.

147.    BMO lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 147 regarding the positions held by Petters, Coleman, and White and on that basis denies them. The remainder of the allegations in Paragraph 147 state legal conclusions to which no response is required. To the extent a response is required, BMO denies the allegations.

148.    To the extent that the allegations in paragraph 148 state legal conclusions, no response is required. To the extent a response is required, BMO denies the allegations. BMO denies the remainder of the allegations in paragraph 148.

149.    To the extent that the allegations in paragraph 149 state legal conclusions, no response is required. To the extent a response is required, BMO denies the allegations. BMO denies the remainder of the allegations in paragraph 149.

150.    To the extent that the allegations in paragraph 150 state legal conclusions, no response is required. To the extent a response is required, BMO denies the allegations. BMO denies the remainder of the allegations in paragraph 150.

151.    To the extent that the allegations in paragraph 151 state legal conclusions, no response is required. To the extent a response is required, BMO denies the allegations. BMO denies the remainder of the allegations in paragraph 151.

152.    Paragraph 152 states a legal conclusion to which no response is required. To the extent a response is required, BMO denies the allegations in paragraph 152.

153.     BMO denies the allegations in paragraph 153 and specifically denies any liability to the Trustee and denies that the Trustee is entitled to any damages.

## COUNT II – BREACH OF FIDUCIARY DUTY

154.     BMO restates and incorporates by reference its responses to the preceding paragraphs of the FAC.

155.     BMO admits that M&I entered into certain Deposit Control Agreements with certain PCI investors. To the extent the allegations in paragraph 155 purport to characterize the Deposit Control Agreements, the documents speak for themselves, and BMO denies the allegations in paragraph 155 to the extent they are contrary to those documents. BMO denies the remainder of the allegations in paragraph 155.

156.     BMO denies the allegations in paragraph 156.

157.     Paragraph 157 states a legal conclusion to which no response is required. To the extent a response is required, BMO denies the allegations in paragraph 157.

158.     BMO denies the allegations in paragraph 158 and specifically denies any liability to the Trustee and denies that the Trustee is entitled to any damages.

## COUNT III – AIDING AND ABETTING FRAUD

159.     BMO restates and incorporates by reference its responses to the preceding paragraphs of the FAC.

160.     BMO admits that public records show that Petters, Coleman, and White each either pleaded guilty to or were found guilty of various fraudulent activities. BMO lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in paragraph 160 and on that basis denies them.

161.    To the extent that the allegations in paragraph 161 state legal conclusions, no response is required. To the extent a response is required, BMO denies the allegations. BMO denies the remainder of the allegations in paragraph 161.

162.    BMO denies the allegations in paragraph 162.

163.    BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 163 and on that basis denies them.

164.    BMO denies the allegations in paragraph 164.

165.    BMO denies the allegations in paragraph 165 and specifically denies any liability to the Trustee and denies that the Trustee is entitled to any damages.

**COUNT IV- AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

166.    BMO restates and incorporates by reference its responses to the preceding paragraphs of the FAC.

167.    BMO lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 167 regarding the positions held by Petters, Coleman, and White and on that basis denies the allegations. The remainder of the allegations in paragraph 167 state legal conclusions to which no response is required. To the extent a response is required BMO denies the allegations in paragraph 167.

168.    BMO lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 168 and on that basis denies them.

169.    Paragraph 169 states a legal conclusion to which no response is required. To the extent a response is required BMO denies the allegations in paragraph 169.

170.    To the extent that the allegations in paragraph 170 state legal conclusions, no response is required. To the extent a response is required, BMO denies the allegations. BMO denies the remainder of the allegations in paragraph 170.

171.    To the extent that the allegations in paragraph 171 state legal conclusions, no response is required. To the extent a response is required, BMO denies the allegations. BMO denies the remainder of the allegations in paragraph 171.

172.    To the extent that the allegations in paragraph 172 state legal conclusions, no response is required. To the extent a response is required, BMO denies the allegations. BMO denies the remainder of the allegations in paragraph 172.

173.    BMO denies the allegations in paragraph 165 and specifically denies any liability to the Trustee and denies that the Trustee is entitled to any damages.

## COUNT V – CIVIL CONSPIRACY

174.    No response to paragraph 174 is required in light of the Court's Order Granting in Part and Denying In Part BMO's Motion to Dismiss ("MTD Order"), Dkt. 76, which dismissed Count V with prejudice. To the extent a response is required, BMO restates and incorporates by reference its responses to the preceding paragraphs of the FAC.

175.    No response to paragraph 175 is required in light of the MTD Order dismissing Count V with prejudice. To the extent a response is required, BMO denies the allegations.

176.    No response to paragraph 176 is required in light of the MTD Order dismissing Count V with prejudice. To the extent a response is required, BMO denies the allegations.

177.    No response to paragraph 177 is required in light of the MTD Order dismissing Count V with prejudice. To the extent a response is required, BMO denies the allegations.

178.    No response to paragraph 178 is required in light of the MTD Order dismissing Count V with prejudice. To the extent a response is required, BMO denies the allegations.

