UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered under BKY 08-45257** |
| Petters Company, Inc., et al, | BKY 08-45257 |
| Debtors. | |
| (includes | Court File Nos.: |
| Petters Group Worldwide, LLC; | 08-45258 |
| PC Funding, LLC; | 08-45326 |
| Thousand Lakes, LLC; | 08-45327 |
| SPF Funding, LLC; | 08-45328 |
| PL Ltd., Inc.; | 08-45329 |
| Edge One LLC; | 08-45330 |
| MGC Finance, Inc.; | 08-45331 |
| PAC Funding, LLC; | 08-45371 |
| Palm Beach Finance Holdings, Inc.) | 08-45392 |
| | Chapter 11 Cases |
| | Judge Kathleen H. Sanberg |
| Douglas A. Kelley, in his capacity as the Trustee of the BMO Litigation Trust, | ADV 12-4288 |
| Plaintiff, | |
| v. | |
| BMO Harris Bank N.A., as successor to M&I Marshall and Ilsley Bank, | |
| Defendant. | |

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At Minneapolis, Minnesota, June 27, 2019.

On March 5, 2019, the Court heard oral argument on Defendant's Motion for Summary

Judgment. Keith Moheban appeared for Defendant and Thomas Hamlin appeared for Plaintiff.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *06/27/2019*
Lori Vosejpka, Clerk, by LH

1

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, Fed. R. Bankr. P. 7001, and Local Rule 1070–1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(H). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Introduction

This adversary proceeding arises out of the Petters' Ponzi scheme orchestrated by Thomas J. Petters ("Petters") and his associates. Liquidating Trustee Douglas A. Kelley ("Plaintiff") filed this adversary proceeding against BMO Harris Bank N.A.[1] ("Defendant") for its alleged participation in the Ponzi scheme, claiming violations of the Minnesota Uniform Fiduciaries Act ("MUFA"), breach of fiduciary duty, aiding and abetting breach of fiduciary duty, aiding and abetting fraud, and civil conspiracy.

Defendant moves for summary judgment on all claims that remain after the Court's Order on Defendant's Motion to Dismiss (the "Order").[2] Defendant's Motion for Summary Judgment is based on two arguments: 1) that Plaintiff lacks standing to pursue the claims, and 2) that Plaintiff's claims are barred by the doctrine of *in pari delicto*.

Plaintiff's response requested judgment as a matter of law confirming standing and rejecting the defense of *in pari delicto*.[3] Plaintiff reiterated this request at oral argument. Defendant objected as Plaintiff did not bring a motion for summary judgment.[4] Plaintiff's request could be proper pursuant to Federal Rule of Civil Procedure 56(f) if notice and a

---

[1] As successor to M&I Marshall and Ilsley Bank.
[2] Dkt. 75. Count II, a claim for breach of fiduciary duties owed to Petters Company, Inc. ("PCI"), was dismissed with prejudice for lack of standing to the extent it stated a direct claim for harm done to specific PCI creditors. Count V, a claim for civil conspiracy, was dismissed with prejudice for lack of standing in its entirety as it asserted direct claims belonging to specific creditors. Four claims remain—Count I for a violation of MUFA, Count II for breach of fiduciary duties owed to PCI to the extent it states a claim for direct harm to PCI, Count III for aiding and abetting fraud against PCI, and Count IV for aiding and abetting breaches of fiduciary duties owed to PCI.
[3] Dkt. 342.
[4] Dkt. 346 at 110:3–6 (Mar. 5, 2019).

2

reasonable time to respond had been given.  Here, however, the Court did not give notice that it would consider Plaintiff's request for summary judgment and give Defendant time to respond. Plaintiff's request is not properly before the Court.

For the reasons discussed below, Defendant's motion is denied.

## Background and Procedural History

### I. Petters' Ponzi Scheme

The facts about Petters' Ponzi scheme are well known.[5]  Between 1994 and 2008, Petters and his associates orchestrated a Ponzi scheme through PCI and its affiliates.  Petters was the sole owner, only director, and CEO of PCI.[6]  Over many years, PCI, Petters, and his associates operated the Ponzi scheme by obtaining billions of dollars from investors through fraud, false pretenses, and misrepresentations about PCI's purported business of purchasing and selling consumer electronic goods to big-box retailers.[7]  Instead of using the investments to purchase consumer goods for sale to retailers, the funds were used to pay other investors, to pay those assisting with the Ponzi scheme, and to pay for Petters' extravagant lifestyle.[8]  Tens of billions of dollars in Ponzi scheme funds were routed through PCI's depository checking account at National City Bank, opened in December 1999 (the "PCI Account").[9]  M&I acquired National