179.    No response to paragraph 179 is required in light of the MTD Order dismissing Count V with prejudice. To the extent a response is required, BMO denies the allegations.

180.    No response to paragraph 180 is required in light of the MTD Order dismissing Count V with prejudice. To the extent a response is required, BMO denies the allegations.

181.    No response to paragraph 181 is required in light of the MTD Order dismissing Count V with prejudice. To the extent a response is required, BMO denies the allegations.

182.    No response to paragraph 182 is required in light of the MTD Order dismissing Count V with prejudice. To the extent a response is required, BMO denies the allegations.

183.    No response to paragraph 183 is required in light of the MTD Order dismissing Count V with prejudice. To the extent a response is required, BMO denies the allegations and specifically denies any liability to the Trustee and denies that the Trustee is entitled to any damages.


BMO further denies any liability to the Trustee and denies that the Trustee is entitled to any of the relief sought in the FAC's prayer for relief.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

BMO, while continuing to deny any liability or wrongdoing, and without prejudice to its Answer set forth above, for its additional and affirmative defenses to the FAC, states as follows, without assuming the burden of proof on any of these defenses unless required to do so by law:

### FIRST DEFENSE:
### (*In Pari Delicto*)

The Trustee's claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

### SECOND DEFENSE:
### (Lack of Standing)

The Trustee's claims are barred, in whole or in part, because the Trustee lacks standing to assert claims alleged in the FAC and lacks standing to seek the relief demanded in the FAC.

### THIRD DEFENSE:
### (UCC Preemption/Preclusion)

The Trustee's claims are preempted and/or precluded, in whole or in part, by the Uniform Commercial Code (the "UCC").

### FOURTH DEFENSE:
### (Failure to State a Claim for Relief)

The FAC does not state a claim for relief against BMO because the allegations in the FAC establish that the Trustee's claims are unsustainable as a matter of law.

### FIFTH DEFENSE:
### (Statutes of Limitations and Repose)

The Trustee's claims and requests for relief are barred, in whole or in part, by reason of any and all applicable statutes of limitations and statutes of repose.

### SIXTH DEFENSE:
### (Lack of Proximate Cause)

The Trustee is barred from obtaining the relief demanded in the FAC because the supposed losses and damages, if any, were not proximately caused by M&I or were proximately and exclusively caused by the actions or omissions of third parties over whom M&I had no control.

### SEVENTH DEFENSE:
### (Contractual Limitation on Liability)

Limitations contained in applicable contracts, agreements, covenants, conditions, or bylaws preclude any judgment holding BMO liable, in whole or in part, in this action and bar the Trustee from obtaining all or part of the relief demanded in the FAC.

## EIGHTH DEFENSE:
### (Lack of Harm, Injury, or Damages)

The Trustee is barred from obtaining the relief demanded in the FAC because PCI and other Debtors suffered no harm, injury, or damages.

## NINTH DEFENSE:
### (Unclean Hands)

The Trustee's claims are barred, in whole or in part, by the doctrine of unclean hands.

## TENTH DEFENSE:
### (Laches)

The Trustee's claims are barred, in whole or in part, because the Trustee (in his current capacity, in his capacity as trustee for the bankruptcy estates of PCI and other debtors, or his capacity as receiver for PCI and other Debtors) unreasonably delayed filing or pursuing this action to the harm and prejudice of BMO.

## ELEVENTH DEFENSE:
### (Equitable Estoppel)

The Trustee's claims are barred, in whole or in part, based on the doctrine of equitable estoppel.

## TWELFTH DEFENSE:
### (Waiver)

The FAC, and each purported claim therein, is barred by the conduct and inactions of the Trustee (in his current capacity, in his capacity as trustee for the bankruptcy estates of PCI and other debtors, or his capacity as receiver for PCI and other Debtors), PCI, and other Debtors, which amount to and constitute a waiver of any right or rights the Trustee may or might have in relation to the matters alleged in the FAC.

## THIRTEENTH DEFENSE:
### (Acquiescence)

The Trustee is barred from obtaining any of the relief demanded in the FAC based on the

acquiescence of PCI and other Debtors in the conduct alleged in the FAC.

## FOURTEENTH DEFENSE:
### (Preclusion)

The Trustee's claims are barred, in whole or in part, under the doctrines of claim

preclusion and issue preclusion.

## FIFTEENTH DEFENSE:
### (Failure to Mitigate Losses)

The Trustee has failed to mitigate the alleged losses, and thus if the Trustee were

otherwise entitled to any recovery or other relief in this action, which BMO denies, any such

recovery or relief must be limited or barred to the extent of such failure.

## SIXTEENTH DEFENSE:
### (Unjust Enrichment)

The Trustee's claims are barred, in whole or in part, because the BMO Litigation Trust

would be unjustly and inequitably enriched at the expense of BMO if he was permitted to obtain

that relief.