---

[5] The Honorable Judge Susan R. Nelson of the United States District Court for the District of Minnesota recently provided a detailed background of the Ponzi scheme in *Kelley v. Kanios*, Case No. 18-cv-823 (SRN/SER), 2019 WL 2193163 (D. Minn. May 20, 2019).  *See e.g.*, *In re Petters Co., Inc.*, 548 B.R. 551 (Bankr. D. Minn. 2016); *In re Petters Co., Inc.*, 506 B.R. 784 (Bankr. D. Minn. 2013); *In re Polaroid Corp.*, 472 B.R. 22 (Bankr. D. Minn. 2012), *aff'd*, 779 F.3d 857 (8th Cir. 2015); *In re Petters Co., Inc.*, 440 B.R. 805 (Bankr. D. Minn. 2010); *In re Petters Co., Inc.*, 401 B.R. 391 (Bankr. D. Minn. 2009), *aff'd*, 620 F.3d 847 (8th Cir. 2010); *see also SEC v. Quan*, 817 F.3d 583, 587–89 (8th Cir. 2016); *In re Cypress Fin. Trading Co., L.P.*, 620 F. App'x 287, 288 (5th Cir. 2015); *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 836–37 (8th Cir. 2014); *Peterson v. Winston & Strawn LLP*, 729 F.3d 750, 751 (7th Cir. 2013); *Peterson v. Somers Dublin Ltd.*, 729 F.3d 741, 744 (7th Cir. 2013); *In re Palm Beach Fin. Partners, L.P.*, 527 B.R. 518, 521 (S.D. Fla. 2015); *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 319–21 (Bankr. S.D. Fla. 2013).
[6] Def.'s Mem., Dkt. 339, Ex. E at 8.
[7] *Id.* at 10, Ex. I at 2.
[8] Def.'s Mem., Dkt. 339, Ex. I at 2.
[9] *Id.* at 14; Dkt. 79 at 6–7.

City Bank in July 2001.[10] The allegations in this adversary proceeding concern M&I's actions in handling the PCI Account.

The Petters' Ponzi scheme ended in 2008.[11] In 2009, former officers Deanna Coleman and Robert White pleaded guilty on account of their roles in the Ponzi scheme.[12] Later that year, Petters was tried and convicted of wire fraud, mail fraud, money laundering, and conspiracy.[13] In 2010, PCI pled guilty to wire fraud and conspiracy to commit mail fraud, wire fraud, and money laundering.[14]

## II.  Receivership Order and Second Amended Plan of Liquidation

On October 6, 2008, Judge Ann Montgomery of the United States District Court for the District of Minnesota appointed Plaintiff, Douglas Kelley, as the equity receiver for PCI and its affiliates (the "Receivership Order").[15] The Receivership Order granted Kelley the full power of an equity receiver.[16] On October 11, 2008, pursuant to his authority as receiver, Plaintiff filed for Chapter 11 relief on behalf of PCI.[17] Plaintiff was then appointed to be the Chapter 11 Trustee on February 26, 2009.

In the main bankruptcy case, Judge Gregory F. Kishel confirmed PCI's Second Amended Plan of Chapter 11 Liquidation on April 15, 2016 (the "Plan").[18] The Plan established the BMO Litigation Trust, which is administered by Plaintiff as the Liquidating Trustee.[19] The Plan

---

[10] Dkt. 79 at 6–7.
[11] *See In re Petters Co., Inc.*, 506 B.R. at 788.
[12] *United States v. Coleman*, No. 08-cr-304 (D. Minn.), Dkt. 14 at 18–25; *United States v. White*, No. 08-cr-299 (D. Minn.), Dkt. 15 at 19–29.
[13] *United States v. Petters*, No. 08-cr-364 (D. Minn.), Dkt. 361.
[14] Def.'s Mem., Dkt. 339, Ex. I.
[15] Pl.'s Resp., Dkt. 342, Ex. 5.
[16] *Id.* The receivership is still ongoing. *United States v. Petters*, No. 08-cv-05348 (D. Minn.).
[17] *See generally In re Petters Co., Inc.*, No. 08-45257 (Bankr. D. Minn.).
[18] *Id.*, Dkt. 3305.
[19] *Id.*

4

transferred the BMO Litigation Trust Assets, including the causes of action asserted in this adversary, to the BMO Litigation Trust.[20]