## SEVENTEENTH DEFENSE:
### (Failure to Plead With Particularity)

The Trustee's claims are barred, in whole or in part, because he has failed to plead the

alleged fraudulent and deceptive conduct with the requisite particularity.

## EIGHTEENTH DEFENSE:
### (Preemption by Federal Laws or Regulations)

The Trustee's claims are barred, in whole or in part, because his claims are preempted to

the extent they conflict with federal laws or regulations.

## NINETEENTH DEFENSE:
### (Penalties, Attorneys' Fees, and Costs Unavailable)

The Trustee is not entitled to any penalties, attorneys' fees, and costs based on the conduct alleged in the FAC.

## TWENTIETH DEFENSE:
### (Good Faith)

The Trustee's claims are barred, in whole or in part, because BMO's conduct at all times complied with, and was made in good faith conformity with, all applicable laws, rules, regulations, standards, and contracts.

## TWENTY-FIRST DEFENSE:
### (Impossibility)

The Trustee's claims are barred, in whole or in part, by the doctrine of impossibility.

## TWENTY-SECOND DEFENSE:
### (Contractual Limitations Period)

The Trustee's claims and requests for relief are barred, in whole or in part, because this action was not filed before the expiration of limitations periods stated in applicable contracts, agreements, covenants, conditions, or bylaws.

## TWENTY-THIRD DEFENSE:
### (Consent/Ratification)

The Trustee's claims are barred, in whole or in part because the Trustee (in his current capacity, in his capacity as trustee for the bankruptcy estates of PCI and other debtors, or his capacity as receiver for PCI and other Debtors), PCI, or other Debtors consented to all of BMO's acts or omissions which give rise to the occurrences alleged in the FAC, or subsequently ratified that conduct.

## TWENTY-FOURTH DEFENSE:
### (Damages Speculative)

The Trustee's alleged damages are speculative or uncertain and, therefore, not compensable, in whole or in part.

## TWENTY-FIFTH DEFENSE:
### (Judicial Estoppel)

The Trustee's claims are barred, in whole or in part, based on the doctrine of judicial estoppel.

## TWENTY-SIXTH DEFENSE:
### (Setoff)

The Trustee's claims are subject to reduction or extinguishment based on amounts recovered from other parties.

## TWENTY-SEVENTH DEFENSE:
### (No Imputation)

The Trustee's claims are barred, in whole or in part, because some or all of the conduct by M&I employees alleged in the FAC cannot be imputed to BMO.

## TWENTY-EIGHTH DEFENSE:
### (Lack of Statutory or Contractual Authority)

The Trustee's claims are barred, in whole or in part, because the Trustee lacks statutory or contractual authority to assert claims alleged in the FAC or to seek the relief demanded in the FAC.

## TWENTY-NINTH DEFENSE:
### (Claims Dismissed)

The Trustee's claims are barred to the extent they have been dismissed by the Court or are based on allegations that have been dismissed by the Court.

## THIRTIETH DEFENSE:
### (Additional Defenses)

The defenses asserted herein are based on BMO's information and belief. BMO reserves its right to rely on all defenses lawfully available to it, including, but not limited to, those defenses asserted herein. BMO also reserves its right to amend, supplement, alter, augment, or change this Answer and to rely upon any other additional defenses at law or in equity that may be, or become, available to it as the Trustee's averments and contentions become clearer and discovery reveals additional facts.

## COUNTERCLAIMS

BMO reserves all rights with respect to all counterclaims that may be revealed during the course of discovery.

## FINAL ORDER

BMO does not consent to the adjudication of the claims asserted in this matter or entry of a final order by the Bankruptcy Court or otherwise waive its rights, whether under the Constitution of the United States or otherwise, to the adjudication of the claims asserted in this matter and entry of a final order by the District Court.

## PRAYER FOR RELIEF

WHEREFORE, BMO denies that the Trustee is entitled to any of the relief requested in the FAC. BMO requests judgment as follows:

1.      That the Trustee takes nothing by reason of the FAC;

2.      That judgment be entered in favor of BMO;

3.      That BMO be awarded its reasonable attorneys' fees and costs of suit; and

4.      For such other and further relief deemed just and proper.

Dated: March 10, 2017

Respectfully submitted.

/s/ Keith S. Moheban
Keith S. Moheban (#216380)
Adine S. Momoh (#390085)
STINSON LEONARD STREET LLP
150 South 5th Street, Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-1544
keith.moheban@stinson.com
adine.momoh@stinson.com

- AND –

Thomas S. Kiriakos (*pro hac vice*)
Lucia Nale (*pro hac vice*)
Debra L. Bogo-Ernst (*pro hac vice*)
Sean T. Scott (*pro hac vice*)
Joshua D. Yount (*pro hac vice*)
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
tkiriakos@mayerbrown.com
lnale@mayerbrown.com
dernst@mayerbrown.com
stscott@mayerbrown.com
jdyount@mayerbrown.com

**ATTORNEYS FOR DEFENDANT BMO
HARRIS BANK, N.A., AS SUCCESSOR TO
M&I MARSHALL & ILSLEY BANK**