After the Plan was confirmed, Plaintiff filed the First Amended Complaint (the "Complaint") on October 20, 2016.[21] The Complaint alleges that Defendant was complicit in the Ponzi scheme by its actions and inactions in its dealings with PCI, Petters, and the PCI Account.[22] The Complaint alleges that instead of responding to irregularities, as required by banking regulation and shutting down the PCI Account, Defendant served as a "critical lynchpin" in legitimizing and facilitating the Ponzi scheme as billions of dollars were laundered through the PCI Account.[23] Defendant signed Deposit Account Control Agreements ("DACAs") allegedly in order to placate investors and to prevent the scheme from becoming public.[24] Plaintiff further alleges that Defendant failed to act despite fraud alerts and other "red flags;" instead, it continued to execute transfers to and from the PCI Account.[25]

### III. Motion to Dismiss

On October 24, 2016, Defendant filed its Motion to Dismiss arguing that Plaintiff lacked standing to pursue the claims, as it does here.[26] In its Order, the Court found that Plaintiff had standing to pursue any claim to recover for harm done to PCI.[27] The Court also held that Plaintiff could pursue derivative claims for harm to all creditors similarly situated because, under Minnesota law, an insolvent corporation's derivative claims include those to recover for harm to

---

[20] *Id.*
[21] Dkt. 55.
[22] *Id.* at 2–4.
[23] *Id.*
[24] *Id.*
[25] *Id.* Plaintiff filed this adversary proceeding on November 14, 2012. Dkt. 1.
[26] Dkt. 56.
[27] Dkt. 75 at 6.

creditors.[28] The Court then made specific standing-related determinations for each cause of action.[29]

Four claims remain following the Order: Claim I for violation of MUFA; Claim II for breach of fiduciary duties owed to PCI to the extent it states a claim for direct harm to PCI; Claim III for aiding and abetting fraud against PCI; and Claim IV for aiding and abetting breaches of fiduciary duties owed to PCI. Defendant moves for summary judgment on these remaining claims, again alleging a lack of standing and the defense of *in pari delicto*.

The Court will address the new arguments about standing and *in pari* delicto raised by Defendant's Motion for Summary Judgment.

## Standard of Review

Federal Rule of Civil Procedure 56, made applicable to this adversary pursuant to Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] Once the movant has made its showing, the burden shifts to the nonmoving party, who must establish that there are specific and genuine issues of material fact warranting a trial.[31] In ruling on a motion for summary judgment, courts "view the record in the light most favorable to the nonmoving party and afford that party all reasonable inferences."[32]

---

[28] *Id*. at 6.
[29] *Id*. at 8–11.
[30] Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.
[31] *Celotex Corp. v. Catrett*, 477 U.S. 316, 324 (1986).
[32] *In re Patch*, 526 F.3d 1176, 1180 (8th Cir. 2008).

6

**Discussion**

**I.    Standing**

A party must have standing for a court to decide the merits of a particular dispute.[33] In order to have standing, a party must assert its own legal rights and interests and cannot seek relief solely on the legal rights or interests of third parties.[34] Under 11 U.S.C. §§ 704(1) and 1106(a), bankruptcy trustees have standing to pursue claims belonging to the estate on the date of filing in order to fulfill their duty to "collect and reduce to money the property of the estate."[35] Property of the bankruptcy estate includes all legal or equitable interests of the debtor in property as of the commencement of the case.[36] "Whether a particular cause of action arising under state law belonged to the debtor in bankruptcy or to someone else is determined by state law."[37]

As discussed in the Order, Minnesota law provides that a corporation may bring a claim when it has been injured for either direct or derivative harm.[38] Thus, Plaintiff, as Trustee for PCI, has standing to assert causes of action that remedy the harm done to the estate.[39] Plaintiff, however, cannot bring direct claims that belong solely to a creditor.[40]

State law controls the analysis of whether a claim is direct or derivative.[41] In making this determination, the Minnesota Supreme Court has held that courts should look at the injury itself,

---

[33] *Safelite Grp., Inc. v. Rothman*, No. 15–cv–1878 (SRN/KMM), 2017 WL 337988, at *10 (D. Minn. Jan. 23, 2017) (citing *Glickert v. Loop Trolley Transp. Dev. Dist.*, 792 F.3d 876, 880 (8th Cir. 2015)).
[34] *Warth v. Seldin*, 422 U.S. 490, 499 (1975).
[35] *Moratzka v. Morris* (*In re Senior Cottages of Am., LLC*), 482 F.3d 997, 1001 (8th Cir. 2007) (citing 11 U.S.C. §704(1)).
[36] *Id*. (citing 11 U.S.C. § 541(a)(1)).
[37] *Id*. at 1001 (citing *Mixon v. Anderson* (*In re Ozark Rest. Equip. Co.*), 816 F.2d 1222, 1225 (8th Cir.1987)).
[38] Dkt. 75 at 6; *see Lorix v. Crompton Corp.*, 736 N.W.2d 619, 624 (Minn. 2007) (direct claims); *Greenpond S., LLC v. Gen. Elec. Capital Corp.*, 886 N.W.2d 649, 655 (Minn. Ct. App. 2016) ("The bankruptcy trustee has the sole right to bring claims belonging to the estate, including claims on behalf of creditors.").
[39] *In re Senior Cottages of Am., LLC*, 482 F.3d at 1001.
[40] *In re Ozark Rest. Equip. Co.*, 816 F.2d at 1225; *see In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 58 (2d Cir. 2013).
[41] *In re Senior Cottages of Am., LLC*, 482 F.3d at 1001 (citing *In re Ozark Rest. Equip. Co.*, 816 F.2d at 1225); *Greenpond S., LLC*, 886 N.W.2d at 655.

rather than the legal theory the case is brought under.[42] An appropriate method for distinguishing between a direct and a derivative claim is to consider "whether the injury to the individual plaintiff is separate and distinct from the injury to other persons in a similar situation as the plaintiff."[43] In *Greenpond South, LLC v. General Electric Capital Corp.*, a case arising out of the Petters' Ponzi scheme, the Minnesota Court of Appeals determined that harm in the form of PCI's insolvency and inability to repay its creditors due to fraudulent withdrawals from the PCI Account represent direct harm to the bankruptcy estate.[44] Claims resulting from such harm belong to the estate.[45] If a cause of action seeks to recover for harm to all creditors similarly situated, and solely by virtue of their status as creditors, it is a derivative claim properly pursuable by Plaintiff.[46]

The Court turns to the new arguments regarding direct and derivative claims.[47]

    A.    *Direct Claims*

Defendant asserts that Plaintiff lacks standing because Plaintiff does not allege any direct harm to PCI, but instead is seeking to recover damages for harm to specific creditors, which would belong to those creditors. Defendant bases its arguments on the measure of damages and case law.

First, Defendant argues that the measure of damages ($1,925,748,160) used in Plaintiff's damages disclosures and expert report is based on the losses of eight investors and not all

---

[42] *In re Medtronic, Inc. S'holder Litig.*, 900 N.W.2d 401, 407 (Minn. 2017); *Wessin v. Archives Corp.*, 592 N.W.2d 460, 464 (Minn. 1999); *see Greenpond S., LLC*, 886 N.W.2d at 656.
[43] *In re Medtronic,* 900 N.W.2d at 407–08 (quoting *Nw. Racquet Swim & Health Clubs, Inc.*, 535 N.W.2d 612, 617 (Minn. 1995)).
[44] *Greenpond S., LLC*, 886 N.W.2d at 657.
[45] *Id.*
[46] *Id.* at 656–58.
[47] In the Order, the Court previously analyzed whether the complained of injury in each cause of action is direct or derivative. Dkt. 75 at 6–11.

investors.[48] Thus, Defendant argues that if the direct harm was PCI's inability to repay creditors, then the claimed damages would be more than those of the eight individual creditors.[49] Plaintiff argues that the measure of damages used by his expert is the amount that Petters and his associates fraudulently paid from the PCI Account at M&I that became unavailable for repayment of creditors.[50] The Court agrees with Plaintiff; no facts were presented to rebut his expert's conclusions, merely argument.

Second, Defendant argues that courts have repeatedly rejected the inability to repay creditors theory as a basis for a claim.[51] Plaintiff states that those cases are inapplicable because they rely on the *Wagoner* rule (which has been rejected by the Eighth Circuit) and are from the Second Circuit.[52] The one cited decision outside of the Second Circuit is from the Northern District of Georgia, *Perkins v. Smith, Gambrell & Russell*,[53] which, contrary to Defendant's assertion, supports Plaintiff's damages claim. In *Perkins*, the court held that under Georgia law, a trustee should not plead damages as "an amount equal to the funds invested in the debtor's Ponzi scheme, but should measure damages based on funds <u>improperly paid out by the debtor</u>."[54] Here, the measure of damages that Plaintiff is seeking is equal to the funds improperly paid out by Petters from the PCI Account for the applicable period—$1,925,748,160.[55]

---

[48] Def.'s Mem., Dkt. 339, Ex. J at 45.
[49] *Id*. at 44–45, Ex. K at 181:14–24. Plaintiff's damages expert testified that his calculations included PCI's eight largest net losers and did not include any other net losers.
[50] Pl.'s Resp., Dkt. 342, Ex. 2 at 47. Plaintiff's damages expert testified that "PCI is unable to pay these creditors, and those are . . . the damages to be pursued." Pl.'s Resp., Dkt. 342, Ex. 1 at 39:24–40:3, 49:14–16.
[51] Def.'s Mem., Dkt. 339 at 10–11.
[52] *In re Senior Cottages of Am., LLC*, 482 F.3d at 1002–04 (citing *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991)). The Second Circuit's "Wagoner rule" provides that a corporation does not have standing to bring a claim against outsiders for defrauding a corporation with the cooperation of an insider. *Id.* at 1002–04. Gradually, the Second Circuit and lower courts within the Second Circuit have shifted from treating this issue as one of standing to treating it like the affirmative defense that it is. *Id*. at 1003.
[53] *Perkins v. Smith, Gambrell & Russell, LLP*, No. 1:08-cv-2673, 2010 WL 11507605 (N.D. Ga. July 27, 2010).
[54] *Id*. at *12 (emphasis added).
[55] As Plaintiff's damages expert has testified, "[t]he damages that have been identified here are damages that reflect the harm to PCI in so far as PCI's inability to pay its creditors." Pl.'s Resp., Dkt. 342, Ex. 1 at 39:24–40:3. The Complaint alleges that PCI's investors expected that their investments would be repaid. Dkt. 55 at ¶ 150.

Defendant cites to the bankruptcy court's decision in *Senior Cottages* as supporting its lack of standing argument.[56] There, the bankruptcy court dismissed a trustee's claims for breach of duty of care, negligence, and aiding and abetting against the debtor's attorneys.[57] The bankruptcy court found that the complaint only referenced injuries to individual interests of creditors.[58] Defendant argues that like the trustee in *Senior Cottages*, Plaintiff should not be permitted to maintain this suit on any claim that PCI's creditors may have had in their individual capacity. This argument fails. The Eighth Circuit 1) reversed the bankruptcy court, and 2) determined that the trustee did have standing to assert claims against third parties that assisted in the underlying fraud.[59]

Defendant also argues that Plaintiff lacks standing as the claims are ordinary tort and statutory claims, rather than avoidance or fraudulent transfer claims or claims assigned by PCI's creditors.[60] This is irrelevant because Minnesota courts "look to the injury itself, rather than the legal theory in which it is couched."[61] Here the alleged injury is, in part, the inability to pay creditors. Further, as to Plaintiff's aiding and abetting claims, Minnesota law provides that if a corporation has a cause of action against a principal for fraud or breach of fiduciary duty, the corporation also owns the cause of action against a third party for aiding and abetting the principal's misconduct.[62]

---

[56] *Moratzka v. Morris* (*In re Senior Cottages of Am., LLC*), 23 B.R. 895 (Bankr. D. Minn. 2005).
[57] *Id*. at 898, 901–02.
[58] *Id*. at 901–02.
[59] *In re Senior Cottages of Am., LLC*, 482 F.3d at 1006–07. At oral argument, the Court rebuked Defendant for its failure to cite the Eighth Circuit's opinion reversing the bankruptcy court. Dkt. 346 at 48:11–18 (Mar. 5, 2019).
[60] Def.'s Mem., Dkt. 339 at 6–7.
[61] *Greenpond S., LLC*, 886 N.W.2d at 656 (citing *Wessin*, 592 N.W.2d at 464).
[62] *In re Senior Cottages of Am., LLC*, 482 F.3d at 1002. Although it may give rise to a defense that will be fatal to the action, the "collusion of corporate insiders with third parties to injure the corporation does not deprive the corporation of standing to sue the third parties." *Id*. at 1004.

Thus, under Minnesota law, Defendant has failed to show as a matter of law that Plaintiff lacks standing to pursue direct claims for harm to PCI because of its inability to repay creditors caused by the fraudulent and improper withdrawals from the PCI Account.

As a final point, Defendant's memorandum of law argues that PCI was a "sham corporation" and did not suffer any cognizable harm because its primary existence was as a perpetrator of the Ponzi scheme.[63] In support of its theory, Defendant relies on the Eleventh Circuit's decision in *O'Halloran v. First Union National Bank of Florida*.[64] No Minnesota or Eighth Circuit cases have adopted the "sham corporation" theory and the theory itself has been called into question by decisions within the Eleventh Circuit.[65]

Therefore, Defendant has failed to meet its burden entitling it to summary judgment on the issue of standing as the claims asserted in this case are not direct claims belonging solely to creditors.

B.   *Derivative Claims*

Defendant also argues that Plaintiff has no derivative right to recover for individual creditor losses. Without support, Defendant claims that while shareholders and creditors can have rights and losses that are derivative of a corporation's rights and losses, the converse is not true. Further, Defendant argues that because PCI in its own right does not share the investor losses Plaintiff seeks to recover, Plaintiff lacks standing to bring derivative claims on behalf of PCI's creditors. The Court disagrees.

---

[63] Def.'s Mem., Dkt. 339 at 17–18. Defendant did not advance this "sham corporation" theory at oral argument and may have abandoned it. To resolve any doubt on the matter, the Court rejects Defendant's argument.
[64] *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197 (11th Cir. 2003).
[65] *E.g.*, *Wiand v. Lee*, 753 F.3d 1194 (11th Cir. 2014); *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145 (11th Cir. 2006); *Wiand v. Morgan*, 919 F. Supp. 2d 1342, 1366 (M.D. Fla. 2013).

Plaintiff's alleged harm is the inability to repay creditors due to funds being improperly paid out of the PCI Account by Petters and his associates. This indirectly harms all of PCI's creditors by virtue of their status as creditors.[66] As discussed in the Order, when a corporation is insolvent, its derivative claims include claims to recover for harm to its creditors.[67] Plaintiff may pursue the estate's derivative claims for harm to all creditors similarly situated.[68]

Defendant also argues that *Greenpond.*,[69] discussed in the Order, was overturned by the Minnesota Supreme Court's decision in *In re Medtronic, Inc. Shareholder Litigation*.[70] This is incorrect. *Greenpond* was appealed to the Minnesota Supreme Court. The Minnesota Supreme Court granted review and stayed the appeal pending a decision regarding derivative claims in *Medtronic*. After *Medtronic* was decided, Chief Justice Gildea, the author of *Medtronic*, issued an order vacating the stay in the *Greenpond* case and denied Greenpond's petition for review. Greenpond then filed a motion to modify the denial of review, arguing that the Court of Appeals' decision was no longer good law and requesting that the case be remanded for reconsideration. Chief Justice Gildea rejected Greenpond's arguments and denied its motion to modify and request for remand.[71] Defendant's argument fails—*Greenpond* remains good law.

The finding in *Greenpond* by the Minnesota Court of Appeals was that "the harm sustained by the Petters entities as a result of fraudulent withdrawals from their accounts of other

---

[66] *Greenpond S., LLC*, 886 N.W. 2d at 656–57 (finding that the injury suffered by the plaintiff was not separate and distinct from injuries suffered by other PCI investors).
[67] Dkt. 75 at 7; *see Helm Fin. Corp. v. MNVA R.R.*, 212 F.3d 1076, 1081 (8th Cir. 2000) (citing *Snyder Elec. Co. v. Fleming*, 305 N.W.2d 863, 869 (Minn.1981)).
[68] As with its analysis of Plaintiff's direct claims, Defendant asserts there is no derivative standing because Plaintiff is not bringing avoidance or fraudulent transfer claims under the Bankruptcy Code. Defendant cites no case law, statute, or Bankruptcy Code provision that would prevent Plaintiff from bringing such claims, ignoring Section 544 of the Bankruptcy Code which allows a trustee to pursue state law claims for the benefit of the estate. 11 U.S.C. § 544.
[69] 886 N.W.2d 649 (Minn. Ct. App. 2016).
[70] 900 N.W.2d 401 (Minn. 2017). The Court did not rely on *Greenpond* in the Order due to the then current status of the case.
[71] Pl.'s Resp., Dkt. 342, Ex. 4.

lenders' funds was its insolvency and inability to repay its creditors."[72] The Court of Appeals held that claims "resulting from this harm belong to the bankruptcy estate."[73] Plaintiff-investor's harm, the loss of money loaned to the Petters' entities, was found to be "inseparable from and based upon an injury suffered by the Petters entities."[74] Such claims were derivative and belonged to the bankruptcy estate.[75]

The method to determine whether a claim is direct or derivative used in *Greenpond* was the same as the one used by the Minnesota Supreme Court in earlier cases (*Wessin* and *Northwest Racquet*) and cited with approval in *Medtronic*.[76] The determination focuses on who suffered the injury and who would benefit from the recovery.[77] Defendant's argument that *Greenpond* is no longer good law has no merit.

Defendant next argues that even if Plaintiff could pursue derivative claims on behalf of PCI's creditors, Plaintiff's claims are not based on injuries shared by all creditors but rather those of "eight cherry-picked investors, disregarding additional net losers and other creditors."[78] First, in *Medtronic*, the Minnesota Supreme Court noted that its decisions in *Wessin* and *Northwest Racquet* involved fewer than all shareholders.[79] Second, Plaintiff's expert report explains that the relevant damages period began in January 2002 when PCI's financial model shifted to large investment funds and away from smaller, individual investors.[80]

The Court addressed the issue of derivative harm in its Order by analyzing each of Plaintiff's claims to determine whether the alleged harm pertained to specific creditors or to all

---

[72] *Greenpond S., LLC*, 886 N.W.2d at 657 (citing *In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d at 81, 92).
[73] *Id.*
[74] *Id.*
[75] *Id.* at 657–58.
[76] *In re Medtronic,* 900 N.W.2d at 409; *Greenpond S., LLC*, 886 N.W.2d at 655–56).
[77] *In re Medtronic,* 900 N.W.2d at 407–09.
[78] Def.'s Mem., Dkt 339 at 16.
[79] *In re Medtronic*, 900 N.W.2d at 409 n.4.
[80] Pl.'s Resp., Dkt. 342, Ex. 3 at 5.

creditors similarly situated.[81] The type of harm alleged by Plaintiff only affected the creditors by virtue of their status as creditors, meaning the harm was derivative, with the exception of Count V, a claim of civil conspiracy, and Count II, which in part alleged breach of fiduciary duties to three creditors arising from certain DACAs.[82] Under *Medtronic*, *Greenpond*, and established Minnesota law, the Court finds that Defendant has failed to show as a matter of law that Plaintiff lacks standing to pursue derivative claims on behalf of the estate for harm to PCI's creditors by virtue of their status as creditors.

Finally, we note that Defendant conflates constitutional standing with the equitable defense of *in pari delicto*.[83] This is improper, as the Eighth Circuit has held that the mere existence of a potential defense to a cause of action does not deprive a party of standing.[84] The *in pari delicto* defense is discussed next.

## II.    *In Pari Delicto*

### A.    *Applicability of the Defense*

As discussed in the Order, bankruptcy trustees are subject to any equitable or legal defenses that could have been raised against the debtor, including the defense of *in pari delicto*.[85] This defense provides that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing when the parties are equally at fault.[86] There is judicial reluctance to intervene in such disputes and waste judicial resources on equally-at-fault wrongdoers.[87] In order to determine if the defense is applicable, courts must make factual

---

[81] Dkt. 75 at 8–11.
[82] *Id.*
[83] *In re Senior Cottages of Am., LLC*, 482 F.3d at 1003–04 ("Whether a party has standing to bring claims and whether a party's claims are barred by an equitable defense are two separate questions, to be addressed on their own terms.") (citing *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 346 (3d Cir. 2001)).
[84] *Id.*
[85] Dkt. 75 at 11–12; *see Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 836–37 (8th Cir. 2005).
[86] *Grassmueck*, 402 F.3d at 836–37.
[87] *Christians v. Grant Thornton, LLP*, 733 N.W.2d 803, 814 (Minn. Ct. App. 2007).

determinations regarding the mutual fault of the parties.[88]  Given the fact intensive inquiry, *in pari delicto* is rarely applied before trial.

The defense of *in pari delicto* is not embodied in the Bankruptcy Code—it is an equitable defense governed by state law.[89]  Under Minnesota law, first, courts are afforded discretion over whether to apply equitable defenses.[90]  Second, Minnesota state and federal courts have consistently declined to apply *in pari delicto* when an equity receiver has been appointed because the wrongdoer is removed from the picture; the underlying purpose of the of the *in pari delicto* defense, to avoid court entanglement in a dispute between wrongdoers, is gone.[91]  Instead of being wrongdoers, receivership entities are considered victims of the fraud and creditors in a Ponzi scheme case.[92]

Defendant argues that *in pari delicto* applies notwithstanding the appointment of Kelley as PCI's equity receiver and PCI's status as a receivership entity because: 1) the appointment occurred five days before the Chapter 11 petition was filed, and 2) Kelley did not bring this suit in his capacity as PCI's receiver, but rather in his capacity as PCI's Chapter 11 Trustee.[93]

The short time frame between appointment as receiver and the filing of the bankruptcy case is irrelevant.  At the time the bankruptcy was filed, Kelley's appointment as equity receiver had removed the wrongdoers and corrupt management. PCI had become a receivership entity.[94]  The Receivership Order granted Kelley the full power of an equity receiver, including the power

---

[88] *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1066 (D. Minn. 2003).
[89] *Grassmueck*, 402 F.3d at 837.
[90] *City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 23 (Minn. 2011).
[91] *Zayed v. Associated Bank, N.A.*, No. 13–232 (DSD/JSM), 2015 WL 4635789, at *3 (D. Minn. Aug. 4, 2015) (citing *Kelley v. Coll. of St. Benedict*, 901 F. Supp. 2d 1123, 1129 (D. Minn. 2012).
[92] *Zayed v. Peregrine Fin. Grp., Inc.*, No. 12–269 (MJD/FLN), 2012 WL 2373423, at *2 (D. Minn. June 22, 2012). "Put differently, the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated." *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995).
[93] Dkt. 1.
[94] Pl.'s Resp., Dkt. 342, Ex. 5.

to sue for all assets of PCI.[95] Kelley filed the bankruptcy case pursuant to his authority as receiver, even though here he is now acting as successor in interest to the Chapter 11 Trustee.[96]

In the Order, the Court found that Kelley's appointment as equity receiver of PCI provided a compelling reason not to apply *in pari delicto* at that time.[97] Defendant does not cite any controlling Minnesota or Eighth Circuit case law providing that *in pari delicto* becomes available once a receivership entity is placed into bankruptcy. Defendant is correct that Section 541(a) claims are limited to the "legal or equitable interests of the debtor" and that a bankruptcy trustee's ability to assert causes of action on behalf of the debtor is subject to any equitable defenses that could have been raised against the debtor.[98] Here, however, the debtor was a receivership entity when it filed for bankruptcy. Defendant provides no support for its contention that *in pari delicto* could have been raised against the PCI receivership. There was no wrongdoer at the time of the filing the petition. Thus, the receivership prevents the application of the *in pari delicto* defense.

      B.    *Facts in Dispute*

Finally, in the alternative, if as a matter of law, the *in pari delicto* defense could be applied in this adversary proceeding despite the receivership, genuine issues of material fact would preclude summary judgment. Defendant and Plaintiff devote significant briefing and submitted thousands of pages in support of their arguments.

Defendant argues that undisputed facts show PCI bears at least equal responsibility for the claimed injuries, citing PCI's post-petition guilty plea and subsequent conviction of mail-

---

[95] *Id.*
[96] The receivership, with Kelley as receiver, is still ongoing. *United States v. Petters*, No. 08-cv-05348 (D. Minn.).
[97] Dkt. 75 at 13.
[98] 11 U.S.C. § 541(a); *Grassmueck*, 402 F.3d at 836.

fraud, wire-fraud, and money-laundering crimes.[99] Plaintiff counters that Defendant's knowledge of the fraud and failure to advise investors, as shown by Defendant's ignoring "scores" of fraud alerts from its internal detection system, makes the Defendant more liable, at least after March 2005 when M&I implemented an automated account monitoring system. Plaintiff cites the conclusions of a Department of Justice investigation that M&I committed fraud in connection with the Ponzi scheme in its handling of the PCI Account and entering into the DACAs.[100] Moreover, Deanna Coleman testified that M&I perpetuated the Ponzi scheme.[101] A jury must hear and weigh the evidence in order to apportion fault. Thus, the dispute as to material facts precludes summary judgment.

## Conclusion

For the reasons stated above, Defendant's motion is denied. Defendant has failed to show as a matter of law that Plaintiff lacks standing to recover for direct or derivative harm to PCI. Defendant has also failed to show the defense of *in pari delicto* applies as a matter of law because PCI was a receivership entity at the time of the bankruptcy filing. Finally, in the alternative, genuine issues of material fact exist regarding the parties' respective levels of fault.

## Order

IT IS ORDERED: Defendant's Motion for Summary Judgment is denied.

/e/ Kathleen H. Sanberg
_____
KATHLEEN H. SANBERG
UNITED STATES BANKRUPTCY JUDGE

---

[99] *See supra* note 14.
[100] Pl.'s Resp., Dkt. 342, Ex. 7.
[101] Pl.'s Resp., Dkt. 342, Ex. 8 at 29:17–20.